Natasha Prinzing Jones
Thomas J. Leonard
BOONE KARLBERG P.C.
201 W. Main St., Ste. 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-6646
npjones@boonekarlberg.com
tleonard@boonekarlberg.com

Kenneth A. Caruso
KENNETH CARUSO LAW LLC
15 West 72nd Street
New York, NY 10023
Phone: (646) 599-4970
ken.caruso@kennethcarusolaw.com
*Pro Hac Vice Pending*

*Attorneys for Plaintiff Zachary Ailes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ZACHARY AILES,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH KLEMANN and HILARY CARLS,<br><br>Defendants. | Case No. _____<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## INTRODUCTION

Plaintiff, Zachary Ailes ("Ailes"), was the victim of an extortionate scheme devised and prosecuted by Defendants, Montana attorney Hillary Carls ("Carls") and her client, Elizabeth Klemann ("Klemann").  Seeking to capitalize on Ailes's wealth and family, Defendants injected a baseless and obviously time-barred sexual assault claim into an ordinary negligence case arising out of a car accident, for the sole purpose of extracting an unwarranted and inflated settlement from Ailes.  Defendants were ultimately unsuccessful, and their baseless claim was dismissed as a matter of law.  Ailes, however, suffered significant damages as a result of Defendants' malicious prosecution and abuse of process, for which he is entitled to compensation and an award of punitive damages.

## PARTIES AND JURISDICTION

1. Plaintiff Ailes is domiciled in, and is thus a citizen of, the state of Florida.

2. Defendant Carls is domiciled in, and is thus a citizen of, the state of Montana.

3. Defendant Klemann is domiciled in, and is thus a citizen of, the state of Montana.

4.      The Court has jurisdiction under 28 U.S.C. § 1332(a)(1), in that this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper in this Division because the torts were committed in Flathead County, Montana.  L.R. 3.2(b); Mont. Code Ann. § 25-2-122.

## BACKGROUND

6.      Ailes and Klemann met in Montana in July 2019.

7.      At the time, both Ailes and Klemann were 19 years old.

8.      On July 12, 2019, Ailes and Klemann were involved in an automobile accident.

9.      On that date, Ailes drove his vehicle eastbound on U.S. Highway 2 in Flathead County, Montana, with Klemann as a passenger.  While attempting to pass a truck, Ailes crashed head-on with another vehicle driving in the opposite direction.

10.     Nearly two years later, on or about July 7, 2022, Klemann commenced an action against Ailes in the Eleventh Judicial District Court, Flathead County, asserting claims for negligence, and seeking compensatory and punitive damages for personal injuries sustained in the automobile accident.

11.     In that lawsuit, Klemann was represented by Defendant Carls, a licensed Montana attorney.

12. At all relevant times, Carls acted as the attorney for, and agent of, Klemann.

13. Defendants chose not to serve Ailes with the original complaint. Instead, Defendants conspired to increase the settlement value of the automobile accident case by injecting a sexual assault claim they knew to be baseless.

14. Defendants knew Ailes's father, Roger Ailes, had been a well-known American media executive and consultant.

15. Defendant knew Ailes's family was wealthy.

16. Defendants sought to extort money from Ailes by bringing a baseless sexual assault claim.

17. On or about February 7, 2023, Carls sent a letter to the lawyer defending Ailes in the automobile accident case. The letter threatened that, if the matter was not resolved privately, Carls would file an amended complaint adding claims arising out of a "sexual assault." *See* February 7, 2023 Letter, attached as **Exhibit A**.

18. Carls attached a draft amended complaint to the February 7, 2023 letter. In addition to the allegations relating to the car crash, the draft pleading alleged that Ailes sexually assaulted Klemann on July 29, 2019.

19. Curiously, the draft amended complaint alleged that Ailes was "negligent" with respect to both the car crash and the sexual assault.

20. Carls stated in her letter that verdicts and settlements from sexual assault traumas are regularly valued in the millions of dollars, at times $10 million and more.

21. Carls attached an article from "legalscoops.com" listing and discussing the "10 Biggest Sex Abuse Settlements in the History of the U.S," as well as excerpts from the Verdicts & Settlements column of Trial Magazine, which discussed settlements in two other cases involving sexual conduct.

22. Carls further stated in her letter that "we will also request that Ms. Klemann be allowed to proceed as a Jane Doe[.]"

23. The February 7, 2023 letter demanded a multi-million-dollar settlement and threatened: "If we are required to file the [amended complaint], this offer will be revoked[,] and we will seek the full value of Ms. Klemann's damages."

24. On or about February 23, 2023, Ailes's counsel responded to Carls by letter, noting that Carls was "now for the first time escalat[ing] this case with claims arising out of a . . . 'sexual assault.'" *See* February 23, 2023 Letter, attached as **Exhibit B**.

