# BLACKFORD | CARLS
— TRIAL LAWYERS —

SHERINE D. BLACKFORD
HILLARY P. CARLS

February 7, 2023

<u>Via Email</u>
Calvin J. Stacey
Morgan Sorena
Stacey & Funyak
P.O. Box 1139
Billings, MT 59103-1139
cstacey@staceyfunyak.com
msorena@staceyfunyak.com

Re: *Klemann v. Ailes*

Dear Cal,

Thank you for the phone call yesterday. I am glad that we were able to connect about this case.

Attached please find a draft First Amended Complaint & Jury Trial Demand. As we discussed, my client is prepared to proceed with filing.  However, we also recognize that both parties are young adults and could benefit from resolving this matter privately. If we are unable to resolve this matter, we plan to file the First Amended Complaint & Jury Trial Demand. We also will request that Ms. Klemann be allowed to proceed as a Jane Doe, and to seal the Complaint & Jury Trial Demand (July 7, 2022), which has identifying information.

Unsurprisingly, the aftermath of the events with Mr. Ailes continue to impact and haunt Ms. Klemann.  She is currently in weekly therapy with Warren Michelson, a Missoula therapist who regularly works with sexual assault survivors. Ms. Klemann also takes Cymbalta. Recovering from these traumas will likely be a lifelong struggle, requiring Ms. Klemann to invest significantly in her mental health.

In my view, a jury will find Ms. Klemann credible. Further, her medical records, therapist, and friends and family who know her best support Ms. Klemann's claims. Importantly, Ms. Klemann's witnesses are local to the Flathead County. Because of Mr. Ailes's choices, she continues to recover from her brain injury and the trauma of his assault. Mr. Ailes forever changed Ms. Klemann.

Ms. Klemann's brain injury alone is valued in excess of $500,000. Verdicts and settlements from sexual assault traumas are regularly valued in the millions of dollars, at times $10 million and more.  *See, i.e.*, https://apnews.com/article/entertainment-movies-lawsuits-paul-haggis-c12bd93280bc86eff399fcbf6cbf81e7 ($10 million, rape

Page 1 of 2

DOWNTOWN BOZEMAN        email: info@blackfordcarls.com
602 W. Lamme St.        office: 406.577.2145
Bozeman, MT 59715       fax: 406.219.0256

**EXHIBIT A-1**

allegations. Defense: consensual sex); 10 Biggest Sex Abuse Settlements in the History of the U.S. (https://www.legalscoops.com/10-biggest-sex-abuse-settlements-in-the-history-of-the-u-s/) (attached); AAJ, Trial, Verdicts Settlements (October 2021) ($4.25 million sexual abuse settlement) (attached); AAJ, Trial, Verdicts Settlements (January 2023) ($44 million sexual assault verdict) (attached). Verdicts and settlements for sexual assaults continue to rise. Additionally, Mr. Ailes's reckless choices and behavior in both the car crash and sexual assault make punitive damages appropriate in this litigation. As you know, the punitive damages are limited to $10 million or 3% of Mr. Ailes net worth. This matter has the potential for a significant verdict.

As we discussed, Ms. Klemann has given her demand serious consideration and makes this compromise offer in good faith, with the intent of resolving this matter privately. If we are required to file the First Amended Complaint & Jury Trial Demand, this offer will be revoked and we will seek the full value of Ms. Klemann's damages. Ms. Klemann has authorized me to settle her car crash and sexual assault claims, release Mr. Ailes, and dismiss the lawsuit for the total amount of $5,000,000.

Ms. Klemann has instructed me to file the First Amended Complaint & Jury Trial Demand by February 24, 2023 if we have not resolved this matter. Please do not hesitate to contact me to discuss this matter further. Thank you.

Cordially,

BLACKFORD CARLS P.C.

Hillary P. Carls

cc:    Client

**EXHIBIT A-2**

Hillary P. Carls
BLACKFORD CARLS P.C.
602 W. Lamme Street
Bozeman, MT 59715
406.577.2145
406.219.0256 (fax)
carls@blackfordcarls.com
*Attorney for Plaintiff*

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

|  |  |
|---|---|
| Jane Doe,<br><br>Plaintiff,<br><br>vs.<br><br>Zachary Joseph Jackson Ailes and John Doe Defendants 1-50,<br><br>Defendants. | Case No.: DV-15-2022-736-NE<br><br>**First Amended Complaint &**<br>**Jury Trial Demand** |

Plaintiff, Jane Doe, complains and alleges as follows:

