# BLACKFORD | CARLS
## —— TRIAL LAWYERS ——

SHERINE D. BLACKFORD
HILLARY P. CARLS

May 31, 2023

**Via Email**
Calvin J. Stacey
Morgan Sorena
Stacey & Funyak
P.O. Box 1139
Billings, MT 59103-1139
cstacey@staceyfunyak.com
msorena@staceyfunyak.com

Re: *Klemann v. Ailes*

Dear Cal and Morgan,

Enclosed please find Warren Michelson's summary of his treatment and work with Elizabeth Klemann.

Regarding a motion to dismiss, we are confident that our claims are timely and will be able to proceed pursuant to her negligence theories. Related to an intentional tort, the relevant inquiry centers on Mr. Ailes's intent, including whether he intended the harm caused. Given Mr. Ailes's denial, intoxication, concussion, and other factual disputes related to Mr. Ailes's intent, dismissal is prohibited and these items will be resolved by a jury.

Further, the more I learn about Mr. Ailes's reckless history, I become convinced that Mr. Ailes's mother, Elizabeth, negligently supervised Mr. Ailes.

Attached is the updated draft complaint. To ensure clarity and the focus of Ms. Klemann's negligence claims, we have re-organized the allegations. We have also included negligent supervision claims against Mrs. Ailes. Ms. Klemann's claims collectively reflect Mr. Ailes's ongoing negligent and damaging actions and inaction. Ms. Klemann's claims are based in negligence and are timely.

Ms. Klemann intends to proceed with filing the amended complaint. She remains open to settling this matter with your client. Her $5 million settlement offer will seeks to resolve all of Ms. Klemann's claims resulting from July 2019—the car crash and sexual assault, against Mr. Ailes and his mother.

However, Ms. Klemann is not interested in pursuing this action against Mr. Ailes as a John Doe. While there is ample law justifying Ms. Klemann's anonymous status given that she is a victim of sexual assault, there is no reasonable rational for Mr. Ailes, the

DOWNTOWN BOZEMAN      email: info@blackfordcarls.com
602 W. Lamme St.      office: 406.577.2145
Bozeman, MT 59715     fax: 406.219.0256

**EXHIBIT C-1**

perpetrator, to remain anonymous. In fact, the trend favors transparency and accountability for perpetrators, with confidentiality clauses in releases even becoming rare. Regardless, if Mr. Ailes continues to seek to be identified as a "John Doe" because Ms. Klemann seeks to proceed as a "Jane Doe," Ms. Klemann will not proceed anonymously.

Please advise whether your client will participate in settlement conversations by **June 22, 2023**. If we are unable to resolve this matter, we will proceed with filing the amended complaint and service.

Please do not hesitate to contact me to discuss this matter further. Thank you.

Cordially,

BLACKFORD CARLS P.C.

Hillary P. Carls

cc:    Client

**EXHIBIT C-2**

**Warren Michelson, L.C.S.W.**
308 West Pine Street
Missoula, Mt. 59802
(406) 546-9033   Fax (406) 721-2833
<u>wmichelsonlcsw@gmail.com</u>

<u>Psychotherapy Treatment Summary, May 1, 2023: Elizabeth Klemann (2/13/2000 )</u>

I. Intake: initial sessions, clinical impressions, Mental Status Evaluation (brief), brief client history:

Elizabeth Klemann contacted me for individual psychotherapy in November 2022. We met for an initial session on November 9th. Elizabeth came to this first session well-groomed and casually dressed ( sweatshirt and jeans). Elizabeth  was thoughtful and reserved in our discussion of her personal history and reasons for seeking therapy. Elizabeth stated she is a fourth-year college student, nearing completion of an elementary teaching certificate. Ms. Klemann also works part-time as a host/server, works out at a gym, and participates in several team sports.  Eliszabeth appeared fully oriented in time and environment, but added that she has periods of intense and overwhelming emotions, and some moments of derealization, likely due to combination of traumatic events and a concussion/traumatic brain injury. Elizabeth's speech was fluent and well-articulated, her expression showing a degree of dysphoria and pained emotion. Her affect was  somber and anxious, and she teared-up several times during our sessions.Elizabeth said she had been struggling with anxiety, depression and periods of overwhelming worry, sadness and confusion since being the passenger in a near-fatal car accident approximately two years earlier. Ms. Klemann added that she suffered a significant traumatic brain injury in that collision.
 Elizabeth stated her parents divorced when she was 12 years old, and that the relationship with Elizabeth's father became increasingly strained in the years after her parent's divorce.  Elizabeth talked about her childhood and teen years with a loving but critical mother and a self-absorbed, substance-abusing, angry father. Elizabeth added that she was bullied frequently because she was a large child: the impacts of this bullying continue to plague Ms. Klemann as a young adult woman.

