

570 Lexington Avenue, Suite 3500
New York, NY 10022

Kenneth A. Caruso
Special Counsel
212-466-6401
Ken.caruso@mfsllp.com

June 21, 2023

**VIA FEDEX AND EMAIL**
Hillary P. Carls, Esq.
Blackford Carls P.C.
602 W. Lamme Street
Bozeman, MT 59715

      Re:     **Klemann v. Ailes**

Dear Ms. Carls:

I have been retained to represent Zachary Ailes and Elizabeth Ailes, and to appear as co-counsel with Cal Stacey (copied). I have read the correspondence exchanged between Cal and you. I have also read and analyzed the Draft First Amended Complaint, dated February 24, 2023 ("February Draft"), and the updated Draft First Amended Complaint, dated June 2023 ("June Draft"). I write to address, and to set forth clearly our position regarding, two main topics—the allegations of "sexual assault" by Mr. Ailes and the addition of Mrs. Ailes as a defendant. I write also to amplify Cal's letter to you, dated June 6, 2023, in which stated that he does not see "a good faith basis" for these claims.

\*      \*      \*

Allegations against Mr. Ailes. The February Draft alleged a stand-alone claim (or count) for "sexual assault." As Cal pointed out in his letter to you, dated February 23, 2023, that claim is time-barred under M.C.A. § 27-2-204(3). It appears that you implicitly concede this point, in that your June Draft drops that stand-alone claim.

Your June Draft nevertheless seeks to shoehorn the assault claim into the negligence claim. "The gravamen of the claim," however, "not the label attached, controls the limitations period to be applied to that claim." Erickson v. Croft, 233 Mont. 146, 153 (1988). "[A] plaintiff cannot, simply by virtue of mislabeling a claim for relief, change the gravamen of the action and secure a longer period of limitation." H & H Development, LLC v. Ramlow, 364 Mont. 283, 287 (2012) (internal quotation marks omitted).

Here, leaving aside the allegations regarding the auto collision, the gravamen of your claim is "sexual assault," a phrase used extensively in the June Draft. See, e.g., ¶ 41 (specifically alleging that Mr. Ailes "sexually assaulted Plaintiff[]"); see generally ¶¶ 20-48 (all under the

**EXHIBIT E-1**

Hillary P. Carls, Esq.
June 21, 2023
Page 2

heading "Sexual Assault").  Paragraph 68 exemplifies the legal flaw.  That paragraph alleges, in pertinent part, "[t]hat in the . . . sexual assault, Ailes was negligent[.]"  "There is," however, "properly speaking, no such thing as a negligent assault."  Prosser, Law of Torts ("Prosser") § 10 at 46 (5th ed. 1984).  The gravamen—assault—controls, and the claim remains time-barred.  See Weston v. Cole, 233 Mont. 61, 63 (1988) (plaintiff who asserts claim for assault and battery cannot secure longer limitations period "by alleging that he intends to prove simply an 'unlawful act'" instead of an intentional tort).

Nor do the allegations set forth in ¶¶ 69-70 of the June Draft change the gravamen of the claim.  Those allegations—that Mr. Ailes "did not intend to harm Plaintiff[,]" ¶ 69, and "did not expect or intend the consequences[,]" ¶ 70—do not remove the claim from the realm of intentional tort or reduce the claim to negligence.

The relevant intent is not an intent to harm but an intent to inflict offensive bodily contact.  "If an act is done with the intention of inflicting . . . an offensive but not a harmful bodily contact, or of putting another in apprehension of either a harmful or offensive bodily contact, and such act causes a bodily contact . . . the actor is liable . . . for a battery although the act was not done with the intention of bringing about the resulting bodily harm."  Restatement (Second) Torts ("Restatement") § 16(1) (1965); see id. § 13 (actor liable for battery if he acts "intending to cause a harmful or offensive contact" and "a harmful contact . . . results[]"); Id. § 21(1)(a) (actor liable for assault if "he acts intending to cause a harmful or offensive contact" and "the other is thereby put in such imminent apprehension[]").

