Calvin J. Stacey
Morgan M. Sorena
STACEY & FUNYAK
The Grand Building, Suite 700
100 North 27th Street
P.O. Box 1139
Billings, MT 59103-1139
Phone: (406) 259-4545
cstacey@staceyfunyak.com
msorena@staceyfunyak.com

Kenneth A. Caruso
KENNETH CARUSO LAW LLC
15 West 72nd Street
New York, NY 10023
Phone: (646) 599-4970
ken.caruso@kennethcarusolaw.com

*ATTORNEYS FOR DEFENDANT*
*ZACHARY JOSEPH JACKSON AILES*

## IN THE UNITED STATES DISTRICT COURT
## THE DISTRICT OF MONTANA
## MISSOULA DIVISION

|  |  |
|---|---|
| ELIZABETH KLEMANN, | ) ) | CASE NO.:  9:23-CV-00150-DLC-KLD |
| Plaintiff, | ) ) |  |
| v. | ) ) ) ) | **DEFENDANT'S RULE 12(b)(6) BRIEF IN SUPPORT OF MOTION TO DISSMISS, IN PART, FIRST AMENDED COMPLAINT** |
| ZACHARY JOSEPH JACKSON AILES and JOHN DOE DEFENDANTS 1-50, | ) ) ) |  |
| Defendant. | ) ) |  |

**EXHIBIT G-1**

Defendant, Zachary Ailes ("Defendant"), respectfully submits this Brief in support of his motion, pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss, in part, the First Amended Complaint ("FAC"), ECF 1-1, filed by Plaintiff, Elizabeth Klemann ("Plaintiff").

## STATEMENT OF FACTS

Defendant bases the following statement on the allegations of the FAC, which, on this motion to dismiss, the Court will take as true. *See In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation ["DRAM"]*, 28 F.4th 42, 46 (9th Cir. 2022).

Plaintiff is a citizen of Montana. Defendant is a citizen of Florida. In July 2019, each party was 19 years old.

On July 12, 2019, Defendant drove his vehicle eastbound on U.S. 2 in Flathead County, Montana, with Plaintiff as a passenger. Defendant, attempting to pass a truck, crashed head-on with another vehicle, driving westbound on U.S. 2.

In July 2022, Plaintiff commenced an action against Defendant in the Eleventh Judicial District Court, Flathead County, alleging claims for injuries arising out of the car crash. Specifically, the Complaint sought compensatory damages for negligence (Count I), negligence per se (Count II) and negligent and intentional infliction of emotional distress (Count III). The Complaint also sought

1

**EXHIBIT G-2**

punitive damages for "actual fraud and or malice as defined in 27-1-221, MCA[.]" (Count IV).

Plaintiff did not serve process on Defendant.  Fourteen months later, however, in September 2023, Plaintiff filed the FAC—which seeks to escalate this from a car-crash case to a sexual-assault case.  Thus, according to the FAC:

On July 29, 2019—that is, 17 days after the car crash—Defendant "had sex with [Plaintiff]" without her consent.  FAC ¶ 26; *see id*. ¶¶ 26-27; 33.  The FAC implies that Defendant spiked Plaintiff's alcoholic drinks.  *See id.* ¶ 29(a) (alleging Plaintiff's "impaired condition[,]" which Defendant "[c]reated . . . by encouraging Plaintiff to consume alcohol; and/or . . . upon information and belief, providing another intoxicant to impair Plaintiff[]").

The FAC realleges the four Counts set forth in the Complaint but adds allegations regarding the alleged sexual contact.  Thus, specifically, Count I of the FAC alleges negligence with respect to both the car crash and the sexual contact; Count II alleges negligence per se with respect to both the car crash and the sexual contact; Count III alleges both the car crash and the sexual contact as the cause of emotional distress; and Count IV alleges both the car crash and the sexual contact as a basis for punitive damages under § 27-1-221, MCA.

**EXHIBIT G-3**

Defendant removed this action from state court.  Defendant now moves to dismiss the FAC, to the extent it alleges claims arising out of alleged sexual contact.

## ARGUMENT

### I.    The Applicable Legal Standard On This Motion To Dismiss

Rule 12(b)(6) provides, in pertinent part, that "a party may assert the following defenses by motion . . . failure to state a claim upon which relief can be granted."  Rule 12(b)(6) requires a court to "accept all nonconclusory facts alleged in the complaint as true[,]" *DRAM*, 28 F.4th at 46, but also "'authorizes a court to dismiss a claim on the basis of a dispositive issue of law.'"  *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015), *quoting Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  "A statute-of-limitations defense, if apparent from the face of the complaint, may properly be raised in a motion to dismiss." *Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (cleaned up).

### II.    Count I, To The Extent It Alleges A Claim Arising Out Of Sexual Contact, Fails To State A Claim Upon Which Relief Can Be Granted

The FAC alleges that Defendant "had sexual contact with Plaintiff without her consent."  FAC ¶ 33.  Count I of the FAC, in turn, and in pertinent part, alleges a "Negligence" claim arising out of that sexual contact.  *Id*. ¶¶ 45-52.  For two

3

**EXHIBIT G-4**

related reasons, however, this claim fails as a matter of law: *First*, the claim is one for battery, not negligence; *second*, the battery claim is time-barred.

*First*, Count I alleges intentional conduct, such as "sexual contact[,]" and Defendant lying "on top of Plaintiff without a shirt on." FAC ¶ 24. A claim arising out of such conduct constitutes a claim for battery, as many cases hold.[1] "Regardless of the label [Plaintiff] affixes[,]" the alleged "sexually abusive acts . . . were intentional as a matter of law[,]" *State Farm Fire and Cas. Co. v. van Gorder*, 235 Neb. 355, 358 (1990), and Plaintiff cannot transform such acts into

---

[1] The cases hold, for example, that rape constitutes battery; *see, e.g., In re Hoult*, 243 B.R. 818, 822-23 (Bankr. M.D. Fla. 1999); that other forms of "sexual molestation" or "sexual abuse" constitute battery; *see, e.g., Petit v. Erie Ins. Exchange*, 117 Md. App. 212, 224-26 (1997); *Bonner v. Roman Catholic Diocese of Boise*, 128 Idaho 351, 352 (1996); and that the touching of body parts, such as breasts, buttocks and thighs, constitutes battery; *see, e.g., Rand v. Town of Exeter*, 976 F. Supp. 2d 65, 75-76 (D.N.H. 2013); *Doe v. Hartz*, 52 F. Supp. 2d 1027, 1053-54 (N.D. Iowa 1999); *Wilson v. Taco Bell of America, Inc.*, 917 So. 2d 1223, 1226 (La. App. 2005); *Kelly v. County of Monmouth*, 380 N.J. Super. 552, 559-61 (App. Div. 2005); *Freeman v. Bush*, 199 F. Supp. 2d 907, 915-19 (S.D. Iowa 2002); *Brown v. Ford*, 905 P. 2d 223, 229-30 (Okla. 1995); *Meadows v. Guptil*, 856 F. Supp. 1362, 1371-72 (D. Ariz. 1993).

Plaintiff's claim, furthermore, is for battery, not assault. The essential elements of the tort of battery include "acts intending to cause harmful or offensive contact[.]" *Collins v. State, Dep't of Justice*, 232 Mont. 73, 80 (1988), *quoting Restatement (Second) Torts* § 13 (1965). The essential elements of the tort of assault, by contrast, include "acts intending to cause . . . an imminent apprehension of such a contact[.]" *Id.*, *quoting* § 21. Here, the FAC repeatedly alleges "contact," required for battery, and nowhere alleges "imminent apprehension" of contact, required for assault. *See* Prosser, *Law of Torts* § 16 at 46 (5th ed. 1984) ("The difference between them is that between physical contact and the mere apprehension of it. One may exist without the other.")

**EXHIBIT G-5**

"negligent acts or omissions[.]" FAC ¶ 41.  "Negligence and intentional misconduct are contradictory terms—they differ in kind rather than degree. . . . Intent and negligence are mutually exclusive[.]" *Walden v. Maryland Cas. Co.*, 2017 WL 6015675, at *6 n.2 (D. Mont. Dec. 4, 2017) (Christensen, J.); *see United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993) ("recogni[zing] . . . the mutual exclusivity of negligence and battery[]").

It follows that a claim for "negligence"—which Count I alleges—fails as a matter of law. "'There is no such cause of action as negligent assault and[/or] battery.'"  *United Nat'l*, 988 F.2d at 353, *quoting State Farm*, 235 Neb. at 358.  The Court should therefore dismiss Count I, to the extent it alleges a claim arising out of sexual contact.

The allegations set forth in ¶¶ 49-50 of the FAC do not change that conclusion or result.  Those paragraphs allege that Defendant "did not intend to harm Plaintiff, and therefore, is negligent[;]" ¶ 49; and that Defendant "did not expect or intend the consequences, and therefore, is negligent."  ¶ 70.  Those allegations, however, do not remove the claim from the realm of intentional tort or transform the claim into negligence.