25. Ailes's counsel made clear that "the sexual assault allegations are denied and obviously th[is] type of allegation[] would tarnish an innocent young man's reputation."

26.     Importantly, Ailes's counsel asked Carls to explain how the sexual assault claim was not time-barred by the two-year statute of limitations set forth in Mont. Code Ann. § 27-2-204(3).  Ailes's counsel asked Carls to explain how she could pursue a negligence claim when the allegations in the draft amended complaint were "clearly an intentional tort, i.e., assault."  Ailes's counsel noted he was "unaware of a cause of action that would be identified as 'negligent assault.'"

27.     Responding to Carls's statement that she would name her client as "Jane Doe" in the amended complaint, Ailes's counsel relayed, "I would like to make sure that Mr. Ailes is identified by 'Doe' or initials as well[.]"

28.     Thereafter, Carls did not acknowledge that the threatened sexual assault claim  was not only factually baseless, but clearly time-barred.  Instead, Carls doubled-down and escalated further—by threatening to sue Ailes's mother.  *See* May 31, 2023 Letter, attached as **Exhibit C**.

29.     Specifically, on May 31, 2023, Carls wrote a letter to Ailes's counsel, repeating the prior, multi-million-dollar settlement demand and attaching a revised draft amended complaint.

30.     The revised draft pleading, which continued to assert "negligence" claims arising from both the car crash and sexual assault, now included claims against Ailes's mother for negligent supervision and negligent and intentional infliction of emotional distress.

6

31.    Carls refused to meaningfully address defense counsel's questions about the sexual assault claim being time-barred, and about the lack of any cognizable claim for negligent sexual assault.  She simply concluded, "we are confident that our claims are timely and will be able to proceed pursuant to [Klemann's] negligence theories."

32.    Carls also made clear she would not agree to protect Ailes's anonymity, despite demanding it for her client, noting "Ms. Klemann is not interested in pursuing this action against Mr. Ailes as a John Doe."

33.    On or about June 6, 2023, Ailes's defense counsel again responded to Carls by letter.  Counsel asked Carls to provide any legal authority in support of her position on the statute of limitations and negligent assault claim, noting he did "not see a good faith basis to pursue this claim."  *See* June 6, 2023 Letter, attached as **Exhibit D**.

34.    Likewise, with respect to the threat to sue Ailes's mother, Ailes's counsel stated, "I know of no facts that in good faith would support a negligence claim against her, assuming that a legal duty even exists, a significant issue. . . . [T]here does not appear to be a good faith basis upon which to name Mrs. Ailes as a party[.]"

35.    On or about June 21, 2023, another attorney representing Ailes wrote to Carls.  The letter again reiterated that any sexual assault claim was time-barred

and could not be characterized as a negligence claim to secure a longer period of limitations, citing three judicial decisions in support. *See* June 21, 2023 Letter, attached as **Exhibit E**.

36.     Repeating that there is no such thing as "negligent assault," Ailes's counsel explained to Carls that the relevant intent is not an intent to *harm*, but an intent to inflict offensive bodily *contact*. Seven legal authorities, including judicial decisions and secondary authorities, were cited in support.

37.     With respect to the threat to sue Ailes's mother, the June 21, 2023 letter informed Carls that Montana courts lack personal jurisdiction over Ailes's mother, and that Ailes's mother had no duty to supervise her adult son in any event.

38.     Once again, the June 21, 2023 letter invited Carls to provide citations to statutes or cases that might support her position—an opportunity of which she never availed herself.

39.     Defense counsel stressed in the June 21, 2023 letter that Carls's continued advancement of baseless and legally-barred claims constituted an improper attempt to extort a settlement:

> Twice now you have escalated this matter, while seeking a settlement. Thus, your [draft amended complaint] escalated an auto-collision case into something very different—a sexual assault case; your [revised draft amended complaint] escalated again by seeking to name [Ailes's mother]. We believe that your purpose is improper: to impose the maximum pressure on the Ailes family, and to damage reputations

publicly, in order to increase the settlement value of this case.  We urge you to drop the claims addressed in this letter.

40.     Carls ignored the warnings set forth in the February 23, June 6, and June 21, 2023 letters.

41.     On or about September 14, 2023, Klemann filed her First Amended Complaint ("FAC").  *See* Underlying FAC, attached as **Exhibit F**.

42.     The FAC re-alleged the four Counts set forth in the original Complaint, and added new allegations regarding the alleged sexual contact.  Count I alleged negligence, Count II alleged negligence *per se*, Count III alleged tortious infliction of emotional distress, and Count IV alleged punitive damages.  All claims were based on both the car crash and the alleged sexual assault.