1.     At all times relevant Plaintiff Jane Doe ("Plaintiff") was a resident of Kalispell, Flathead County, Montana.

2.     At all times relevant Defendant Zachary Joseph Jackson Ailes ("Ailes") was a resident of Palm Beach, Florida.

3.     Plaintiff believes that the John Doe Defendants are subject to the jurisdiction of the State of Montana and this Court.  The John Doe Defendants are parties that may have been involved in the occurrence set out herein, may have been agents of, employers of, employees of franchisers or franchisees of, or contractually obligated to the named Defendants or are in privy with the named Defendants and, therefore, said John Doe Defendants may have committed one or more of the acts set out herein or may be responsible through tortuous interference, strict liability, breach of warranty, negligence, negligent misrepresentation, the law of agency, respondeat

1

**EXHIBIT A-3**

superior, franchise law or by contract for the acts of the named Defendant as set out herein. Plaintiff believes and therefore alleges that the John Doe Defendants may have committed one or more of the acts set out herein and that they would therefore be liable for the same. Plaintiff will amend these pleadings as the case progresses to specify the various acts of the John Doe Defendants.

## Introduction

4.      In July 2019, Ailes and the Plaintiff has just met in-person, previously knowing each other only through social media. Ailes and the Plaintiff were both 19-years-old.

5.      Upon information and belief, Ailes had previously spent time in Montana at addiction treatment facilities. In July 2019, he had returned to Montana for a vacation and to visit people he attended treatment with.

6.      The Plaintiff is a fifth-generation Montanan, who moved to Kalispell as a child. In July 2019, the Plaintiff was home from college for the summer.

7.      This case is about how, in the brief time Ailes and the Plaintiff were both in Kalispell, Ailes's negligent, reckless, and dangerous choices and actions forever changed the Plaintiff's life.

## Motor Vehicle Accident

8.      On or about July 12, 2019, at approximately 9:30 a.m., Ailes was driving his vehicle eastbound on U.S. 2 in Flathead County, Montana. At this time, Plaintiff was a passenger in Ailes's vehicle and had only known Ailes a few days.

9.      Ailes attempted to follow another vehicle and pass a semi-truck with a trailer on U.S. 2. Ailes did not have a clear view while attempting to pass. Ailes failed to ensure that it was safe to pass the semi-truck. It was not safe to pass the semi-truck.

**EXHIBIT A-4**

10. While Ailes attempted to pass the semi-truck, another vehicle was traveling westbound on U.S. 2 approaching the same location. Ailes crashed his vehicle head-on into the westbound vehicle.

11. As a result of Ailes' actions, he was charged with the offense of Careless Driving, in violation of § 61-8-302, MCA.

12. As a result of the negligent acts or omissions of Ailes, Plaintiff suffers from aggravating, persistent, and permanent injuries to her body and psyche, including, but not limited to, a traumatic brain injury.

13. Plaintiff's injuries impair her ability to carry out her normal activities, including her daily routine. While Plaintiff attempts to continue her normal activities, she suffers great pain, discomfort, and other limitations by so doing.

14. Plaintiff has been required to seek medical attention in order to relieve her pain, discomfort, and conditions, which may never permanently resolve.

15. Plaintiff's traumatic brain injury has forced her to significantly change her life, including emotional changes and swings, post-traumatic stress disorder, anxiety, flashbacks, personality changes, nausea, migraines, and dizziness, among other injuries and symptoms.

16. That, upon information and belief, Ailes had a history of dangerous driving and knew or should have known the consequences to himself and others with his choice to drive dangerously and recklessly.

17. That Ailes's actions created a high probability of injury to Plaintiff.

18. That Ailes's deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury to Plaintiff.

\\\ \\\ \\\

3

**EXHIBIT A-5**

**Sexual Assault**

19.     In the few days that Plaintiff knew Ailes prior to the July 12, 2019 crash, Ailes repeatedly put Plaintiff in dangerous situations and exerted control over the Plaintiff.

20.     The first time Plaintiff met Ailes, he tried kissing her three times, to which each time Plaintiff said no and Ailes ignored her.

21.     Ailes violated Plaintiff's boundaries by:

    a.  Drunk driving on 3 separate nights, often forcing Plaintiff to ride with him when she did not want to;

    b.  Driving recklessly every time Plaintiff was in his vehicle;

    c.  Controlling and demanding unwanted sexual contact, including becoming violent. In one incident, Ailes asked if he could slap Plaintiff during sex and initially Plaintiff consented.  However after the first slap Plaintiff asked Ailes to stop, but he ignored her request, hitting her harder when he slapped her face again; and

    d.  Playing with and handling firearms in a disrespectful, reckless manner, including one incident where Ailes repeatedly tossed and flipped a loaded pistol on a bed that Plaintiff was sitting on, even after Plaintiff asked him to stop. The Plaintiff was scared for her life.