II. Initial Assessment:  presenting problems,  clinical assessment, scope of psychotherapy:

 Elizabeth came to therapy carrying emotional injuries from childhood and  young adult life, where difficult life experiences and accompanying emotions were internalized as self-blame and depression. Elizabeth described her current situation in early therapy sessions:  chronic sleep disturbances, frequent  feelings of hopelessness and crying lasting for hours, trouble focusing on and completing schoolwork, feelings of worthlessness and isolation, anxiety and near-panic moments, intrusive memories of several non-consensual sexual experiences, disturbing flashbacks (auditory and visual) of the near-fatal car accident and of the disturbing post-accident sexual encounters with the driver of the truck. Elizabeth said that trying to manage all these emotions and memories was making day-to-day functioning very difficult, and she was having panic-attacks and vague but persistent suicidal thoughts. This therapist assessed Ms. Klemann as meeting DSM-5tr criteria for Posttraumatic Stress Disorder, chronic, with anxiety and depressive features. In addition to her PTSD diagnosis, Elizabeth has likely  struggled with an undiagnosed persistent depressive disorder since adolescence; the result of attachment injuries and some developmental traumas in childhood and teen years.

**EXHIBIT C-3**

**Warren Michelson, L.C.S.W.**
308 West Pine Street
Missoula, Mt. 59802
(406) 546-9033   Fax (406) 721-2833
wmichelsonlcsw@gmail.com

III. Course of treatment: including progress and focus of treatment:

Since entering therapy, Elizabeth has shown a tenacious dedication to her personal growth and healing. Ms. Klemann has attended psychotherapy weekly since intake, a total of 24 hour-long sessions. Ms. Klemann's work in therapy has focused on healing from some serious childhood adversity, coming to terms with several non-consensual sexual encounters (including the current legal case Ms. Klemann is pursuing), and finding insight and strength to assert her personal boundaries and self-determination. Elizabeth has gained skills in managing PTSD and anxiety symptoms, and has completed several narrative trauma re-experiencing and discharging sessions. In spite of her dedication to healing, Ms. Klemann continues to experience disabling PTSD symptoms, and has been particularly vulnerable as the legal case against the young man who recklessly involved her in a severe auto accident and also sexually assaulted Ms. Kleeman moves forward. Weekly psychotherapy will continue until Elizabeth's PTSD and anxiety symptoms have been successfully managed, and she is functioning without significant impairment.

IV. Summary and prognosis:
DSM-5 Diagnosis:
F43.10 Post-traumatic stress disorder, with anxiety, panic-attacks and some derealization, including complications from traumatic brain injury.
F34.1 Persistent depressive disorder.
F45.22 Body dysmorphic disorder.

Ms. Klemann continues to confront and address her PTSD, attachment injuries and clinical anxiety, and her prognosis for full recovery (with continued treatment) is good. Elizabeth has a loving and supportive mother and an extensive and caringfriends group, a bright sense of humor and compassion,  and a value for serving others. Elizabeth particularly loves working with children, and is nearing completion of the kindergarten-to-8th grade teaching certification. Ms. Kleeman will continue to mature, find her adult voice, and become an excellent teacher, mentor and advocate in her chosen career.

Please let me know if I can provide any additional perspective on this client.