In other words, the lack of "intent to harm is immaterial. . . . [V]oluntary contact constitutes the tort of battery."  White v. University of Idaho, 115 Idaho 564, 565 (1989) (holding defendant liable where he "intended to touch [the plaintiff], though he did not intend to cause harm or injury.")  "The intent element of the tort of battery does not require a desire or purpose to bring about a specific result or injury; it is satisfied if the actor's affirmative act causes an intended contact which is unpermitted and which is harmful or offensive."  Id.  Many other cases so hold, with respect to both battery and assault.[1]  See Prosser § 10 at 46 ("The intent element for assault is identical with that for battery.")

Here, the June Draft alleges intentional bodily contact.  See, e.g., ¶¶ 29, 31, 33, 38-41.  It therefore alleges an intentional tort, which is time-barred.

---

[1] See, e.g., Borrerro v. Haks Group, Inc., 165 A.D.3d 1216, 1218, 87 N.Y.S.3d 618, 622 (App. Div. 2d Dep't 2018) ("[o]nce intentional offensive contact has been established, the actor is liable for battery, not negligence") (internal quotation marks omitted); Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197, 1209 (10th Cir. 2006) (battery committed where defendants touched the plaintiff "intending to cause an offensive contact[;]" intent "merely to pull a prank[,]" rather than intent to injure, held not "an excuse" from liability for battery); Labadie v. Semler, 66 Ohio App. 3d 540, 543 (Ohio App. 1990) (defendant liable for battery where he intended to "scare[,]" rather than harm, the plaintiff; "While [defendant] may not have envisioned the resulting injuries his action caused, he is nevertheless, liable for his intentional tortious conduct[]"); Bennight v. Western Auto Supply Co., 670 S.W.2d 373, 378  (Tex. App. 1984) (defendant committed assault when he "[i]ntentionally plac[ed the plaintiff] in . . . fear[;]" his "intention to place [the plaintiff] in such apprehension extends by operation of law to the specific additional injury which she did receive . . . whether or not the [defendant] in fact intended that additional and subsequent harm.")

**EXHIBIT E-2**

Hillary P. Carls, Esq.
June 21, 2023
Page 3

\*       \*       \*

I turn now to the portion of the June Draft that names Mrs. Ailes as a defendant and asserts a claim against her for "negligent supervision" of Mr. Ailes. This claim fails for two reasons. First, the Montana courts lack personal jurisdiction over Mrs. Ailes. Second, the claim fails to state a claim upon which relief can be granted.

Lack of personal jurisdiction. For present purposes, I will not dwell on the question whether the court would have personal jurisdiction under the long-arm statute, M. R. Civ. P. 4(b)(1)(B), although, on the allegations in the June Draft, the court clearly would not have such jurisdiction. See, e.g., Tackett v. Duncan, 376 Mont. 348, 358-60 (2014) (holding that tort action does not accrue in Montana where alleged injury occurred in Montana but defendants' "course of conduct forming the basis of [plaintiff's] claims" did not occur in Montana). Rather, I address the constitutional question: Under the Due Process Clause of the Fourteenth Amendment, Mrs. Ailes is not subject to the personal jurisdiction of the Montana courts.

Specifically, Walden v. Fiore, 571 U.S. 277 (2014), forecloses the exercise of jurisdiction in this case. As held in Walden, a nonresident of the forum state must have "certain minimum contacts" with the forum state, "contacts that the defendant h[er]self creates with the forum State." Id. at 284 (internal quotation marks omitted). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." Id. (internal quotation marks omitted).

Here, as acknowledged in the June Draft at ¶ 3, Mrs. Ailes is a nonresident of the forum state of Montana. The June Draft, however, does not—and cannot—allege that Mrs. Ailes herself had any contacts with Montana. Contacts between Ms. Klemann and Montana, or between Mr. Ailes and Montana, are, as a matter of law, insufficient.

The same conclusion follows under another formulation applied in countless cases. Under that formulation, jurisdiction depends on whether "the nonresident defendant purposefully availed itself of the privilege of conducting activities in Montana, thereby invoking Montana's laws[.]" Ford Motor Co. v. Montana Eighth Judicial District Court, 395 Mont. 478, 486 (2019), aff'd, 141 S. Ct. 1017, 1024 (2021). A defendant, however, "does not purposefully avail itself of the forum's laws when its only contacts with the forum are random, fortuitous, attenuated, or due to the unilateral activity of a third party." Ford, 395 Mont. at 486 (internal quotation marks omitted). Rather, "[t]he contacts must be the defendant's own choice and not random, isolated, or fortuitous." Ford, 141 S. Ct. at 1025 (internal quotation marks omitted).