The relevant intent is not an intent to *harm* but an intent to make or to inflict *offensive bodily contact*.  "If an act is done with the intention of inflicting . . . an offensive but not a harmful bodily contact, or of putting another in apprehension of

5

**EXHIBIT G-6**

either a harmful or offensive bodily contact, and such act causes a bodily contact . . . the actor is liable . . . for a battery although the act was not done with the intention of bringing about the resulting bodily harm." *Restatement (Second) Torts ("Restatement")* § 16(1) (1965); *see id*. § 13 (actor liable for battery if he acts "intending to cause a harmful or offensive contact" and "a harmful contact . . . results[]"); *see also id*. § 21(1)(a) (actor liable for assault if "he acts intending to cause a harmful or offensive contact" and "the other is thereby put in such imminent apprehension[]").

In other words, "the intent which is an essential element of the action for battery is the intent to make contact, not to do injury." *United Nat'l*, 988 F.2d at 355. The absence of "intent to harm is immaterial. . . . [V]oluntary contact constitutes the tort of battery." *White v. University of Idaho*, 115 Idaho 564, 565 (1989) (holding defendant liable where he "intended to touch [the plaintiff], though he did not intend to cause harm or injury.") "The intent element of the tort of battery does not require a desire or purpose to bring about a specific result or injury; it is satisfied if the actor's affirmative act causes an intended contact which is unpermitted and which is harmful or offensive." *Id*.

**EXHIBIT G-7**

Many other cases so hold, with respect to both battery and assault.[2] *See* Prosser, *Law of Torts* § 10 at 46 (5th ed. 1984) ("The intent element for assault is identical with that for battery.")

Here, the FAC alleges intentional bodily contact. *See, e.g.*, ¶¶ 24, 26-31, 33-40. The FAC therefore alleges an intentional tort—battery—not negligence.

*Second*, a claim for battery is time-barred. Thus, § 27-2-204(3), MCA, provides, in pertinent part: "The period prescribed for the commencement of an action for . . . assault [or] battery . . . is within 2 years." Here, according to the FAC, Defendant, on July 29, 2019, "had sexual contact with Plaintiff[.]" FAC ¶ 33. Plaintiff, however, did not assert this claim until September 2023, well beyond the 2-year period prescribed in the statute. Accordingly, Count I, on its face, and to the extent it alleges a claim arising out of sexual contact, is time-barred.

---

[2] *See, e.g., Borrerro v. Haks Group, Inc.*, 165 A.D.3d 1216, 1218 (App. Div. 2d Dep't 2018) ("[o]nce intentional offensive contact has been established, the actor is liable for battery, not negligence") (cleaned up); *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1209 (10th Cir. 2006) (battery committed where defendants touched plaintiff "intending to cause an offensive contact[;]" intent "merely to pull a prank[,]" rather than intent to injure, held not "an excuse" from liability for battery); *Labadie v. Semler*, 66 Ohio App. 3d 540, 543 (Ohio App. 1990) (defendant liable for battery where he intended to "scare[,]" rather than harm, plaintiff; "While [defendant] may not have envisioned the resulting injuries his action caused, he is nevertheless, liable for his intentional tortious conduct[]"); *Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373, 378 (Tex. App. 1984) (defendant committed assault when he "[i]ntentionally plac[ed the plaintiff] in . . . fear[;]" his "intention to place [plaintiff] in such apprehension extends by operation of law to the specific additional injury which she did receive . . . *whether or not* [defendant] in fact intended that additional and subsequent harm.")

7

**EXHIBIT G-8**

Plaintiff cannot evade the 2-year statutory time-bar by labeling the claim as "negligence." "The gravamen of the claim, not the label attached, controls the limitations period to be applied to that claim." *Erickson v. Croft*, 233 Mont. 146, 153 (1988). "[A] plaintiff cannot, simply by virtue of mislabeling a claim for relief, change the gravamen of the action and secure a longer period of limitation." *H & H Development, LLC v. Ramlow*, 364 Mont. 283, 287 (2012) (cleaned up).

Here, leaving aside the allegations regarding the car crash, the gravamen of the claim is "sexual contact," a phrase used extensively in the FAC. *See, e.g.,* ¶ 33-36, 38, 40, 47; *see also* ¶¶ 26-28, 30, 32 (alleging that the parties "had sex[;]" "have sex[;]" "having sex"). The gravamen of the claim is therefore battery, and the claim is time-barred under § 27-2-204(3), MCA. *See Weston v. Cole*, 233 Mont. 61, 63 (1988) (plaintiff who asserts claim for assault and battery cannot secure longer limitations period "by alleging that he intends to prove simply an 'unlawful act'" instead of an intentional tort).

## III. Count II, To The Extent It Alleges A Claim Arising Out Of A Violation Of §§ 45-5-502-03, MCA, Fails To State A Claim Upon Which Relief Can Be Granted

Count II alleges, in pertinent part, that Defendant "was negligent, as a matter of law,"—that is, negligent *per se*—"when he violated §§ 45-5-502-03, MCA[.]" FAC ¶ 55. Section 45-5-502(1) provides: "A person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual

8

**EXHIBIT G-9**

assault." Section 45-5-503(1) provides: "Any person who knowingly has sexual intercourse with another person without consent or with another person who is incapable of consent commits the offense of sexual intercourse without consent." For two alternative reasons, this claim fails to state a claim upon which relief can be granted.

*First*, the cited statutes, quoted above, make it a crime to act "knowingly[,]" which requires pleading and proof of a mental state greater than, and more culpable than, negligence.[3] Accordingly, as a matter of law, a defendant cannot violate the cited statutes while acting negligently.

It follows that the Court should dismiss Count II, to the extent it alleges a claim based on a violation of the cited statutes. If, as the FAC alleges, Defendant acted "negligently" on July 29, 2019, then Defendant cannot have violated, and did not violate, the cited statutes.

---

[3] The Criminal Code establishes a "hierarchy of [three] mental states[,]" *State v. Klein*, 169 Mont. 350, 356 (1976), which descend from "purposeful" (the most culpable), to "knowingly[,]" to "negligently" (the least culpable). *Id*.; *see State ex rel. Booth v. Montana Twenty-First Judicial District*, 292 Mont. 371, 377 (1998) ("'Negligently' is a mental state, like 'knowingly' or 'purposely[]'"); *see generally State v. Mills*, 393 Mont. 121, 131 (2018). Pleading and proof that "a person acts purposely or knowingly[]" can substitute for pleading and proof of negligence. *See* § 45-2-102, MCA ("When the law provides that negligence suffices to establish an element of an offense, such element also is established if a person acts purposely or knowingly."). But that statute does not—and logically, cannot—provide that pleading and proof of negligence can substitute for pleading and proof of knowledge or purpose. The greater may establish the lesser requirement, but the lesser cannot establish the greater requirement.

**EXHIBIT G-10**

*Second*, in the alternative, this claim is time-barred.  If, as the FAC alleges, Defendant did violate the cited statutes, then he necessarily acted "knowingly," rather than negligently.  Plaintiff's claim would therefore remain one for an intentional tort, battery, which is, for the reasons set forth in Point II above, time-barred.

IV.    **Count III, To The Extent It Alleges A Claim Arising Out Of Sexual Contact, Fails To State A Claim Upon Which Relief Can Be Granted**

Count III alleges, in pertinent part, that the "acts or omissions by Defendant related to the July 29, 2019 sexual encounter . . . proximately caused and resulted in negligent and intentional infliction of emotional distress on Plaintiff[.]"  FAC ¶ 60.  This claim, however, on its face, is time-barred under the applicable statute of limitation, § 27-2-204(1), MCA, which prescribes a 3-year period.  Plaintiff did not commence an action on this claim until September 2023, well beyond that 3-year period.

V.    **Count IV, To The Extent It Alleges A Claim Arising Out Of Sexual Contact, Fails To State A Claim Upon Which Relief Can Be Granted**

Count IV seeks, in pertinent part, an award of punitive damages under § 27-1-221, MCA, alleging that Defendant "is guilty of actual fraud and/or malice . . . for engaging in . . . the July 29, 2019 sexual encounter."  FAC ¶ 63(b).  This Count, however, falls with Counts I-III.  For the reasons set forth above, Plaintiff cannot recover compensatory damages on Counts I-III.  Plaintiff therefore cannot recover

**EXHIBIT G-11**

punitive damages. *See* § 27-1-220, MCA (allowing punitive damages but only "in addition to compensatory damages"); *Feller v. First Interstate Bancsystem, Inc.*, 369 Mont. 444, 453 (2013).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the FAC, to the extent it alleges claims arising out of alleged sexual contact.

**DATED** this 10th day of January, 2024.

STACEY & FUNYAK

By: /s/Calvin J. Stacey
    Calvin J. Stacey

KENNETH CARUSO LAW

By: /s/Kenneth A. Caruso
    Kenneth A. Caruso
    *Admitted Pro Hac Vice*

    Attorneys for Defendant

11

**EXHIBIT G-12**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the word limit of Local Rule 7.1(d)(2) because this document, excluding the caption, certificate of compliance and certificate of service, contains 2,107 words. I make this certification in reliance on the word count feature of Microsoft Word.