43.     Ailes removed the action from state court to the United States District Court for the District of Montana (the "Federal Court").

44.     After removal, Ailes moved to dismiss the FAC's claims arising out of alleged sexual contact.  As he had maintained in his multiple letters to Carls, Ailes pointed out that the claims were clearly time-barred.  *See* Briefing on Ailes's Motion to Dismiss, attached as **Exhibit G**.

45.     On August 9, 2024, the Federal Court agreed and granted Ailes's motion to dismiss.  *Klemann v. Ailes*, No. CV 23-150-M-KLD, 2024 LX 99963, at *2 (D. Mont. Aug. 9, 2024).  *See* Order Granting Motion to Dismiss, attached as **Exhibit H**.

46.     In the order of dismissal, the Federal Court cited five of the authorities that defense counsel had cited in the June 21, 2023 letter to Carls.

47.     The Federal Court confirmed—just as defense counsel had stressed to Carls before she filed the FAC—there is "*no such thing as a negligent battery*[.]" *Id*. at *3 (emphasis added).

48.     Carls's actions against Ailes were part of a pattern of conduct.  Over the past five years, Carls has filed at least three cases, including the case against Ailes, asserting time-barred claims which a court later dismissed.  Those cases include: *Raugust v. Montana*, 2020 WL 3506401, at *5 (D. Mont. June 29, 2020); *Raugust v.* Montana, 2020 WL 3832971, at *3-4 (D. Mont. July 8, 2020); *Cole v. Montana University System*, 2023 WL 3251030, at *3-6 (D. Mont. May 4, 2023); *Cole v. Montana University System*, 2023 WL 6992812, at *2-4 (D. Mont. Oct. 23, 2023).

### COUNT ONE – MALICIOUS PROSECUTION

49.     Ailes repeats and realleges the preceding paragraphs as though fully set forth herein.

50.     On or about September 14, 2023, Defendants commenced a judicial proceeding against Ailes.

51.     Defendants were responsible for instigating, prosecuting and continuing the judicial proceeding.

52.     There was a lack of probable cause for commencing, instigating, prosecuting and continuing the judicial proceeding because:

- Defendants knew that the sexual assault claims were time-barred, and therefore did not reasonably believe the claims were valid.

- Defendants knew the sexual assault claims lacked a factual basis, and therefore did not reasonably believe the claims were valid.

53.     Defendants were actuated by malice.

54.     The judicial proceeding terminated favorably for Ailes, in that the sexual assault claims were dismissed with prejudice.

55.     As a result of the foregoing conduct, Ailes suffered damages in an amount to be proven at trial, including special damages in the amount of $332,586.68, consisting of fees and expenses incurred in defending the malicious prosecution.

56.     Defendants are also liable for punitive damages, in that they are guilty of actual malice within the meaning of Mont. Code Ann. § 27-1-221(2). Defendants had knowledge of facts, and/or intentionally disregarded facts, that created a high probability of injury to Ailes, and deliberately proceeded to act in conscious or intentional disregard of such high probability and/or deliberately proceeded to act with indifference to such high probability.

11

57.     In the alternative, Klemann is vicariously liable for the actions of her agent, Carls.

## COUNT TWO – ABUSE OF PROCESS

58.     Ailes repeats and realleges the preceding paragraphs as though fully set forth herein.

59.     Defendants made threats against Ailes and his mother, and asserted the claims of sexual assault/sexual contact with an ulterior purpose—to extract an inflated settlement for the car-crash claims.

60.     Defendants committed a willful act in the use of the process, not proper in the regular conduct of the proceeding.  Specifically, Defendants attempted to use process to coerce Ailes to do a collateral thing, which he could not legally be compelled to do—namely, to settle the car-crash claims at an inflated amount.

61.     As a result of the foregoing conduct, Ailes suffered damages in an amount to be proven at trial, including special damages in the amount of $332,586.68, consisting of fees and expenses incurred in defending against the abuse of process.

62.     Defendants are also liable for punitive damages in that they are guilty of actual malice within the meaning of § 27-1-221(2), MCA.  Specifically, Defendants had knowledge of facts, and/or intentionally disregarded facts, that

created a high probability of injury to Ailes, and deliberately proceeded to act in conscious or intentional disregard of such high probability and/or deliberately proceeded to act with indifference to such high probability.

63.     In the alternative, Klemann is vicariously liable for the actions of her agent, Carls.

WHEREFORE, Plaintiff prays for judgment in his favor awarding the following:

1. compensatory damages;

2. punitive damages;

3. costs; and

4. any other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all claims so triable.

DATED:  January 16, 2026

BOONE KARLBERG P.C.

/s/ Natasha Prinzing Jones

Natasha Prinzing Jones
*Attorneys for Plaintiff, Zachary Ailes*

13