22.     Upon information and belief, Ailes sought to groom and control Plaintiff.

23.     That Ailes's reckless and dangerous behavior escalated after the July 12, 2019 crash, when Plaintiff was particularly vulnerable and struggling with her brain injury.

24.     At all relevant times, Ailes knew Plaintiff was suffering and struggling from a brain injury. Ailes observed the symptoms of her brain injury, such as her emotional bursts and odd behavior.

4

**EXHIBIT A-6**

25.   Approximately 2-weeks after the crash, on or about July 29, 2022, in the evening, Ailes and Plaintiff met at the Kalispell Grand Hotel, where Ailes was staying. At dusk, they walked to Moose's Bar and Pizza.

26.   During that evening, Ailes stated that Plaintiff was acting drunk and asked her to calm down.  Ailes statement puzzled Plaintiff because she had not consumed enough alcohol to be acting drunk. In the span of 3-hours, Plaintiff consumed 4-White Claws.

27.   Between 11pm and midnight, Ailes and Plaintiff left Moose's Bar and Pizza, and walked back to the Kalispell Grand Hotel.

       a.   Plaintiff was unable to walk straight.

       b.   Ailes helped her walk.

       c.   Ailes instructed Plaintiff to stop being so loud.

       d.   Once Ailes and Plaintiff arrived at the Kalispell Grand Hotel, Plaintiff recalls making a comment to which Ailes responded with anger.

28.   Plaintiff's next memory is some unknown period of time later and brief: Ailes on top of Plaintiff without a shirt on.

29.   Plaintiff woke up the next morning not wearing underwear or pants, but still wearing her shirt and bra.  Ailes was in his boxers.

30.   Plaintiff got dressed, explained to Ailes that she did not remember the night before, and asked if they had sex.  Ailes confirmed that he had sex with her.

31.   Plaintiff was incapable of consenting to have sex with Ailes.

32.   Ailes did not have Plaintiff's consent to have sex with her on or about July 29, 2019.

33.   Ailes knew or should have known of Plaintiff's impaired condition because Ailes:

       a.   Created her impairment by:

**EXHIBIT A-7**

i.   causing the car crash, which resulted in Plaintiff's brain injury;

ii.  encouraging Plaintiff to consume alcohol; and/or

iii. upon information and belief, providing another intoxicant to impair Plaintiff; and/or

b.  Commented on and observed the Plaintiff's impaired condition.

34.   That Ailes knew or should have known that Plaintiff was so impaired that she could not have consented to having sex with him.

35.   That Ailes knew or should have known that Plaintiff did not consent to having sex with him.

36.   When Plaintiff was the most vulnerable, Ailes violated her trust and had sex with her without Plaintiff's consent.

37.   Ailes sexually assaulted Plaintiff.

38.   As a result of Ailes' actions, Ailes violated §§ 45-5-502 and 503, MCA, which prohibits sexual assault and sexual intercourse without consent.

39.   As a result of the acts or omissions of Ailes, Plaintiff suffers from aggravating, persistent, and permanent injuries to her body and psyche.

40.    Plaintiff's injuries impair her ability to carry out her normal activities, including her daily routine.  While Plaintiff attempts to continue her normal activities, she suffers great pain, discomfort, and other limitations by so doing.

41.   Plaintiff has been required to seek medical attention in order to relieve her conditions, which may never permanently resolve.

42.   That Ailes knew or should have known the consequences to Plaintiff with his choice to sexually assault Plaintiff.

**EXHIBIT A-8**

43.   That Ailes's actions created a high probability of injury to Plaintiff.

44.   That Ailes's deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury to Plaintiff when he sexually assaulted her.

### Count 1—Negligence

45.   Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

46.   That in the July 12, 2019 crash, Ailes was negligent and this negligence legally and proximately caused the injuries suffered by Plaintiff.

47.   That in the July 29, 2019 sexual assault, Ailes was negligent and this negligence legally and proximately caused the injuries suffered by Plaintiff.

48.   Ailes is liable for said acts of negligence.

49.   As a result of Ailes's negligence, Plaintiff has suffered damages in an amount to be determined at trial.

### Count 2—Negligence *Per Se*

50.   Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

51.   That in the July 12, 2019 crash, Ailes was negligent, as a matter of law, when he violated § 61-8-302, MCA, and this negligence as a matter of law legally and proximately caused the injuries suffered by Plaintiff.