Respectfully submitted,
*Warren Michelson, LCSW*
Warren Michelson, LCSW, Mt. #980

**EXHIBIT C-4**

**Warren Michelson, L.C.S.W.**
308 West Pine Street
Missoula, Mt. 59802
(406) 546-9033   Fax (406) 721-2833
<u>wmichelsonlcsw@gmail.com</u>

<u>Confidential HIPAA Protected Document: to be released only to individuals authorized by
signed release of information of this client</u>

**EXHIBIT C-5**

Hillary P. Carls
BLACKFORD CARLS P.C.
602 W. Lamme Street
Bozeman, MT 59715
406.577.2145
406.219.0256 (fax)
carls@blackfordcarls.com
*Attorney for Plaintiff*

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| Elizabeth Klemann, | |
| Plaintiff, | Case No.: DV-15-2022-736-NE |
| vs. | **First Amended Complaint & Jury Trial Demand** |
| Zachary Joseph Jackson Ailes, Elizabeth Ailes, and John Doe Defendants 2-50, | |
| Defendants. | |

Plaintiff, Elizabeth Klemann, complains and alleges as follows:

1.      At all times relevant Plaintiff Elizabeth Klemann ("Plaintiff") was a resident of Kalispell, Flathead County, Montana.

2.      At all times relevant Defendant Zachary Joseph Jackson Ailes ("Ailes") was a resident of Palm Beach, Florida.

3.      At all times relevant Defendant Elizabeth Ailes ("Mrs. Ailes") was a resident of Palm Beach, Florida.

4.      Plaintiff believes that the John Doe Defendants are subject to the jurisdiction of the State of Montana and this Court.  The John Doe Defendants are parties that may have been involved in the occurrence set out herein, may have been agents of, employers of, employees of franchisers or franchisees of, or contractually obligated to the named Defendants or are in privy with the named Defendants and, therefore, said John Doe Defendants may have committed one or more

1

**EXHIBIT C-6**

of the acts set out herein or may be responsible through tortuous interference, strict liability, breach of warranty, negligence, negligent misrepresentation, the law of agency, respondeat superior, franchise law or by contract for the acts of the named Defendant as set out herein. Plaintiff believes and therefore alleges that the John Doe Defendants may have committed one or more of the acts set out herein and that they would therefore be liable for the same. Plaintiff will amend these pleadings as the case progresses to specify the various acts of the John Doe Defendants.

<b><u>Introduction</u></b>

5.      In July 2019, Ailes and the Plaintiff has just met in-person, previously knowing each other only through social media. Ailes and the Plaintiff were both 19-years-old.

6.      Upon information and belief, Ailes had previously spent time in Montana at addiction and behavioral treatment facilities. In July 2019, he had returned to Montana for a vacation and to visit people he attended treatment with.

7.      The Plaintiff is a fifth-generation Montanan, who moved to Kalispell as a child. In July 2019, the Plaintiff was home from college for the summer.

8.      This case is about how, in the brief time Ailes and the Plaintiff were both in Kalispell, Ailes's negligent, reckless, and dangerous choices and actions forever changed the Plaintiff's life.

<b><u>Motor Vehicle Accident</u></b>

9.      On or about July 12, 2019, at approximately 9:30 a.m., Ailes was driving his vehicle eastbound on U.S. 2 in Flathead County, Montana. At this time, Plaintiff was a passenger in Ailes's vehicle and had only known Ailes a few days.

2

<b>EXHIBIT C-7</b>

10.     Ailes attempted to follow another vehicle and pass a semi-truck with a trailer on U.S. 2. Ailes did not have a clear view while attempting to pass.  Ailes failed to ensure that it was safe to pass the semi-truck. It was not safe to pass the semi-truck.

11.     While Ailes attempted to pass the semi-truck, another vehicle was traveling westbound on U.S. 2 approaching the same location.  Ailes crashed his vehicle head-on into the westbound vehicle.

12.     As a result of Ailes' actions, he was charged with the offense of Careless Driving, in violation of § 61-8-302, MCA.

13.     As a result of the negligent acts or omissions of Ailes, Plaintiff suffers from aggravating, persistent, and permanent injuries to her body and psyche, including, but not limited to, a traumatic brain injury.

14.      Plaintiff's injuries impair her ability to carry out her normal activities, including her daily routine.  While Plaintiff attempts to continue her normal activities, she suffers great pain, discomfort, and other limitations by so doing.