Here, plainly, Mrs. Ailes did not purposefully avail herself of the privilege of conducting activities in Montana. In fact, she conducted no activities in Montana. The only contacts with the forum were due to the unilateral activity of third parties, Ms. Klemann and Mr. Ailes.

Failure to state a claim. In general, the law imposes on a person no duty to act to protect or aid another. See, e.g., Restatement § 314. In particular, the law imposes no duty on a person to supervise or control the conduct of a third person, so as to prevent that third person from

**EXHIBIT E-3**

Hillary P. Carls, Esq.
June 21, 2023
Page 4

causing harm to another, unless a "special relationship" exists between the person and the third person, "which imposes a duty on the [person] to control the third person's conduct." Restatement § 315(a); see, e.g., Maryland Cas. Co. v. Asbestos Claims Court, 399 Mont. 279, 299-300 (2020); Krieg v. Massey, 239 Mont. 469, 472 (1989).

The June Draft implicitly acknowledges the foregoing principles, alleging that Mrs. Ailes had a "special relationship" with Mr. Ailes, and therefore "had a duty to supervise [Mr.] Ailes." June Draft ¶¶ 5, 56-57; 79-80. That allegation, however, has no legal support. The law, in some "limited and exceptional circumstances[,]" Crisafulli v. Bass, 308 Mont. 40, 46 (2001), recognizes that a special relationship may arise between a parent and a "minor child." See id. at 43-47 (adopting Restatement § 316). In July 2019, however, the time relevant here, Mr. Ailes was 19 years old and therefore not a minor child. See Montana Const., Art. 2, § 14 ("A person 18 years of age or older is an adult for all purposes[]" (with exceptions regarding alcohol and marijuana)); M.C.A. § 41-1-101 (defining "Minors" as persons under 18 years of age; "All other persons are adults."); In re Marriage of McFate, 239 Mont. 492, 494 (1989) ("In Montana, the age of majority is 18."); June Draft ¶ 5 (alleging that Mr. Ailes was 19 years old).

I am aware of no Montana case creating a special relationship, and a resulting duty to supervise, between a parent and an adult child. There is, furthermore, no nonfrivolous argument for extending the law to create such a duty: The creation of such a duty would contravene a statute, M.C.A. § 40-6-234(3), which provides, in pertinent part: "The authority of the parent ceases . . . upon [the child] attaining majority." Where, as here, a parent, by statute, has no "authority" to act with respect to an adult child, a court cannot impose upon that parent a "duty" to act with respect to that adult child. A court cannot create a common-law duty that conflicts with a statute. See M.C.A. § 1-1-108 ("there is no common law in any case where the law is declared by statute[;] . . . common law may "not conflict with the statutes[]"); Maryland Cas., 399 Mont. at 301 n.23 (Supreme Court has "discretion to develop and prune the common law to address public policy exigencies unaddressed by statute[]"); Crisafulli, 308 Mont. at 46 (adopting Restatement § 316 "in the absence of a legislative policy to the contrary[]").

*        *        *

I'm sure that you have researched these issues, as required by M. R. Civ. P. 11(b). If I have overlooked any case(s) or statute(s), please give me the citations. If, however, on the existing record, you file the June Draft, then we will mount a vigorous defense, including a motion to dismiss, a motion for sanctions and the assertion of counterclaims, if further research supports such assertion.

Twice now you have escalated this matter, while seeking a settlement. Thus, your February Draft escalated an auto-collision case into something very different—a sexual assault case; your June Draft escalated again by seeking to name Mrs. Ailes. We believe that your purpose is improper: to impose the maximum pressure on the Ailes family, and to damage reputations publicly, in order to increase the settlement value of this case. We urge you to drop the claims addressed in this letter.

**EXHIBIT E-4**

Hillary P. Carls, Esq.
June 21, 2023
Page 5

Very truly yours,

Kenneth A. Caruso

cc:     Calvin J. Stacey, Esq.

**EXHIBIT E-5**