By: /s/ Kenneth A. Caruso
Kenneth A. Caruso
*Admitted Pro Hac Vice*

**EXHIBIT G-13**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of January, 2024, a true and correct copy of the foregoing ***Defendant's Rule 12(b)(6) Brief in Support of Motion to Dismiss, in Part, First Amended Complaint*** was served upon the following person(s) by the following means:

   X          CM/ECF
_____    Hand Delivery
_____    U.S. Mail

1. Clerk of Court

2. Hillary P. Carls
   Carls Law, PLLC
   P.O. Box 85
   Bozeman, MT 59771
   406.577.2145
   406.219.0256 (fax)
   hillary@carlslaw.com

   Counsel for Plaintiff

KENNETH CARUSO LAW

By:   /s/ Kenneth A. Caruso
       Kenneth A. Caruso

13

**EXHIBIT G-14**

Hillary P. Carls
CARLS LAW PLLC
322 W. Mendenhall
P.O. Box 85
Bozeman, MT 59771
406.577.2145
hillary@carlslaw.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Elizabeth Klemann,<br><br>           Plaintiff,<br><br>     vs.<br><br>Zachary Joseph Jackson Ailes, and<br>John Doe Defendants 1-50,<br><br>           Defendants. | Case No.: CV 23-150-M- KLD<br><br>**Plaintiff's Response Brief in<br>Opposition to Defendant's<br>Rule 12(b)(6) Motion to Dismiss,<br>in Part, First Amended Complaint** |

Plaintiff, Elizabeth Klemann, by and through her attorney of record Hillary

P. Carls of Carls Law, PLLC, files her response brief in opposition to Defendant's

Rule 12(b)(6) Motion to Dismiss, in Part, First Amended Complaint (Doc. 15) and

Defendant's Rule 12(b)(6) Brief in Support of Motion to Dismiss, in Part, First

Amended Complaint (Doc. 16).

**Introduction**

This case is about a few short weeks in July 2019, when the Defendant,

Zachary Ailes, forever changed Ms. Klemann's life with his negligent, thoughtless,

1

**EXHIBIT G-15**

and dangerous choices. (Doc. 6 ¶ 7).  This case is about how a reasonable person would act in these circumstances, and our duties to each other. This case is about how Mr. Ailes did not act like a reasonable person and violated his duty of care to Ms. Klemann.

## Legal Standard

The Ninth Circuit has explained:

> Rule 12(b)(6) motions are viewed with disfavor. Dismissal without leave to amend is proper only in "extraordinary" cases. *When ruling on a 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff.* The court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them.

*Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir. 2003) (citations omitted) (emphasis added).

Factual disputes regarding "when the statute of limitations accrued [can] be reserved for trial following further factual development." *Hutton v. Nyhart*, 2019 WL 1255018, *5 (D. Mont. 2019).

> Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it "is not generally amenable to resolution on a Rule 12(b)(6) motion." A motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. For this reason, we have reversed dismissals where the applicability of the equitable tolling

2

**EXHIBIT G-16**

doctrine depended upon factual questions not clearly resolved in the pleadings.

*Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995).

Further, the Montana Supreme Court has explained "where two statutes apply, the district court should apply the statute with the longer period of limitation." *Semenza v. Bowman*, 268 Mont. 118, 123, 885 P.2d 451, 454 (Mont. 1994).

The Ninth Circuit explains that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting case).

> [L]eave to amend should be freely granted "when justice so requires." Although Rule 15(a) gives the trial court discretion over this matter, we have repeatedly stressed that the court must remain guided by "the underlying purpose of Rule 15 … to facilitate decision on the merits, rather than on the pleadings or technicalities."

*Id.* at 1127 (citations omitted).

### Factual Background

In July 2019, Mr. Ailes was 19-years-old and visiting Montana. (Doc. 6 ¶¶ 4-5). Ms. Klemann was also 19-years-old and a Montana native. (Doc. 6 ¶¶ 4, 6). When Mr. Ailes first met Ms. Klemann, he violated Ms. Klemann's boundaries, attempting to kiss her despite Ms. Klemann stating: No. (Doc. 6 ¶ 16). On July 12, 2019, while attempting to pass a semi-truck on highway U.S. 2 with Ms. Klemann

3

**EXHIBIT G-17**

as his passenger, Mr. Ailes negligently crashed his truck head-on into another vehicle. (Doc. 6 ¶¶ 8-10). As a result of the July 12, 2019 crash, Ms. Klemann was injured, including but not limited to, brain damage. Mr. Ailes knew of and observed Ms. Klemann's brain damage. (Doc. 6 ¶¶ 18-20). During this period, Mr. Ailes continued his negligent behavior with Ms. Klemann, with dangerous and drunk driving, seeking unwanted sexual contact, and playing with firearms. (Doc. 6 ¶ 17).

Mr. Ailes's behavior continued on July 29, 2019 by ignoring Ms. Klemann's impaired behavior appearing intoxicated, being unable to walk straight or without assistance, speaking loudly, and behaving strangely. (Doc. 6 ¶¶ 21-23). A reasonable person would have recognized Ms. Klemann's impairment and took actions to reasonably keep Ms. Klemann safe, which could have included, among other actions:

1. Taking Ms. Klemann home;

2. Calling a ride (Uber, taxi, etc.) to take Ms. Klemann home;

3. Renting a separate hotel room for Ms. Klemann; or

4. Putting Ms. Klemann safely to sleep.

Mr. Ailes did not take any of these actions. (Doc. 6 ¶¶ 24-26). Rather, without Ms. Klemann's consent, Mr. Ailes:

\\\   \\\   \\\

**EXHIBIT G-18**

1. Took Ms. Klemann to his hotel room;

2. Took off his shirt;

3. Took off Ms. Klemann's pants;

4. Took off Ms. Klemann's underwear; and

5. Had sex with Ms. Klemann.

(Doc. 6 ¶¶ 24-27).

Mr. Ailes and Ms. Klemann previously had consensual sexual contact. Given this prior history and known impaired state of Ms. Klemann, Mr. Ailes reasonably had the duty and responsibility to keep Ms. Klemann safe, including but not limited to, receiving her consent. Ms. Klemann placed her trust in Mr. Ailes, and he violated her trust. Ultimately, Mr. Ailes breached his duties of care with Ms. Klemann with his negligent action and inaction. Mr. Ailes's behavior in July 2019 persistently violated his duties to Ms. Klemann. (Doc. 6 ¶ 32).

**Procedural Background**

On July 7, 2022, Ms. Klemann filed her original complaint against Mr. Ailes in the Montana Eleventh Judicial District Court, Flathead County. (Doc. 6 at 1). Per § 27-2-204(1), MCA, Ms. Klemann timely filed her complaint within 3-years of the alleged acts. Montana Rule of Civil Procedure 4(t) provided Ms. Klemann with 3-years to serve Mr. Ailes.

**EXHIBIT G-19**

Pursuant to Montana Rule of Civil Procedure 4(d)(3)(A), Ms. Klemann served Mr. Ailes via mail on August 9, 2022 with the original complaint, which he received on August 11, 2022. The same day, Mr. Ailes's attorney contacted Ms. Klemann's attorney.

Ms. Klemann filed her First Amended Complaint & Jury Trial Demand ("FAC") on September 14, 2023. (Doc. 6). Mr. Ailes's attorney accepted service on November 17, 2023. (Doc. 1-2). Pursuant to Montana Rule of Civil Procedure 15(c), the FAC relates back to the original filing date of July 7, 2022. "M. R. Civ. P. 15(c) allows a court to render a dispositive decision on the merits of a party's argument, rather than on technicalities." *H & H Development, LLC v. Ramlow*, 2012 MT 51, ¶ 17, 364 Mont. 283, 272 P.3d 657.

Ms. Klemann complied with the applicable procedural requirements and has not escalated this matter. Mr. Ailes escalated his experience with Ms. Klemann when he caused a serious car crash. Mr. Ailes further escalated his experience with Ms. Klemann when he did not keep her safe and he failed to receive her consent. Mr. Ailes's actions escalated this matter, not Ms. Klemann.

## Argument

Mr. Ailes's attempts to reframe this matter simply seek the strategic advantage of dismissal. However, his arguments lack merit. Ms. Klemann's claims are grounded in negligence because of the facts in this matter.

6

**EXHIBIT G-20**

Montana's pattern jury instructions provide: "Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he/she fails to act as an ordinarily prudent person would act under the circumstances." *See* MPI2d 2.00, Negligence – Defined. Here, the trial will focus on whether, in July 2019, Mr. Ailes "use[d] reasonable care" and "act[ed] as an ordinarily prudent person would act under the circumstances."

Mr. Ailes seeks to change Ms. Klemann's allegations and elevate her burden due to the potential strategic benefit of dismissal.  Upon review of the facts, Mr. Ailes's attempts to avoid responsibility for his actions and inaction fail.

1. *In July 2019, Mr. Ailes breached his duty of care to Ms. Klemann, and is liable for the damages resulting from his negligence.*

The gravamen of Ms. Klemann's claims is negligence, not an intentional tort. Contrary to his arguments, it is Mr. Ailes who mislabels Ms. Klemann's claims.  At a minimum, however, the drastically different perspectives of Mr. Ailes and Ms. Klemann related to the pending motion evidence the significant factual disputes in this matter, which only a jury can resolve.