52.   That in the July 29, 2019 sexual assault, Ailes was negligent, as a matter of law, when he violated §§ 45-5-502 and 503, MCA, and this negligence as a matter of law legally and proximately caused the injuries suffered by Plaintiff.

53.   Ailes is liable for said acts of negligence as a matter of law.

7

**EXHIBIT A-9**

54. As a result of Ailes's negligence, as a matter of law, Plaintiff has suffered damages in an amount to be determined at trial.

### Count 3 – Sexual Assault

55. Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

56. That Ailes had sexual contact with Plaintiff without her consent.

57. That Ailes had sexual intercourse with Plaintiff without her consent.

58. That Ailes had sexual intercourse with Plaintiff when she was incapable of consent.

59. That Ailes sexually assaulted Plaintiff.

60. Ailes is liable for said acts of sexual assault.

61. As a result of Ailes's sexual assault, Plaintiff has suffered damages in an amount to be determined at trial.

### Count 4—Emotional Distress

62. Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

63. Said acts or omissions by Ailes related to the July 12, 2019 crash as set out above have proximately caused and resulted in negligent and intentional infliction of emotional distress on Plaintiff, damaging Plaintiff in an amount to be determined at trial.

64. Said acts or omissions by Ailes related to the July 29, 2019 sexual assault as set out above have proximately caused and resulted in negligent and intentional infliction of emotional distress on Plaintiff, damaging Plaintiff in an amount to be determined at trial.

65. As a result of the actions of Ailes, Plaintiff has been damaged in an amount to be determined at trial.

8

**EXHIBIT A-10**

## Count 5—Actual Fraud/Malice

66.     Plaintiff realleges all of the acts set out in the introduction and alternate counts of this Complaint.

67.     Ailes is guilty of actual fraud and/or malice as defined in § 27-1-221, MCA, for engaging in the aforementioned conduct regarding:

      a.   the July 12, 2019 crash; and

      b.   the July 29, 2019 sexual assault.

68.     That Ailes's actions resulted when he deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury to the Plaintiff.

69.     That Ailes's should be assessed punitive damages sufficient to punish, deter, and make an example of such wrongdoing pursuant to § 27-1-221, MCA.

70.     As a result of the actions of Ailes, Plaintiff has been damaged in an amount to be determined at trial.

## Jury Trial Demand

Plaintiff, Jane Doe, hereby demands trial by jury on all issues.

## Prayer for Relief

Plaintiff prays judgment as follows:

1.     For judgment in favor of Plaintiff and against Ailes on all Counts.

2.     For all past, present, and future medical expenses incurred by Plaintiff.

3.     For compensatory damages in an amount to be determined at trial to compensate the Plaintiff.

4.     For damages in an amount to be determined at trial for all past, present, and future mental anguish and emotional distress suffered by Plaintiff.

9

**EXHIBIT A-11**

5.    For punitive damages, as the same may be allowed by law.

6.    For all costs incurred in the prosecution of this action.

7.    For an award of interest, as deemed appropriate by the Court and as allowed by law.

8.    For an award of attorney's fees, as the same may be allowed by law.

9.    For such other and further relief, both at law and in equity, as the Court shall deem just and proper.

DATED this 24th day of February, 2023.

BLACKFORD CARLS P.C.

Hillary P. Carls
*Attorney for Plaintiff*

**EXHIBIT A-12**

# 10 Biggest Sex Abuse Settlements In The History of The U.S.

**PERSONAL INJURY**    **FEBRUARY 21, 2022**  **BY** JACOB MASLOW

Sexual abuse and assault continue to plague society as a whole. More and more survivors of these crimes are coming to the fore than ever before. They often bring a lawsuit against the perpetrator of the sex abuse or someone responsible for the perpetrator's actions. A notable example was the recent case against Ghislaine Maxwell, the former British socialite. She was found guilty of helping Jeffrey Epstein find young girls by recruiting and trafficking them.

Besides the state cases against the perpetrators for sexual abuse, survivors of sexual assault often also seek compensation through an independent lawsuit to help lessen the physical, emotional and economic burdens they may suffer after the abuse. In most cases, before going to trial, a settlement is reached. Here are some of the largest settlements in sex abuse cases to date:

# 1.    Archdiocese of Los Angeles One

One of the largest settlements in the U.S. involved a religious institution. The Archdioceses of Los Angeles paid compensation of $660 million for cases of sexual abuse in 2007. The claims settled were for the clergy's 508 survivors of sexual abuse, with each person receiving about $1.3 million. Interestingly, some of the people in

**EXHIBIT A-13**

the lawsuit had been victims more than five decades before the case.