15.     Plaintiff has been required to seek medical attention in order to relieve her pain, discomfort, and conditions, which may never permanently resolve.

16.     Plaintiff's traumatic brain injury has forced her to significantly change her life, including emotional changes and swings, post-traumatic stress disorder, anxiety, flashbacks, personality changes, nausea, migraines, and dizziness, among other injuries and symptoms.

17.     That, upon information and belief, Ailes had a history of dangerous driving and knew or should have known the consequences to himself and others with his choice to drive dangerously and recklessly.

18.     That Ailes's actions created a high probability of injury to Plaintiff.

3

**EXHIBIT C-8**

19.     That Ailes's deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury to Plaintiff.

<b><u>Sexual Assault</u></b>

20.     In the few days that Plaintiff knew Ailes prior to the July 12, 2019 crash, Ailes repeatedly put Plaintiff in dangerous situations and exerted control over the Plaintiff.

21.     The first time Plaintiff met Ailes, he tried kissing her three times, to which each time Plaintiff said no and Ailes ignored her.

22.     Ailes violated Plaintiff's boundaries by:

   a.   Drunk driving on 3 separate nights, often forcing Plaintiff to ride with him when she did not want to;

   b.   Driving recklessly every time Plaintiff was in his vehicle;

   c.   Controlling and demanding unwanted sexual contact, including becoming violent. In one incident, Ailes asked if he could slap Plaintiff during sex and initially Plaintiff consented.  However, after the first slap Plaintiff asked Ailes to stop, but he ignored her request, hitting her harder when he slapped her face again; and

   d.   Playing with and handling firearms in a disrespectful, reckless manner, including one incident where Ailes repeatedly tossed and flipped a loaded pistol on a bed that Plaintiff was sitting on, even after Plaintiff asked him to stop. The Plaintiff was scared for her life.

23.     Upon information and belief, Ailes sought to groom and control Plaintiff.

24.     That Ailes's reckless and dangerous behavior escalated after the July 12, 2019 crash, when Plaintiff was particularly vulnerable and struggling with her brain injury.

4

**EXHIBIT C-9**

25.     At all relevant times, Ailes knew or should have known Plaintiff was suffering and struggling from a brain injury. Ailes observed the symptoms of her brain injury, such as her emotional bursts and odd behavior.

26.     Approximately 2-weeks after the crash, on or about July 29, 2019, in the evening, Ailes and Plaintiff met at the Kalispell Grand Hotel, where Ailes was staying. At dusk, they walked to Moose's Bar and Pizza.

27.     During that evening, Ailes stated that Plaintiff was acting drunk and asked her to calm down. Ailes statement puzzled Plaintiff because she had not consumed enough alcohol to be acting drunk. In the span of 3-hours, Plaintiff consumed 4-White Claws.

28.     Between 11pm and midnight, Ailes and Plaintiff left Moose's Bar and Pizza, and walked back to the Kalispell Grand Hotel.

   a.  Plaintiff was unable to walk straight.

   b.  Ailes helped her walk.

   c.  Ailes instructed Plaintiff to stop being so loud.

   d.  Once Ailes and Plaintiff arrived at the Kalispell Grand Hotel, Plaintiff recalls making a comment to which Ailes responded with anger.

29.     Plaintiff's next memory is some unknown period of time later and brief: Ailes on top of Plaintiff without a shirt on.

30.     Plaintiff woke up the next morning not wearing underwear or pants, but still wearing her shirt and bra. Ailes was in his boxers.

31.     Plaintiff got dressed, explained to Ailes that she did not remember the night before, and asked if they had sex. Ailes confirmed that he had sex with her.

32.     Plaintiff was incapable of consenting to have sex with Ailes.

5

**EXHIBIT C-10**

33. Ailes did not have Plaintiff's consent to have sex with her on or about July 29, 2019.

34. Ailes knew or should have known of Plaintiff's impaired condition because Ailes:

    a. Created her impairment by:

        i. causing the car crash, which resulted in Plaintiff's brain injury;

        ii. encouraging Plaintiff to consume alcohol; and/or

        iii. upon information and belief, providing another intoxicant to impair Plaintiff; and/or

    b. Commented on and observed the Plaintiff's impaired condition.