Federal Rule of Civil Procedure 12(b)(6) motions require the Court to construe Ms. Klemann's allegations "in the light most favorable" to her, and that "any reasonable inferences[] be drawn" from her allegations. Ms. Klemann's allegations relate to Mr. Ailes's failure to keep her safe, including but not limited to, failing to receive her consent. Mr. Ailes's breach of duty and negligence

7

**EXHIBIT G-21**

occurred long before the moment upon which he focuses and describes as a battery. Unsurprisingly, Mr. Ailes ignores most of his actions and inaction, which include multiple negligent failures culminating in the resulting injuries to Ms. Klemann. As discussed above, Mr. Ailes had many opportunities to act as a reasonable person would, but he failed to do so.  Consequently, Mr. Ailes is negligent.

> The fundamental distinction between negligence and an intentional tort is whether the defendant intended the specific injury, not whether the defendant intended the act, while a negligent actor does not desire to bring about the consequences which follow, nor does he or she know that they are substantially certain to occur, or believe that they will; there is merely a risk of such consequences, sufficiently great to lead a reasonable person in his or her position to anticipate them, and to guard against them. … An act committed intentionally may give rise to an action in negligence if one or more harmful consequences of the act are unintended, but if there is substantial certainty that an injury will result from an act or there is a deliberate act to cause the injury, that act is an intentional act, not a negligent act.

57A Am. Jur. 2d Negligence § 29 (Jan. 2024 Update).

Mr. Ailes seeks to define his actions as the intentional tort of battery.  Mr. Ailes makes this battery argument because it may be time-barred, not because the facts support an allegation of intentional conduct.  However, Mr. Ailes's argument ignores the factual reality that given his relationship, history, and knowledge about Ms. Klemann, Mr. Ailes's duties of care to her were not limited to the criminal offense of battery.

At trial, Mr. Ailes could conceivably argue that any violation was limited to

8

**EXHIBIT G-22**

the intentional tort of battery.  If the jury agreed, then post-trial the allegations related to battery could be dismissed as time-barred.  However, only the jury can resolve the factual dispute regarding the nature of Mr. Ailes's actions and inaction.

Mr. Ailes's focus on the terms "sexual contact" ignore the actual allegations, and the omissions of the terms: assault or battery. For context, the following terms and frequency of reference in the FAC reflect the focus of negligence and consent, not contact:

- Negligence, and variations – referenced 25 times. (Doc. 6 ¶¶ 3, 7, 36, 41, 45-57, 59, 60).

- Consent, and variations – referenced 13 times. (Doc. 6 ¶¶ 17, 27, 28, 30-36, 38, 40, 47, 48).

- Sexual Contact – referenced 9 times. (Doc. 6 ¶¶ 17, 33-36, 38, 40, 47, 48).

Accepting Mr. Ailes's arguments requires ignoring the majority of Ms. Klemann's allegations, contrary to the requirement that facts be construed in favor of Ms. Klemann. Despite Mr. Ailes's manipulation of the words and labels in this matter, Ms. Klemann's case seeks a jury trial to resolve whether Mr. Ailes's breached his duty of care and was negligent. Mr. Ailes's arguments fail.

Mr. Ailes' reliance on *State Farm Fire & Cas. Co. v. van Goder*, 235 Neb. 355, 455 N.W.2d 543 is misplaced. This case analyzed insurance coverage exclusions related to a minister's sexual abuse of a minor, for which he was

**EXHIBIT G-23**

convicted. *See* 235 Neb. at 356, 358, 455 N.W.2d at 544-45.  The court reviewed cases involving sexual abuse of children and incest—cases that do not contemplate consent. *See id.*, 235 Neb. at 358-360, 545-546; *see, i.e.*, § 45-5-501(1)(b)(iv), MCA (prohibiting consent for victims under 16 years old); § 45-5-507, MCA (limited defense of consent in incest charges).

By contrast here, the parties are the same age, previously had sexual contact, and voluntarily spent time together create factual issues that only a jury can resolve related to Mr. Ailes's reasonable care to Ms. Klemann. Negligence is the appropriate standard to examine Mr. Ailes's actions and intent. *State Farm* analyzed neither the factual nor legal issues presented in this case.

The *State Farm* court relied on *Newman v. Christensen*, 149 Neb. 471, 31 N.W.2d 417 (Neb. 1948), which supports Ms. Klemann claims. The *Newman* court explained:

> The intention to do harm is of the essence of an assault[.] An assault and battery is not negligence. The former is intentional; the latter is unintentional. 'Bishop, in his work on Criminal Law, (volume 2, § 72,) says that to constitute a battery 'there must be some sort of evil in the intent.' We are therefore prepared to say that to constitute an assault and battery under the foregoing definitions the act complained of must be done with a hostile intent.

149 Neb. at 474, 31 N.W.2d at 418-419 (citations omitted). "Assault and battery consists in an injury actually done to the person of another in any angry, revengeful, or insolent manner." 149 Neb. at 474, 31 N.W.2d at 419 (quoting

10

**EXHIBIT G-24**

case). "It is a general rule that, when one does an act which proves injurious to another, civil liability usually follows from the existence of a right in the injured person. Although the act was done without malice, and no mischief was intended, he may be held answerable for the injuries which follow." 149 Neb. at 474, 31 N.W.2d at 419-420. Applicable here, the court concluded that the statute of limitations for the unintentional tort applied, not the intentional act. *See id*. Notably, the trial resolved this factual dispute. 149 Neb. at 472, 31 N.W.2d at 418.

Ms. Klemann does not allege that Mr. Ailes intended to harm her, nor does she anticipate proving a level of intent or culpability that rises to "angry, revengeful, or insolent manner." As alleged, Mr. Ailes acted negligently. Consequently, the 3-year statute of limitations applies to this matter.

*Walden v. Maryland Casualty Company*, 2017 WL 6015675 (D. Mont. Dec. 4, 2017) also does not support Mr. Ailes's argument. In *Walden*, the Court "scoured Plaintiffs' amended complaint filed in the underlying case and there are no claims of negligence alleged in that pleading .…" *Id.* at *6. In *Walden*, the plaintiffs did not allege negligence. Here, Ms. Klemann's claims only allege negligence.  The Court could scour the allegations and would find no reference to assault or battery. (Doc. 6 ¶¶ 7, 36, 41, 45-52, 53-57, 59-60).

Similarly, the other cases relied upon by Mr. Ailes do not apply because Ms. Klemann has not alleged "negligent assault and battery" nor is this litigation an

11

**EXHIBIT G-25**

insurance coverage dispute. *See, i.e., United National Insurance Co. v. The Tunnel, Inc*., 988 F.2d 351, (2nd Cir. 1993) (addressing an insurance coverage exclusion, and the plaintiff's attempts to circumvent the exclusion with allegations of negligent assault or battery); *Weston v. Cole*, 233 Mont. 61, 63, 758 P.2d 289, 290 (Mont. 1988) ("Weston's complaint however, could not be more clear. It states that Cole unlawfully 'assaulted and battered' Weston. The complaint asserts Cole committed an assault and battery, and no additional or alternative claims are presented.").

Mr. Ailes relies on *Borrerro v. Haks Group, Inc*., by only providing select language. The *Borrerro* court fully explained: "Negligence is distinguished from assault and battery by the absence of that intent which is a necessary ingredient of the latter." *Borrerro*, 165 A.D.3d 1216, 1217, 87 N.Y.S.3d 618, 621 (N.Y. Sup., App. Div. 2d. 2018) (citations omitted). "Although 'the same act may constitute battery or negligence depending on whether or not it was intentional, ... there cannot be recovery for both.'" 165 A.D.3d at 1218, 87 N.Y.S.3d at 622. As alleged, Mr. Ailes's unintentional actions make negligence appropriate.

Ms. Klemann's allegations are based in negligence because those are the facts that she will prove at trial. Viewing the allegations in Ms. Klemann's favor, Ms. Klemann has alleged, and will prove, Mr. Ailes's negligent actions that lead up to and caused the July 29, 2019 events. Additionally, because Ms. Klemann's

12

**EXHIBIT G-26**

claims of negligence survive, she is also able to pursue her claims of emotional distress and punitive damages.

Importantly, even if Ms. Klemann's claims were potentially subject to the intentional tort statute of limitations of 2-years or the negligence statute of limitations of 3-years, Montana law instructs that "where two statutes apply, the district court should apply the statute with the longer period of limitation." *Semenza*, 268 Mont. at 123, 885 P.2d at 454.

Mr. Klemann's claims are timely, and Mr. Ailes's motion should be denied.

2. <u>Allegations of negligence *per se* do not trigger criminal concepts in this civil litigation.</u>

Montana's pattern jury instruction provides: "If you find that [any party to this suit] [the defendant] violated any of the following laws, then [that party] [the defendant] is negligent. You should then determine whether that negligence was a cause of the plaintiff's injury. [Quote or paraphrase the statute]." MPI2d 2.15, Negligence – Violation of Law.  Effectively, Montana law provides that violating a statute is proof to establish negligence.  Statutory violations are evidence of negligence.