# 2. The U.S.A. Gymnastics and United States Olympic & Paralympic Committee

In the agreed $380 million settlement, the over 500 sex abuse survivors of Dr. Larry Nassar sought the money to help them overcome problems like PTSD, depression, anxiety, and attempted suicides. The doctor's young female victims also included some of his patients at Michigan State University.

# 3. University of Southern California

A former gynecologist's sexual assault of patients at the University of Southern California (USC) resulted in a civil lawsuit against the college. Despite complaints by patients and medical staff against the doctor, the action taken against him was insufficient. The sexual assault lawsuits filed were against Dr. Tyndall and the University, resulting in the University paying a settlement of $215 million.

# 4. San Diego Clergy

In 2007,144 survivors of sexual abuse by San Diego clergy priests were awarded $198.1 million. These former altar boys each received about $825,000 for the sexual abuse they suffered at the hands of 48 priests and a coordinator.

# 5. Fox News Channel

**EXHIBIT A-14**

A sexual harassment scandal at Twenty-First Century Fox Inc. resulted in a $90 million settlement of claims made by the shareholders at the Fox News Channel. The defendants were several officers and directors, but they never admitted to the allegations made against them. The settlement money for the shareholders came from the insurers, directors, and the estate of Roger Aisles.

# 6.    The Diocese of St. Cloud

Clergy abuse survivors of the Diocese of St. Cloud received a settlement of $22.5 million. In 2020, the diocese had to file for Chapter 11 bankruptcy because of failed negotiations for the settlement amount. The bankruptcy court has appointed an independent trustee to administer the settlement to the survivors with input from a committee representing the abuse survivors.

# 7.    Roger Ailes

Roger Aisles, Fox News CEO in 2016, was accused of sexual harassment by Gretchen Carlson, the former Fox News broadcaster. She went on to sue the parent company of Fox News Channel, receiving a formal apology and a $20 million settlement. By mid-2016, Roger Ailes left the company, but with a $40 million settlement.

# 8.    Harvey Weinstein

Harvey Weinstein's sexual misconduct led to his survivors getting an $18.875 million settlement for two separate lawsuits filed in 2018 against Harvey Weinstein, Bob Weinstein, and The Weinstein Company and a class-action lawsuit filed on behalf of these women in 2017.

**EXHIBIT A-15**

Weinstein was found guilty of the rape and sex abuse charges in 2020 and sentenced to 23 years in prison.

# 9.   Redlands Unified School District

Several teachers and a golf coach from the Redlands Unified School District were implicated in a sex abuse scandal that resulted in an award of $15.7 million to eight students. The abuse by multiple teachers, a special education teacher, and a golf coach happened between 2015 and 2016.

# 10. New York Knicks and Madison Square Garden

Browne Sanders, the former executive for the NBA's New York Knicks, was fired after complaining of sexual harassment by the team head coach and president of its basketball operations, Isiah Thomas. Besides soliciting sex from Ms. Sanders, he also called her names. The settlement agreed on was $11.5 million.

# Final Take

In recent developments, Prince Andrew reached a settlement with Virginia Giuffre for sexual abuse. The agreement comes just weeks before the Queen's second son's appearance in a deposition for a lawsuit by one of Epstein's accusers. The settlement amount remains undisclosed. However, these substantial settlements in these high-profile cases prove that speaking up about sexual abuse cases does offer some relief to the victims through compensation.

**EXHIBIT A-16**



# Verdicts
## & SETTLEMENTS

The Steurers sued the home's seller, Patricia Lacy, alleging that she failed to disclose the dumbwaiter's reconfiguration—a structural change that should have been listed on the home's disclosure statement. Had they known the elevator's history, the plaintiffs claimed, they would have had it examined in a separate inspection.

The defense argued that there was no requirement to report the changes to the dumbwaiter because the elevator had operated without difficulty since its installation.

The jury awarded $4.4 million, finding the plaintiffs 35% at fault.
**CITATION:** *Steurer v. Lacy*, No. 2018-CP-22-00728 (S.C. Ct. Com. Pl. Georgetown Cty. May 20, 2021). **PLAINTIFF COUNSEL:** AAJ member Christopher Romeo and Michael Grabara, both of Charleston, S.C.
**PLAINTIFF EXPERT:** Bryan Durig, mechanical engineering, Columbia, S.C.