35. That Ailes knew or should have known that Plaintiff was so impaired that she could not have consented to having sex with him.

36. That Ailes knew or should have known that Plaintiff did not consent to having sex with him.

37. When Plaintiff was the most vulnerable, Ailes violated her trust and had sex with her without Plaintiff's consent.

38. That Ailes had sexual contact with Plaintiff without her consent.

39. That Ailes had sexual intercourse with Plaintiff without her consent.

40. That Ailes had sexual intercourse with Plaintiff when she was incapable of consent.

41. That Ailes sexually assaulted Plaintiff.

42. As a result of Ailes' actions, Ailes violated §§ 45-5-502 and 503, MCA, which prohibits sexual assault and sexual intercourse without consent.

43. As a result of the acts or omissions of Ailes, Plaintiff suffers from aggravating, persistent, and permanent injuries to her body and psyche.

6

**EXHIBIT C-11**

44.    Plaintiff's injuries impair her ability to carry out her normal activities, including her daily routine.  While Plaintiff attempts to continue her normal activities, she suffers great pain, discomfort, and other limitations by so doing.

45.    Plaintiff has been required to seek medical attention in order to relieve her conditions, which may never permanently resolve.

46.    That Ailes knew or should have known the consequences to Ms. Klemann with his choice to sexually assault Plaintiff.

47.    That Ailes's actions created a high probability of injury to Plaintiff.

48.    That Ailes's deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury to Plaintiff when he sexually assaulted her.

**Elizabeth Ailes**

49.    That Ailes had a history of reckless and dangerous behavior, including but not limited to, a 2020 Arizona charge of Extreme Driving Under the Influence – BAC .15 to .20, among other charges.

50.    That Ailes had a history of substance abuse.

51.    That Ailes had a history of behavioral issues.

52.    That Mrs. Ailes is Ailes mother.

53.    That Mrs. Ailes knew about Ailes substance abuse and behavioral issues, and sent Ailes to Montana to attend the addiction and behavioral treatment facility.

54.    That, at all times relevant, Mrs. Ailes directed, supported, funded, enabled, and/or authorized Ailes behavior and propensities.

7

**EXHIBIT C-12**

55.     That, at all times relevant, Mrs. Ailes directed, supported, funded, enabled, and/or authorized Ailes's behavior and actions, including but not limited to, Ailes traveling to Montana in July 2019.

56.     That, at all times relevant, Mrs. Ailes had a special relationship with Ailes.

57.     That, at all times relevant, Mrs. Ailes had a duty to supervise Ailes.

58.     That Mrs. Ailes knew or should have known of Ailes's reckless and dangerous behavior and propensities.

59.     That Mrs. Ailes had the authority and power to stop, deter, and change Ailes's behavior and propensities.

60.     That Ailes's actions and inaction complained of herein were a foreseeable consequence of Mrs. Ailes's failure to adequately supervise Ailes.

61.     That if Mrs. Ailes satisfied her duty of care and supervised Ailes, Mrs. Ailes would have prevented his actions complained of herein.

62.     That Mrs. Ailes had the duty and ability to prevent Ailes's actions, but she did not.

63.     As a result of the acts or omissions of Mrs. Ailes, Plaintiff suffers from aggravating, persistent, and permanent injuries to her body and psyche.

64.     Plaintiff's injuries impair her ability to carry out her normal activities, including her daily routine.  While Plaintiff attempts to continue her normal activities, she suffers great pain, discomfort, and other limitations by so doing.

65.     Plaintiff has been required to seek medical attention in order to relieve her conditions, which may never permanently resolve.

### Count 1—Negligence—Zachary Ailes

8

**EXHIBIT C-13**

66.    Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

67.    That in the July 12, 2019 crash, Ailes was negligent and this negligence legally and proximately caused the injuries suffered by Plaintiff.

68.    That in the July 29, 2019 sexual assault, Ailes was negligent and this negligence legally and proximately caused the injuries suffered by Plaintiff.

69.    That in the July 29, 2019 sexual assault, Ailes did not intend to harm Plaintiff, and therefore, is negligent.

70.    That in the July 29, 2019 sexual assault, Ailes did not expect or intend the consequences, and therefore, is negligent.