However, a negligence *per se* claim does not transform the negligence claims to an intentional tort, or change the applicable statute of limitations. The law does not law support Mr. Ailes's argument attempting to apply criminal standards to this civil litigation.  Mr. Ailes's arguments fail and his motion should

13

**EXHIBIT G-27**

be denied.

3.  <u>Alternatively, equity dictates that the statute of limitations be tolled and this matter decided on the merits.</u>

If Ms. Klemann's allegations are not timely, equitable tolling directs that the statute of limitations be tolled under these circumstances. Mr. Ailes does not dispute that Ms. Klemann's allegations related to the car accident are timely. This litigation will proceed, and Mr. Ailes will not benefit from a case dismissed in total.  Evidence and discovery will occur regarding the events of July 2019.

"[T]he goal of statutes of limitation is to protect defendants whose ability to effectively prepare a defense has been lessened due to the passage of time." *Lozeau v. Geico Indem. Co.*, 2009 MT 136, ¶ 20, 350 Mont. 320, 207 P.3d 316; *Board of Regents of University of State of N.Y v. Tomanio*, 446 U.S. 478, 487 (1980) (recognizing that statutes of limitations serve to not "impair the accuracy of the fact-finding process…."); *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1136 (9th Cir. 2001) ("As Justice Holmes had stated, statutes of limitation served to prevent 'surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'"). The Ninth Circuit encourages "the liberal application of tolling rules 'or their functional equivalents' to cases in which a plaintiff had duly notified the defendant." *Daviton*, 241 F.3d at 1136.

\\\   \\\   \\\

**EXHIBIT G-28**

The Ninth Circuit examined equity jurisprudence, explaining: "[E]quity exists in 'every rational system of jurisprudence' to address the cases in 'which the antecedent rules cannot be applied without injustice, or to which they cannot be applied at all.'" *Smith v. Davis*, 953 F.3d 582, 590 (9th Cir. 2020) (quoting case) (also quoting The Federalist No. 83 (Alexander Hamilton): "[T]he great and primary use of a court of equity is to give relief in extraordinary cases, which are exceptions to general rules."). "[E]quity requires a court to deal with the case before it, complete with its unique circumstances and characteristics, courts must take a flexible approach in applying equitable principles." *Id*.

"Equitable tolling allows in limited circumstances for an action to be pursued despite the failure to comply with relevant statutory filing deadlines." *Lozeau*, 2009 MT ¶ 14. The United States Supreme Court "has been clear that one such rule that limits a court's equitable powers is that 'a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Smith*, 953 F.3d at 590. The Montana Supreme Court explains that:

> the statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to [the] defendant in gathering evidence to defend against

15

**EXHIBIT G-29**

the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

*Lozeau,* 2009 MT ¶ 14.

While serving on the Montana Supreme Court, then Justice Morris aptly observed that equity rejects:

> "any one-size-fits-all approach" when addressing a limitations period. Equity allows courts to evaluate the circumstances and reasons for why a party failed to comply with a limitations period. This equitable power proves particularly critical when a limitations period would deprive a party of his rights and where, simultaneously, enforcing the limitations period would serve no policy purpose. Equity ensures just results in exceptional circumstances.

*BNSF Ry. Co. v. Cringle*, 2012 MT 143, ¶ 25, 365 Mont. 304, 281 P.3d 203 (J. Morris concurring) (citing case).

Ms. Klemann satisfies all elements, both under Federal and State law, meriting application of equitable tolling of the statute of limitations. The extraordinary circumstances here is the understandably complex nature of being a victim, identifying options, and courageously disclosing traumatic experiences. Compounding these complexities, Ms. Klemann also has been recovering from brain damage caused by Mr. Ailes.

Here, Mr. Ailes learned about Ms. Klemann's allegations in a timely manner, and Ms. Klemann simply continued to define and specify her allegations in the FAC.  Mr. Ailes will not be prejudiced because he possesses all evidence related to these claims, and this litigation will proceed, with the parties exchanging

16

**EXHIBIT G-30**

discovery regarding July 2019, regardless of the disposition of the subject motion.

Further, Mr. Ailes's actions effectively created a continuing tort, where his lack of

due care consumed July 2019 that caused ongoing injury to Ms. Klemann. *See,*

*e.g., Knight v. Wells Fargo Bank*, 2016 WL 3221593, *5 (D. Mont. June 8, 2016)

(explaining the continuing tort theory "may be applied to injuries that are ongoing

or in some way recurring").  Further, Ms. Klemann in good faith notified Mr. Ailes

and took reasonable actions related to her allegations.

Montana law and policy favors that the "longer period of limitation" be

applied. *See, i.e., Semenza*, 268 Mont. at 123, 885 P.2d at 454.  Here, good cause

exists to toll the statute of limitations and allow this matter to be decided on the

merits.

4. <u>Alternatively, the Court should grant leave to amend.</u>

Alternatively, if Ms. Klemann's allegations require more specific statements

regarding when her claims accrued, or to focus negligent acts, she moves for leave

to amend the FAC; *see, i.e., Lopez*, 203 F.3d at 1127, 1130. If the FAC is not clear

that it alleges negligent, rather than intentional, actions, Ms. Klemann seeks leave

to amend to specify such per the Court's direction.

## Conclusion

For the above rationale, Ms. Klemann respectfully requests that the Court

deny Defendant's Rule 12(b)(6) Motion to Dismiss, in Part, First Amended

17

**EXHIBIT G-31**

Complaint (Doc. 15), and allow the disputes in this matter to be resolved on the merits.

Dated this 31st day of January, 2024.

CARLS LAW, PLLC

/s/  Hillary P. Carls
Hillary P. Carls
*Attorney for Plaintiff*

## Certificate of Compliance

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word, is 3,953, excluding the caption, certificate of compliance, table of contents and authorities, and exhibit index, if any.

Dated this 31st day of January, 2024.

/s/ Hillary P. Carls
Hillary P. Carls

**EXHIBIT G-32**

Calvin J. Stacey
Morgan M. Sorena
STACEY & FUNYAK
The Grand Building, Suite 700
100 North 27th Street
P.O. Box 1139
Billings, MT 59103-1139
Phone: (406) 259-4545
cstacey@staceyfunyak.com
msorena@staceyfunyak.com

Kenneth A. Caruso
KENNETH CARUSO LAW LLC
15 West 72nd Street
New York, NY 10023
Phone: (646) 599-4970
ken.caruso@kennethcarusolaw.com

*ATTORNEYS FOR DEFENDANT,*
*ZACHARY JOSEPH JACKSON AILES*

## IN THE UNITED STATES DISTRICT COURT
## THE DISTRICT OF MONTANA
## MISSOULA DIVISION

|  |  |  |
|---|---|---|
| ELIZABETH KLEMANN, | ) | CASE NO.:  9:23-CV-00150-DLC-KLD |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **DEFENDANT'S REPLY BRIEF IN** |
| v. | ) | **SUPPORT OF MOTION TO** |
|  | ) | **DISMISS, IN PART, FIRST** |
| ZACHARY JOSEPH JACKSON | ) | **AMENDED COMPLAINT** |
| AILES and JOHN DOE | ) |  |
| DEFENDANTS 1-50, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**EXHIBIT G-33**

Defendant respectfully submits this Reply Brief in support of his motion to dismiss, in part, the First Amended Complaint ("FAC"), ECF 1-1.

**I.    Count I, To The Extent It Alleges A Claim Arising Out Of Sexual Contact, Fails To State A Claim**

The FAC alleges intentional conduct—labeled as "negligence" for the purpose of circumventing the expired statute of limitations.  As a matter of law, the Court should reject that effort.

The Montana Supreme Court has stated the governing rule: "The gravamen of the claim, not the label attached, controls the limitations period[.]"  *Erickson v. Croft*, 233 Mont. 146, 153 (1988).  "[A] plaintiff cannot, simply by virtue of mislabeling a claim for relief, change the gravamen of the action and secure a longer period of limitation."  *H & H Development, LLC v. Ramlow*, 364 Mont. 283, 287 (2012) (cleaned up).

Here, the gravamen of Plaintiff's claim is battery, not negligence:

> The fundamental basis of tort liability may first be divided into three parts. . .because every case in which liability has been imposed has rested on one of three, and only three, grounds for imposing it.  These are: (1) Intent of the defendant to interfere with the plaintiff's interests.  (2) Negligence.  (3) Strict liability, "without fault," where the defendant is held liable in the absence of both intent to interfere with the plaintiff's interests and negligence.

Prosser, *Law of Torts* ("Prosser") § 7 at 31-32 (5th ed. 1984).

1

**EXHIBIT G-34**

The first two "grounds" of liability stand in contrast with each other.  The first involves *intentional* interference.  The second, negligence, involves *unintentional* interference.  Prosser §28 (identifying "negligence" as "the main basis for unintended torts[]"); Dobbs, *Law of Torts* §31 at 77 (2d ed. 2011) ("Any given act may be intentional or it may be negligent, but it cannot be both.  Intent and negligence are regarded as mutually exclusive[]").