## PROFESSIONAL NEGLIGENCE

### Failure to select, train competent staff

Betty Rogers was admitted to Statesman Health and Rehabilitation Center. At the time of her admission, Rogers required total assistance with daily living activities due to her various health conditions. While in the facility, she developed decubitus ulcers, urinary tract infections, a MRSA infection, and osteomyelitis, among other problems. She also suffered malnutrition and dehydration. Rogers later died of her conditions.

Her adult daughter, on behalf of Rogers's estate, sued the facility's owner and operators, alleging failure to select, train, and retain competent staff and provide adequate hygiene to prevent infection.

The parties settled for $450,000.
**CITATION:** *Rogers v. Oak Health & Rehab. Ctrs., Inc.*, No. 2017-03751 (Pa. Ct. Com. Pl. Bucks Cty. Apr. 6, 2021). **PLAINTIFF COUNSEL:** AAJ member Rubin Krisztal, Leawood, Kan.

## RAILROADS

### Violation of safety standards

While Doe was working to secure an air hose to a brake line underneath a rail car, the rail car shifted and pinned Doe to the ground. He was knocked unconscious and suffered a brain hemorrhage, a scalp fracture, fractured ribs, a hemopneumothorax, and a near-amputation of his left ear. He has not returned to work.

Doe claimed that the railway's owner had a pattern of placing rail car workers in its repair division in dangerous situations that violated industry and federal safety regulations. Specifically, the claimant asserted that the railway permitted repair staff to work under heavily loaded rail cars without jack stands.

The parties settled for $6 million before suit was filed.
**CITATION:** *Doe v. Roe Railroad*, settled before filing, 2021. **CLAIMANT COUNSEL:** AAJ members David Yarborough and Perry Buckner Jr., both of Charleston, S.C.

## SCHOOLS

### Sexual abuse of middle school student

Doe, a 13-year-old middle school student in the Issaquah School District, auditioned for a school play organized by Richard Buckley, a district employee and head of the school's drama department. Doe later enrolled in Buckley's theater class.

After learning that Doe's parents were divorced, Buckley allegedly invited Doe to his house, where he would help her with her homework, cook for her, and watch movies with her. Buckley allegedly began to express his feelings for Doe and would regularly hug her and rub her thighs. His alleged advances progressed to kissing, fondling, and, later, sexual intercourse.

Despite complaints by two parents to the school principal regarding Buckley's relationship with Doe, he was not removed from the school, and the school did not take any action to protect Doe from future harm. When the district superintendent asked Doe whether anything had happened with Buckley, she warned Doe to be sure she was not embellishing or making it up as a result of a student-teacher crush.

Buckley's alleged sexual abuse of Doe continued until he was arrested for first-degree child molestation of Doe's younger sister.

Doe sued the school district, alleging negligence, gross negligence, negligent infliction of emotional distress, and outrage. The plaintiff asserted that the defendant knew or should have known that Buckley was a sexual predator who was repeatedly abusing her and should have prevented him from having unfettered access to her. The lawsuit claimed that, among other things, the defendant's superintendent had received inappropriate letters Buckley had written to Doe yet failed to terminate his employment or protect Doe from further harm.

The parties settled for $4.25 million.
**CITATION:** *Doe v. Issaquah Sch. Dist.*, No. 20-2-07550-7 (Wash. Super. Ct. King Cty. Mar. 25, 2021). **PLAINTIFF COUNSEL:** AAJ members Darrell Cochran and Kevin M. Hastings, both of Tacoma, Wash.

**FOR MORE** verdicts and settlements, subscribe to AAJ's specialty *Law Reporters* at www.justice.org/lawreporters.

**TO SUBMIT** your verdict or settlement for possible publication in *Trial*, *Trial News*, or one of the *Law Reporters*, send the case details to law.reporter@justice.org.

**EXHIBIT A-17**

# Verdicts
## SETTLEMENTS

Services, Inc., applied a bed bug heat treatment to Brockington's apartment and provided her with reentry instructions that permitted her to return to her apartment in two to four hours.

The next morning, Brockington's landlord found her deceased in her apartment, where temperatures were recorded at 109 degrees Fahrenheit more than 20 hours after the bed bug treatment. An autopsy revealed the cause of death was hyperthermia and organ failure resulting from extreme heat exposure. Brockington is survived by her two adult children.