71.    Ailes is liable for said acts of negligence.

72.    As a result of Ailes's negligence, Plaintiff has suffered damages in an amount to be determined at trial.

### Count 2—Negligence *Per Se*—Zachary Ailes

73.    Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

74.    That in the July 12, 2019 crash, Ailes was negligent, as a matter of law, when he violated § 61-8-302, MCA, and this negligence as a matter of law legally and proximately caused the injuries suffered by Plaintiff.

75.    That in the July 29, 2019 sexual assault, Ailes was negligent, as a matter of law, when he violated §§ 45-5-502 and 503, MCA, and this negligence as a matter of law legally and proximately caused the injuries suffered by Plaintiff.

76.    Ailes is liable for said acts of negligence as a matter of law.

9

**EXHIBIT C-14**

77.    As a result of Ailes's negligence, as a matter of law, Plaintiff has suffered damages in an amount to be determined at trial.

### Count 3—Negligent Supervision—Elizabeth Ailes

78.    Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

79.    That Mrs. Ailes had a duty to supervise Ailes.

80.    That Mrs. Ailes breached her duty and negligently supervised Ailes.

81.    That the July 12, 2019 crash was a foreseeable and preventable consequence of Mrs. Ailes's breach of her duty of care.

82.    That the July 29, 2019 sexual assault was a foreseeable and preventable consequence of Mrs. Ailes's breach of her duty of care.

83.    That Mrs. Ailes is liable for said acts of negligence.

84.    As a result of Mrs. Ailes's negligence, Plaintiff has suffered damages in an amount to be determined at trial.

### Count 4—Emotional Distress—Both Defendants

85.    Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

86.    Said acts or omissions by both Defendants related to the July 12, 2019 crash as set out above have proximately caused and resulted in negligent and intentional infliction of emotional distress on Plaintiff, damaging Plaintiff in an amount to be determined at trial.

87.    Said acts or omissions by both Defendants related to the July 29, 2019 sexual assault as set out above have proximately caused and resulted in negligent and intentional infliction of emotional distress on Plaintiff, damaging Plaintiff in an amount to be determined at trial.

10

**EXHIBIT C-15**

88.     As a result of the actions of both Defendants, Plaintiff has been damaged in an amount to be determined at trial.

### Count 5—Actual Fraud/Malice—Zachary Ailes

89.     Plaintiff realleges all of the acts set out in the introduction and alternate counts of this Complaint.

90.     Ailes is guilty of actual fraud and/or malice as defined in § 27-1-221, MCA, for engaging in the aforementioned conduct regarding:

      a.   the July 12, 2019 crash; and

      b.   the July 29, 2019 sexual assault.

91.     That Ailes's actions resulted when he deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury to the Plaintiff.

92.     That Ailes's should be assessed punitive damages sufficient to punish, deter, and make an example of such wrongdoing pursuant to § 27-1-221, MCA.

93.     As a result of the actions of Ailes, Plaintiff has been damaged in an amount to be determined at trial.

### Jury Trial Demand

Plaintiff, Elizabeth Klemann, hereby demands trial by jury on all issues.

### Prayer for Relief

Plaintiff prays judgment as follows:

1.     For judgment in favor of Plaintiff and against the Defendants on all Counts.

2.     For all past, present, and future medical expenses incurred by Plaintiff.

3.     For compensatory damages in an amount to be determined at trial to compensate the Plaintiff.

11

**EXHIBIT C-16**

4.      For damages in an amount to be determined at trial for all past, present, and future mental anguish and emotional distress suffered by Plaintiff.

5.      For punitive damages, as the same may be allowed by law.

6.      For all costs incurred in the prosecution of this action.

7.      For an award of interest, as deemed appropriate by the Court and as allowed by law.

8.      For an award of attorney's fees, as the same may be allowed by law.

9.      For such other and further relief, both at law and in equity, as the Court shall deem just and proper.

DATED this _____ day of June, 2023.

BLACKFORD CARLS P.C.

Hillary P. Carls
*Attorney for Plaintiff*

12

**EXHIBIT C-17**