A claim for negligence has four elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty, (3) a causal connection between the defendant's breach of care and the plaintiff's injury, and (4) damages resulting from the injury." *Knapton ex rel. E.K. v. Monk*, 379 Mont. 1, 4 (2015).

The breach of duty, however, depends on the character of the defendant's acts.  The plaintiff must plead and prove that "the conduct of the actor is negligent with respect to the other[.]" *Restatement (Second) Torts ("Restatement")* §281(b) (1965).  "Negligence," for this purpose, "is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." *Restatement* §282.  "It therefore excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured[.]" *Id*. Cmt. D.  Again, "[i]ntent and negligence are mutually exclusive[.]" *Walden v. Maryland Cas. Co.*, 2017 WL 6015675, at *6 n.2 (D. Mont. Dec. 4, 2017).

2

**EXHIBIT G-35**

In sum, the character of the defendant's acts determines the gravamen—the "essence[,]" Black's Law Dictionary (11th ed. 2019)—of the claim. If the character of those acts is *unintentional*, then the plaintiff has a claim for negligence. If, however, the character of those acts is *intentional*, then the plaintiff has a claim for an intentional tort, but not for negligence. *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99-100 (1988) ("the essential character" of defendant's contact with plaintiff—"subduing and handcuffing"—"constituted an intentional touching[,]" and therefore battery, not negligence); *Schetzen v. Robotsis*, 273 A.D.2d 220-21 (2d Dep't 2000) ("based on a reading of the factual allegations, the essence of the cause of action is...assault," not negligence).

Here, applying these concepts, the gravamen of Plaintiff's claim is battery, not negligence:

The Court may assume, as Plaintiff contends, that Defendant owed a duty of care. The character of Defendant's acts, however, was intentional: Defendant allegedly spiked Plaintiff's drinks, FAC ¶ 29(a), "[t]ook [Plaintiff] to his hotel room[;] [t]ook off his shirt[,] [her] pants [and] underwear[;] and had sex with [her]." ECF 17 at 5. It follows that Plaintiff has a claim for an intentional tort and not for negligence.

Many courts so hold, usually capping the analysis with the conclusion that the "gravamen" or the "essence" controls, or that substance prevails over form,

3

**EXHIBIT G-36**

*Trott v. Merit Dep't Store*, 106 A.D.2d 158, 160 (1st Dep't 1985), or that the label affixed by the plaintiff does not prevail. *Evans v. Shucker's Piano & Oyster Bar, Inc.*, 281 So.3d 302, 307 (Miss. App. 2019) ("plaintiff cannot avoid [a] [shorter] statute of limitations…by restyling an intentional assault as 'negligence[]'"); *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354-55 (2d Cir. 1993) (rejecting "artful pleading[;]" "dressing up the substance of one claim, here a battery, in the garments of another, here negligence[]") (cleaned up);[1] *Love*, 37 Ohio St.3d at 100 (rejecting "clever pleading"); *State Farm Fire and Cas. Co. v. van Gorder*, 235 Neb. 355, 358 (1990) ("Regardless of the label [plaintiff] affixes[,]" alleged "sexually abusive acts...were intentional as a matter of law[]").[2]  This Court should hold similarly.

Plaintiff contends that her claim sounds in negligence because her "allegations relate to [Defendant's] failure to keep her safe, including but not limited to, failing to receive her consent[]" to sexual contact.  ECF 17 at 7.  Under

---

[1] Plaintiff would distinguish *United* on the ground that it involved an insurance-coverage issue.  ECF 17 at 11-12.  There, however, the policy excluded coverage for "[c]laims arising out of assault and/or battery," 988 F.2d at 353, and the court applied standard tort law when interpreting that language.  *Id*. at 353-55.  *United* is therefore on point.

[2] Plaintiff would distinguish *State Farm* on the ground that it involved "sexual abuse of children[,]" while this case involves "parties of the same age, who "previously had sexual contact[.]"  ECF 17 at 10.  *State Farm*, however, held "sexually abusive acts" intentional as a matter of law.  That holding did not rest on the age of the victim.

4

**EXHIBIT G-37**

"the prevailing modern view[,]" however, "once intentional offensive contact has been established, the actor is liable for assault [or battery] and not negligence, even when the physical injuries may have been inflicted inadvertently[.]" *Mazzaferro v. Albany Motel Enters., Inc.*, 127 A.D.2d 374, 376 (3d Dep't 1987). Therefore, here, even assuming that Defendant failed, over a period of time, to "keep [Plaintiff] safe," the legal classification of the tort affixes once intentional offensive contact occurred.

Plaintiff next contends: "Ailes seeks to change [Plaintiff's] allegations[;]" ECF 17 at 7; *see id.* at 6 ("attempts to reframe this matter"); 9 ("focus on the terms 'sexual contact' ignore[s] the actual allegations[]"). Not so. This motion assumes the truth of the FAC's factual allegations; Defendant seeks only "to change" Plaintiff's legal classification of her claim to battery.

Plaintiff, finally, contends: "[T]he drastically different perspectives of [the parties]…evidence the significant factual disputes…which only a jury can resolve." ECF 17 at 7; *see id.* at 9. The "different perspectives," however, concern the legal classification of the claim that arises out of the allegations of fact: Do they give rise to a claim for negligence, or for battery? That, of course, presents a question of law for the Court, not a question of fact for a jury.

In sum, Plaintiff is not home free by alleging "negligence," while omitting the words "assault or battery." ECF 17 at 9; *id.* at 11 ("The Court could scour the

5

**EXHIBIT G-38**

allegations and would find no reference to assault or battery[]"). No party controls the legal classification that applies to alleged facts. The Court, on this motion, does not accept Plaintiff's legal conclusions as true. *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011).

***

Plaintiff next alleges that Defendant "did not intend to harm Plaintiff, and therefore, is negligent[;]" FAC ¶ 49; that Defendant "did not expect or intend the consequences, and therefore, is negligent." FAC ¶ 50. Those allegations, however, do not remove the claim from the realm of intentional tort. The relevant intent is not an intent to *harm* but an intent to make *bodily contact*. ECF 16 at 5-7 & n.2 (citing authorities). Here, the FAC alleges such contact.

Plaintiff cites *Newman v. Christensen*, 149 Neb. 471, 474 (1948): "The intention to do harm is of the essence of an assault[.]...[T]o constitute an assault and battery...the act complained of must be done with a hostile intent....Assault and battery consists of [a]n injury actually done to the person of another in an angry, revengeful, or insolent manner." ECF 17 at 10. Plaintiff contends that she states a negligence claim because she "does not allege that [Defendant] intended to harm her," or that Defendant's "intent or culpability rises to the level of 'angry, revengeful, or insolent manner.'" *Id*.

6

**EXHIBIT G-39**

*Newman*, however, decided 17 years before the promulgation of the Restatement in 1965, no longer reflects Nebraska law.  As held in *Westcott v. City of Omaha*, 901 F.2d 1486, 1488-89 (8th Cir. 1990), *Newman's* statements do not survive *Bergman v. Anderson*, 226 Neb. 333, 337 (1987), which held, citing Prosser, that "intent contemplates only the intent to cause physical contact or injury…as the assailant need not intend the precise or particular injury which followed as a result of the assault and battery."  Subsequent Nebraska cases, furthermore, adopted the definition of battery as set forth in *Restatement* §13. *Britton v. City of Crawford*, 282 Neb. 374, 382 (2011) ("A harmful contact intentionally done is the essence of battery.")

Plaintiff next cites 57A Am. Jur. 2d, Negligence §29 (Feb. 2024) ("Am. Jur.").  That commentary, however, essentially aligns with Defendant's position: "Once intentional offensive contact has been established, the actor is not liable for negligence, even when the physical injuries may have been inflicted inadvertently, and a lack of care does not convert the action from intentional tort to negligence. Intent and negligence are mutually exclusive."  *Id*.

Plaintiff nevertheless cherry-picks this language: "The fundamental distinction between negligence and intentional tort is whether the defendant intended the specific injury, not whether the defendant intended the act[.]"  ECF 17 at 8.  For that proposition, however, Am. Jur. cites *Kilburn v. Fort Bend County*

7

**EXHIBIT G-40**

*Drainage Dist.*, 411 S.W.2d 33, 41 (Tex. App. 2013), which conflicts with

*Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373, 378 (Tex. App. 1984)

(previously cited; ECF 16 at 7 n.2).  In the absence of a decision by the Texas

Supreme Court, this Court, under *Erie*, should "predict" that the Texas Supreme

Court would adopt the nationwide, majority view, urged here by Defendant.

*Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995).

Plaintiff, finally, quotes Am. Jur.: "An act committed intentionally may give

rise to an action in negligence if one or more harmful consequences of the act are

unintended[.]"  ECF 17 at 8.  For that proposition, Am. Jur. cites *Walser v. Rest*

*Haven Memorial Gardens, Inc.*, 98 Md.App. 371, 393-94 (1993), in which the

quoted statement is dictum.  *Walser* concluded "that both the act and the

consequences were intended."