Brockington's estate sued Terminix Services, Inc., and national franchisor Terminix International Co.; the owner of the apartment complex and its property manager; the manufacturer of the propane heater used in the treatment; and Brockington's mental health provider, the South Carolina Department of Mental Health.

The plaintiff alleged that the Terminix technician provided incorrect reentry instructions, allowing Brockington to reenter her apartment before the requisite 12 hours and exposing her to the latent danger of excess heat energy stored in the apartment's walls, subfloor, and infrastructure. Suit also claimed that Terminix inadequately trained its technician, who lacked sufficient knowledge of basic pest control techniques.

The plaintiff claimed the mental health provider had undertaken special responsibility for the well-being of residents at the complex—including Brockington, who took the drug Cogentin, which can interfere with internal body temperature—and failed to properly carry out that responsibility.

Suit against heater manufacturer GreenTech Heat Solutions asserted that the Titan 500 direct-fired propane portable heater the technician used was not properly calibrated and produced excessive heat energy.

Terminix argued that the technician followed the company's usual practices for heat treatments. The defense also asserted that Brockington should have stayed out of the apartment in light of its extreme heat.

The parties settled for $4.2 million. Terminix Services contributed $2 million; the apartment complex owner, property manager, and mental health provider paid $1.35 million; and GreenTech Heat Solutions paid $850,000.

**CITATION:** *Thomas v. Terminix Servs., Inc.*, No. 2020-CP-16-00693 (S.C. Cir. Ct. Darlington Cnty. May 4, 2022). **PLAINTIFF COUNSEL:** J. Michael Baxley, Douglas Jennings Jr., and Mason King, all of Bennettsville, S.C.; and George D. Jebaily, Florence, S.C.

## PREMISES LIABILITY

### Failure to properly mop up grocery aisle

Rena Pasillas was shopping in a Ralph's grocery store when she walked through a slippery substance in the store's main aisle. She fell, suffering back injuries and a torn left ACL. A year after the incident, she underwent knee surgery. She continues to suffer back pain. Her medical expenses were $40,000.

Pasillas sued Food4Less of California Inc. as the occupier of the property, alleging negligent maintenance of its premises. Specifically, the plaintiff asserted that the defendant failed to properly mop up the aisle. Suit did not claim lost income.

The jury awarded $268,000.

**CITATION:** *Pasillas v. Food4Less of Calif. Inc.*, No. BC666789 (Cal. Super. Ct. Los Angeles Cnty. Apr. 27, 2022). **PLAINTIFF COUNSEL:** Neil J. Berry and Matthew P. Foose, both of Beverly Hills, Calif. **PLAINTIFF EXPERTS:** David Broumandi, radiology, Northridge, Calif.; Mark Burns, accident reconstruction, Marina del Rey, Calif.; and Stepan Kasimian, orthopedic surgery, Glendale,

Calif. **DEFENSE EXPERTS:** Richard Rhee, radiology, Newport Beach, Calif.; Henry Lubow, billing, Agoura Hills, Calif.; and Kenneth Solomon, accident reconstruction, Woodland Hills, Calif.

### Fall at outdoor shopping center

Devoura Willis, 34, was shopping at an outdoor mall in Minnesota on a winter day. She tripped on a pile of salt just outside the door of a retail store and fell to the sidewalk. She suffered neck and back injuries, which led to cervical and lumbar spinal surgeries. Her medical expenses totaled $650,000. An administrative assistant, she incurred $250,000 in lost income.

Willis sued Premium Outlet Partners, LP, alleging liability for the incident. The defense contested liability and medical causation.

The plaintiff was awarded approximately $1.75 million and found to be 50% at fault. Added interest, costs, and penalties brought the total award to approximately $1.25 million.

**CITATION:** *Willis v. Premium Outlet Partners, LP*, No. 86-CV-18-4930 (Minn. Dist. Ct. Wright Cnty. Mar. 3, 2022). **PLAINTIFF COUNSEL:** AAJ members Eric Palmer and Rachel Smith, both of Minneapolis.

### Failure to check hotel patron's identification

Doe, 28, attended a sales meeting and then had dinner with her sales group. After dinner, she had drinks and socialized with co-worker Larry Clowers Jr. and another colleague at the lobby bar of a Hilton Americas-Houston hotel, where Doe was staying under a reservation made using her own name.

At some point later that evening, police were dispatched to the Hilton after a 911 caller reported seeing a man outside the hotel lying on an unresponsive woman and exposing himself to her. A hotel security officer arrived on the scene and requested the

**EXHIBIT A-18**

# Verdicts
## & SETTLEMENTS

man's identification—it was Clowers. The woman was Doe, but the security officer did not ask for her identification. Clowers told the officer that she was with him. Another security officer then brought out a wheelchair for Doe to be wheeled into Clowers's room.