***

In sum, Count I, on its face, to the extent it alleges a claim arising out of

sexual contact, is time-barred by the 2-year period prescribed in §27-2-204(3),

MCA.

## II.    No Tolling Doctrine Applies

In the alternative, Plaintiff contends that the statute of limitations is tolled

under the doctrine of equitable tolling or the doctrine of continuing tort.  As a

matter of law, however, neither doctrine applies.

8

**EXHIBIT G-41**

On these issues, the Court, sitting in diversity, and adjudicating a state-law claim, applies state law. *G and G Productions LLC v. Rusic*, 902 F.3d 940, 946 (9th Cir. 2018).

### A. Equitable Tolling Does Not Apply

The doctrine of equitable tolling applies "in limited circumstances[,]" as Plaintiff concedes. ECF 17 at 15 (citing cases). A plaintiff invoking that doctrine must make a threshold showing of "reasonable good faith pursuit of one of several possible remedies[.]" *Tummarello v. Montana Dep't of Health and Human Services*, 2020 WL 6136396, at *5 (D. Mont. Aug. 4, 2020) (DeSoto, J.) (cleaned up). The plaintiff must "then demonstrate the [following] three criteria...have been satisfied: (1) the defendant was notified timely within the statute of limitations by the filing of the first claim; (2) the defendant's ability to gather evidence for defense of the second claim was not prejudiced; and (3) the plaintiff reasonably and in good faith filed the second claim." *Id*. (Citation omitted.)

Here, Plaintiff cannot make the required showings:

Plaintiff did not first "pursu[e] one of several possible remedies[.]" *Id*. (cleaned up). Indeed, Plaintiff never had several possible remedies. She had, rather, only one possible remedy for all her claims—a civil action for money damages. *Cf. Lozeau v. Geico Indem. Co.*, 350 Mont. 320, 324-25 (2009) (plaintiff "reasonably pursued" action in tribal court rather than state court).

9

**EXHIBIT G-42**

Next, Plaintiff fails to satisfy the three required criteria:

*First*, Plaintiff cannot show that the filing of the original Complaint, *see* Caruso Declaration Exhibit A, gave Defendant timely notice, within the statute of limitations, of the claims alleged in the FAC.  The Complaint, of which this Court should take judicial notice, *McGowen Precision Barrels, LLC v. Proof Research, Inc.*, 637 F. Supp. 3d 1116, 1125 (D. Mont. 2022) (DeSoto, J.), alleged claims arising from the car crash, without mentioning claims arising from "sexual contact," as later alleged.  "As this claim is an entirely new claim that relies on establishing an entirely new set of facts from the previous litigation, the [Complaint] did not give [Defendant] adequate notice" of claims arising out of sexual contact, "and thus, the claim fails to satisfy the first element of equitable tolling." *Id*. at 1134.

In any event, whatever notice the Complaint gave, it did not do so "timely[,] within the statute of limitations[.]" *Tummarello*, 2020 WL 6136396, at \*5 (cleaned up).  The alleged sexual contact occurred on July 29, 2019.  Section 27-2-204(3), MCA, expired on July 29, 2021.  Plaintiff, however, filed the Complaint nearly a year thereafter.

*Second*, Plaintiff cannot show that Defendant's "ability to gather evidence for defense of the second claim was not prejudiced[.]" *Tummarello*, 2020 WL 6136396, at \*5.  The alleged sexual contact occurred more than four years before

10

**EXHIBIT G-43**

Plaintiff filed the FAC.  There were, or may have been, numerous witnesses to the conduct alleged, *see* FAC ¶¶ 21-24—restaurant employees and patrons, pedestrians who observed Plaintiff's gait or overheard the parties' words, hotel personnel. Surely, physical evidence existed—clothing, bedding—which Defendant cannot now gather.  The Court should apply the statute of limitations "to protect [D]efendant[,]" where, as here, his "ability to effectively prepare a defense has been lessened due to the passage of time."  ECF 17 at 14, quoting *Lozeau*, 350 Mont. at 325.

*Third,* Plaintiff cannot show that she "reasonably and in good faith filed the second claim." *Tummarello*, 2020 WL 6136396, at *5.  Plaintiff has not exactly pursued her claims with alacrity.  The car crash occurred on July 12, 2019. Plaintiff waited more than two years and eleven months to commence this action, and then waited another 14 months to file the FAC.  *Cf. Id.*, at *6 (rejecting equitable tolling; three-year delay); *Lozeau*, 350 Mont. at 325 (applying equitable tolling; second action filed "less than two months after expiration" of limitations period).  The timing, furthermore, raises the question whether Plaintiff interposed an inflammatory, sexual-contact claim for its *in terrorem* effect, seeking leverage in settling the car-crash claims.

### B.    Continuing Tort Does Not Apply

**EXHIBIT G-44**

The Montana Supreme Court "has recognized as continuing torts those torts in which the tortious act can be readily abated." *Shors v. Branch*, 221 Mont. 390, 397 (1986). "[T]he doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." *McGowen*, 637 F. Supp. 3d at 1133 (cleaned up).

The doctrine, however, does not apply where an act or an incident merely has continuous effects. "Continuous effects are entirely different from continuous injuries." *Id*. (cleaned up); *Briese v. Montana Dep't of Public Health and Human Services*, 2011 WL 338399, at *12 (D. Mont. Jan. 31, 2011).

Here, the tortious "act" cannot be abated; it already abated (on July 29, 2019, or perhaps on the morning of July 30). A single incident—the alleged "sexual contact" on July 29, 2019—can be identified as the cause of the alleged harm. Alleged continuous effects cannot satisfy the doctrine of continuing tort.

## III.  Count II, To The Extent It Alleges A Claim Arising Out Of A Violation Of §§45-5-502-03, MCA, Fails To State A Claim

Plaintiff contends: "Montana law provides that violating a statute is proof to establish negligence." ECF 17 at 13. This contention, however, overlooks the language of the statutes cited in the FAC.

The FAC alleges that Defendant violated §45-5-502(1), and §45-5-503(1), MCA, each of which provides that a person commits the offense only if that person acts "knowingly." Accordingly, a person who merely acts "negligently" cannot

12

**EXHIBIT G-45**

violate either statute.  ECF 16 at 8-9 & n.3 (citing authorities).  It follows that the Court should dismiss Count II, to the extent it alleges a claim based on a violation of the cited statutes: If, as alleged, Defendant acted "negligently" on July 29, 2019, then Defendant cannot have violated the statutes.

Plaintiff contends that Defendant "attempt[s] to apply criminal standards to this civil litigation."  ECF 17 at 13.  It was Plaintiff, however, not Defendant, who brought "criminal standards" into this case, by alleging that Defendant violated specific criminal statutes, which use the word "knowingly," not the word "negligently."  Defendant merely asks the Court to apply the statutory language.

In the alternative, this claim is time-barred.  If Defendant *did* violate the cited statutes, then Defendant necessarily acted "knowingly," not negligently.  Plaintiff's claim would therefore remain one for an intentional tort, battery, which is time-barred.

## IV.    Count III, To The Extent It Alleges A Claim Arising Out Of Sexual Contact, Fails To State A Claim

Count III alleges a claim for negligent and intentional infliction of emotional distress arising out of the alleged "sexual encounter[.]"  FAC ¶ 60.  As shown in the opening Brief, however, this claim is, on its face, time-barred.  ECF 16 at 10.  Plaintiff, in opposition, ignores this point, thereby tacitly conceding it.

## V.    Count IV, To The Extent It Alleges A Claim Arising Out Of Sexual Contact, Fails To State A Claim

13

**EXHIBIT G-46**

Count IV seeks, in pertinent part, an award of punitive damages "for engaging in...the July 29, 2019[,] sexual encounter."  FAC ¶ 63(b).  As shown in the opening Brief, however, this Count falls with Counts I-III.  ECF 16 at 10-11.  Plaintiff, in opposition, ignores this point, thereby tacitly conceding it.

## VI.    The Court Should Deny Leave To Amend

"Futility of amendment can, by itself, justify denial of...leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  Amendment is futile where the pleading "could not be saved" by amendment.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

Here, amendment would be futile.  If the Court reaches the issue of amendment, then the Court will have held that the FAC "lacks a cognizable legal theory[.]"  *McGowen*, 637 F. Supp. 3d at 1124.  "Sexual contact" gives rise to a (time-barred) battery claim, not a negligence claim.  Plaintiff has, by her own count, already pleaded "negligence" 25 times, and "consent" 13 times.  ECF 17 at 9.  Further repetition cannot change the legal result or save the pleading.

## CONCLUSION

The Court should dismiss the FAC, to the extent it alleges claims arising out of alleged sexual contact.

**DATED:** February 14, 2024.

14

**EXHIBIT G-47**

STACEY & FUNYAK

By:   /s/Calvin J. Stacey
     Calvin J. Stacey


KENNETH CARUSO LAW


By:   /s/Kenneth A. Caruso
     Kenneth A. Caruso
     *Admitted Pro Hac Vice*

     Attorneys for Defendant

**EXHIBIT G-48**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the word limit of Local Rule 7.1(d)(2) because this document, excluding the caption, certificate of compliance and certificate of service, contains 3,230 words.  I make this certification in reliance on the word count feature of Microsoft Word.