Doe woke up early the next morning in Clowers's room to find him sexually assaulting her. She left the room and went to a hospital, where she requested a rape kit. A physical examination was consistent with assault.

Doe sued Hilton Management LLC and Clowers, alleging negligence, negligence per se, gross negligence, negligent undertaking, respondeat superior liability, and assault. The plaintiff claimed that the hotel should have asked for her identification, which would have shown that she was a paying guest of the hotel with her own room.

The jury awarded $44 million, finding that Clowers had sexually assaulted Doe. Clowers filed a notice of appeal, and the appellate court ordered the parties to mediate. The case against Clowers resolved at mediation.

CITATION: *Doe v. Hilton Mgmt. LLC*, No. 2018-84453 (Tex. Dist. Ct. Harris Cnty. May 5, 2022). **PLAINTIFF COUNSEL:** AAJ members Ed Blizzard and Anna Blizzard Greenberg, both of Houston; and AAJ member Michelle Simpson Tuegel, Dallas.

## Dangerous condition at wedding reception

Victoria Romeo-Burger, 22, was at her wedding reception, which took place under a tent in a restaurant parking lot. While dancing, her foot became caught in a hole in the pavement, causing her to twist her right knee. She suffered a torn ACL, and emergency medical technicians had to take her out of the reception. She later required surgeries.

Romeo-Burger sued the restaurant, alleging premises liability. The plaintiff asserted that the defendant failed to warn of a dangerous condition and should have required her to have a dance floor installed for the reception. The plaintiff did not claim lost income or medical expenses.

The jury awarded $400,000.

CITATION: *Romeo-Burger v. Ocean Pride Seafood*, No. 03-C-2019-004088 (Md. Cir. Ct. Baltimore Cnty. Apr. 27, 2022). **PLAINTIFF COUNSEL:** AAJ member David A. Muncy, Columbia, Md. **PLAINTIFF EXPERTS:** Michael Franchetti, orthopedic surgery, Ellicott City, Md.; and Alan Someck, hospitality, Great Neck, N.Y.

## TOXIC TORTS

## Toxic emissions from medical device sterilization plant led to woman's cancer

Sue Kamuda moved to Willowbrook, Ill., in 1985, less than a year after Sterigenics began its ethylene oxide sterilization operation in the community. Kamuda, who lived a quarter mile from the Sterigenics plant, was diagnosed as having aggressive breast cancer in 2007. She underwent surgery, chemotherapy, and radiation. Now 70, she is unable to engage in some of her former activities, such as running.

She sued Sterigenics U.S., LLC, alleging that it released toxic ethylene oxide (EtO) into the air, causing her and others to develop cancer. The plaintiff asserted that Sterigenics knew of the risks of using EtO to sterilize medical equipment yet continued to use excessive and unnecessary amounts of the carcinogen for decades without warning the community.

Additionally, the plaintiff argued, although Sterigenics executives and former parent company Griffith Foods International knew since the 1980s that EtO exposure posed significant risks to human health, the companies' use of EtO in reports to regulators was consistently downplayed.

Suit also alleged that Sterigenics and parent company Sotera Health, LLC began funneling $1.3 billion in assets to investors beginning in 2016, when unfavorable EPA reports were finalized regarding the potency of EtO.

The jury awarded $363 million, finding Sterigenics, Griffith Foods, and Sotera Health liable for negligence, civil battery, and public nuisance. The award included $325 million in punitive damages.

CITATION: *Kamuda v. Sterigenics U.S., LLC*, No. 2018 L 010475 (Ill. Cir. Ct. Cook Cnty. Sept. 19, 2022). **PLAINTIFF COUNSEL:** AAJ member Patrick A. Salvi II, AAJ member Lance D. Northcutt, AAJ member Jennifer M. Cascio, AAJ member Scott A. Entin, Roisin Duffy-Gideon, and Deanna N. Pihos, all of Chicago; and AAJ member Shawn Collins and Margaret Galka, both of Naperville, Ill.

**FOR MORE** verdicts and settlements, subscribe to AAJ's specialty *Law Reporters* at www.justice.org/lawreporters.

**TO SUBMIT** your verdict or settlement for possible publication in *Trial*, *Trial News*, or one of the *Law Reporters*, send the case details to law.reporter@justice.org.

**EXHIBIT A-19**