By: /s/ Kenneth A. Caruso
     Kenneth A. Caruso
     *Admitted Pro Hac Vice*

**EXHIBIT G-49**

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2024, a true and correct copy of the foregoing ***Defendant's Reply Brief in Support of Motion to Dismiss, in Part, First Amended Complaint,*** was served upon the following person(s) by the following means:

|       |                 |
|-------|-----------------|
| __X__ | CM/ECF          |
| _____ | Hand Delivery   |
| _____ | U.S. Mail       |

1. Clerk of Court

2. Hillary P. Carls
   Carls Law, PLLC
   P.O. Box 85
   Bozeman, MT 59771
   406.577.2145
   406.219.0256 (fax)
   hillary@carlslaw.com

   Counsel for Plaintiff

KENNETH CARUSO LAW

By:  /s/ Kenneth A. Caruso
     Kenneth A. Caruso

17

**EXHIBIT G-50**

**IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF MONTANA
MISSOULA DIVISION**

|  |  |  |
|---|---|---|
| ELIZABETH KLEMANN, | ) | CASE NO.: 9:23-CV-00150-DLC-KLD |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **DECLARATION OF KENNETH A.** |
| v. | ) | **CARUSO IN SUPPORT OF** |
|  | ) | **DEFENDANT'S RULE 12(b)(6)** |
| ZACHARY JOSEPH JACKSON | ) | **MOTION TO DISMISS, IN PART,** |
| AILES and JOHN DOE | ) | **FIRST AMENDED COMPLAINT** |
| DEFENDANTS 1-50, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

KENNETH A. CARUSO declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a member of the bar of the State of New York.  The Court has admitted me *pro hac vice* in this case.  [ECF 12]  I am co-counsel to Defendant, Zachary Joseph Jackson Ailes.

2.      Defendant moved to dismiss Plaintiff's First Amended Complaint ("FAC"), to the extent the FAC alleges claims arising out of sexual contact.  *See* ECF 16.

3.      I attach, as Exhibit A, a true and correct copy of the original Complaint in this action, which Plaintiff filed in the Montana Eleventh Judicial District Court, Flathead County, on July 7, 2022 (the "Complaint").

**EXHIBIT G-51**

4.      For the reasons set forth in the accompanying Reply Brief in support of the motion to dismiss, Defendant respectfully requests that the Court take judicial notice of the Complaint.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on February 14, 2024, in New York, New York.

/s/ Kenneth A. Caruso
Kenneth A. Caruso

**EXHIBIT G-52**

# EXHIBIT A

**EXHIBIT G-53**

FILED
07/07/2022
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Kristen Skees
DV-15-2022-0000736-NE
Ulbricht, Heidi J
1.00

Hillary P. Carls
BLACKFORD CARLS P.C.
602 W. Lamme Street
Bozeman, MT 59715
406.577.2145
406.219.0256 (fax)
carls@blackfordcarls.com
*Attorney for Plaintiff*

### MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| Elizabeth Klemann,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Zachary Joseph Jackson Ailes and John Doe Defendants 1-50,<br><br>　　　　Defendants. | Case No.: DV-_____<br><br><br>**Complaint & Jury Trial Demand** |

Plaintiff, Elizabeth Klemann, complains and alleges as follows:

1.　　At all times relevant Plaintiff Elizabeth Klemann ("Plaintiff" or "Ms. Klemann") was a resident of Kalispell, Flathead County, Montana.

2.　　At all times relevant Defendant Zachary Joseph Jackson Ailes ("Ailes") was a resident of Palm Beach, Florida.

3.　　Plaintiff believes that the John Doe Defendants are subject to the jurisdiction of the State of Montana and this Court. The John Doe Defendants are parties that may have been involved in the occurrence set out herein, may have been agents of, employers of, employees of franchisers or franchisees of, or contractually obligated to the named Defendants or are in privy with the named Defendants and, therefore, said John Doe Defendants may have committed one or more of the acts set out herein or may be responsible through tortuous interference, strict liability, breach of warranty, negligence, negligent misrepresentation, the law of agency, respondeat

1

**EXHIBIT G-54**

superior, franchise law or by contract for the acts of the named Defendant as set out herein. Plaintiff believes and therefore alleges that the John Doe Defendants may have committed one or more of the acts set out herein and that they would therefore be liable for the same. Plaintiff will amend these pleadings as the case progresses to specify the various acts of the John Doe Defendants.

4.      On or about July 12, 2019, at approximately 9:30 a.m., Ailes was driving his vehicle eastbound on U.S. 2 in Flathead County, Montana. At this time, Ms. Klemann was a passenger in Ailes's vehicle. Ailes attempted to follow another vehicle and pass a semi-truck with a trailer. Ailes did not have a clear view while attempting to pass. Ailes failed to ensure that it was safe to pass the semi-truck. While Ailes attempted to pass the semi-truck, another vehicle was traveling westbound on U.S. 2 approaching the same location. Ailes crashed his vehicle head-on into the westbound vehicle.

5.      As a result of Ailes' actions, he was charged with the offense of Careless Driving, in violation of § 61-8-302, MCA.

6.      As a result of the negligent acts or omissions of Ailes, Ms. Klemann suffers from aggravating, persistent, and permanent injuries to her body and psyche, including, but not limited to, a traumatic brain injury.

7.      Ms. Klemann's injuries impair her ability to carry out her normal activities, including her daily routine. While Plaintiff attempts to continue her normal activities, she suffers great pain, discomfort, and other limitations by so doing.

8.      Ms. Klemann has been required to seek medical attention in order to relieve her pain, discomfort, and conditions, which may never permanently resolve.

2

**EXHIBIT G-55**

9.     Ms. Klemann's traumatic brain injury has forced her to significantly change her life, including emotional changes and swings, post-traumatic stress disorder, anxiety, flashbacks, personality changes, nausea, migraines, and dizziness, among other injuries and symptoms.

10.    That, upon information and belief, Ailes had a history of dangerous driving and knew or should have known the consequences to himself and others with his choice to dangerously and recklessly drive.

11.    That Ailes's actions created a high probability of injury to Ms. Klemann.

12.    That Ailes's deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury to Ms. Klemann.

## Count 1—Negligence

13.    Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

14.    Ailes was negligent and this negligence legally and proximately caused the injuries suffered by Plaintiff.

15.    Ailes is liable for said acts of negligence.

16.    As a result of Ailes's negligence, Plaintiff has suffered damages in an amount to be determined at trial.

## Count 2—Negligence *Per Se*

17.    Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

18.    Ailes was negligent, as a matter of law, when he violated Montana law and this negligence as a matter of law legally and proximately caused the injuries suffered by Plaintiff.

19.    Ailes is liable for said acts of negligence as a matter of law.

3

**EXHIBIT G-56**

20.     As a result of Ailes's negligence, as a matter of law, Plaintiff has suffered damages in an amount to be determined at trial.

### Count 3—Emotional Distress

21.     Plaintiff realleges all of the facts set out in the introduction and alternate counts of this Complaint.

22.     Said acts or omissions by Ailes as set out above have proximately caused and resulted in negligent and intentional infliction of emotional distress on Plaintiff, damaging Plaintiff in an amount to be determined at trial.

23.     As a result of the actions of Ailes, Plaintiff has been damaged in an amount to be determined at trial.

### Count 4—Actual Fraud/Malice

24.     Plaintiff realleges all of the acts set out in the introduction and alternate counts of this Complaint.

25.     Ailes is guilty of actual fraud and/or malice as defined in § 27-1-221, MCA, for engaging in the aforementioned conduct.

26.     That Ailes's actions resulted when he deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of injury to the Ms. Klemann.

27.     That Ailes's should be assessed punitive damages sufficient to punish, deter, and make an example of such wrongdoing pursuant to § 27-1-221, MCA.

28.     As a result of the actions of Ailes, Plaintiff has been damaged in an amount to be determined at trial.

\\\  \\\  \\\

4

**EXHIBIT G-57**

## Jury Trial Demand

Plaintiff, Elizabeth Klemann, hereby demands trial by jury on all issues.

## Prayer for Relief

Plaintiff prays judgment as follows:

1.   For judgment in favor of Plaintiff and against Ailes on all Counts.

2.   For all past, present, and future medical expenses incurred by Plaintiff.

3.   For compensatory damages in an amount to be determined at trial to compensate the Plaintiff.

4.   For damages in an amount to be determined at trial for all past, present, and future mental anguish and emotional distress suffered by Plaintiff.

5.   For punitive damages, as the same may be allowed by law.

6.   For all costs incurred in the prosecution of this action.

7.   For an award of interest, as deemed appropriate by the Court and as allowed by law.

8.   For an award of attorney's fees, as the same may be allowed by law.

9.   For such other and further relief, both at law and in equity, as the Court shall deem just and proper.

DATED this 7th day of July, 2022.

BLACKFORD CARLS P.C.

Hillary P. Carls
*Attorney for Plaintiff*

5

**EXHIBIT G-58**