Nathan A. Huey
Natalie A. Hammond
Lindsay A. Mullineaux
Gordon Rees Scully Mansukhani, LLP
283 W. Front Street, Suite 003
Missoula, MT 59802
Telephone: 406-218-4074
nhuey@grsm.com; nhammond@grsm.com
lmullineaux@grsm.com; hslowik@grsm.com

*Attorneys for Hillary Carls*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| ZACHARY AILES,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH KLEMANN and HILARY CARLS,<br><br>Defendants. | Case No.9:26-cv-00014-KLD<br><br><br>**DEFENDANT HILLARY CARLS' BRIEF IN SUPPORT OF HER SPECIAL MOTION FOR EXPEDITED RELIEF TO DISMISS** |

# TABLE OF CONTENTS

INTRODUCTION……………………………..………………………………………...1-2

FACTUAL BACKGROUND……………………………..………………………..2

ARGUMENT……………………………………………………………………2-27

I.    Under Ninth Circuit Precedent, Montana's UPEPA Applies…………2-27

    A. Montana's UPEPA Applies and Warrants Dismissal of Ailes's Complaint…………………………………………………………3-27

        i.    Legal Framework for Application of Montana's UPEPA…....3-5

        ii.    Carls's communications are protected under §27-34-102(1)..6-11

            a.  Subsections (a) and (b) apply……………………………..6-9

            b.  Subsection § 27 34 102(1)(c) is applicable………………9-11

        iii.    Ailes Cannot Meet His Prima Facie Burden………………11-27

            a.  Ailes Cannot Establish a Prima Facie Case of Malicious Prosecution…………………………………………….12-23

                i.    Ailes Did Not Secure a Favorable Termination…13-18

                ii.    Ailes Can Prove No Damages…………………18-19

                iii.    Ailes Cannot Show Probable Cause……………19-23

            b.  Ailes Cannot Establish a Prima Facie Case of Abuse of Process……………………………………………23-27

                i.    All Counts of Ailes's Complaint Fail to State a Claim……………………………………………26-27

                ii.    Carls Is Entitled to Recover Attorneys' Fees and Costs……………………………………………….27

CONCLUSION…………………………………………………………………..28

# TABLE OF AUTHORITIES

**Cases:**

*Spevack v. Klein*, 385 U.S. 511, 524 (1967)…………………………………………………1
*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018)………………………………………………………………………..…..2
*CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1138 (9th Cir. 2022)……....3
*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010)………………………………………………………………………………..3
*Neville v. Chudacoff*, 160 Cal.App.4th 1255 (2008)………………………………..3
*Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564 (1999)…………….6
*Rusheen v. Cohen*, 128 P.3d 713 (2006) ……………………………………………...6
*Mothershed v. Justices of Supreme Court,* 410 F.3d 602, 611 (9th Cir. 2005)……..9
*Denius v. Dunlap,* 209 F.3d 944, 953 (7th Cir. 2000) ………………………………9
*Schimmel v. McGregor*, 438 S.W.3d 847, 858 (Tex. App. 2014) …………………..9
*Thornton v. Breland*, 441 So. 2d 1348, 1350 (Miss. 1983) …………………………9
*Snyder v. Phelps*, 562 U.S. 443, 453 (2011) ………………………………………10
*Plouffe v. Mont. Dept. of Pub. Health & Human Servs.*, 2002 MT 64, ¶ 16, 309 Mont. 184, 45 P.3d 10…………………………………………………………………12
*JSJ Ltd. Partnership v. Mehrban,* 205 Cal. App. 4th 1512, 2012 WL 1739865 (2d Dist. 2012) …………………………………………………………………………..13
*In re Ritzinger*, 286 B.R. 410 (Bankr. N.D. Cal. 2002) ……………………………13
*Lucas v. District of Columbia*, 505 F. Supp. 2d 122 (D.D.C. 2007) ………………14
*Ferraris v Levy,* 223 Cal App 2d 408 (1st Dist. 1963) ……………………………14
*Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411 (1995) ………14-16
*Vehrs v. Piquette*, 210 Mont. 386, 392, 684 P.2d 476, 479 (1984) ……………16-17
*Strain v. Kaufman County District Attorney's Office*, 23 F.Supp.2d 685, 693 (N.D. Texas 1998) ………………………………………………………………………17
*Simon v. Navon*, 951 F.Supp. 279, 283 (D. Maine 1997) …………………………17
*Dalany v. American Pacific Holding Corporation*, 42 Cal.App.4th 822, 826-29 (1996) …………………………………………………………………………………17
*Ludwig v. Superior Court*, 37 Cal.App.4th 8, 29 (1995) …………………………17
*Meyers v. Kruger*, 759 F. Supp. 770, 772 (E.D. Oklahoma 1990) …..……………17
*Stipe v. First Interstate Bank-Polson*, 188 P.3d 1063) ……………………..………18
*Spoja v. White*, 2014 MT 9, 373 Mont. 269, 317 P.3d 153……………19-20, 25-26
*Blackburn v. Blue Mountain Women's Clinic*, 951 P.2d 1 (Mont. 1997) …………21
*Cosgriffe v. Cosgriffe*, 864 P.2d 776 (Mont. 1993) ……………………………..……21
*Caver v. Clayton*, 618 S.W.3d 895, 901 (2021) …………………………………22
*Brault v. Smith*, 209 Mont. 21, 28, 679 P.2d 236, 240 (1984) …………………23-24

*Hopper v. Drysdale,* D.Mont.1981, 524 F.Supp. 1039 (1981) …………….………24
*Hughes v. Lynch*, 2007 MT 177, 338 Mont. 214, 164 P.3d 913………………24-25
*Seltzer v. Morton*, 2007 MT 62, 336 Mont. 225, 154 P.3d 561……………….……25
*Duffy v. Butte Teachers' Union*, 168 Mont. 246, 253, 541 P.2d 1199, 1203 (1975)..27
*Fulton v. Farmers Union Grain Terminal Ass'n*, 140 Mont. 523, 531, 374 P.2d 231, 236 (1962) ……………………………………………………………………………27

**Statutes:**

Montana's Uniform Public Expression Protection Act ("UPEPA")………….1-11, 27
Montana Code Annotated § 27-34-101 et seq………………………………………1
M.R.Civ. P. Rule 12(b)(6)……………………………………………………..2
Mont. Code Ann. § 27-34-102(1)……………………………………………..3-4
Mont. Code Ann. § 27-34-103……………………………………………..3
Mont. Code Ann § 27-34-111……………………………………………..3
Mont. Code Ann § 27-34-106…………………………………………….3
Mont. Code Ann § 27-34-107(1)……………………………………………3
Mont. Code Ann § 27-34-102(2)……………………………………………4
Mont. Const. art. II, §§ 6, 7, 16……………………………………………6,9
Mont. Code Ann § 27-34-102(1)(a)…………………………………………7,9
Mont. Code Ann § 27-34-102(1)(b)…………………………………………7,9
Mont. Code Ann § § 27-34-102(1)(c)………………………………………..9-11
Mont. Code Ann. § 27-34-107(1)(c)(i)……………………………………11,27
Mont. Code Ann § 27-1-220(1)……………………………………………18
Mont. Code Ann. § 27-2-102(3)…………………………………...………21
Mont. Code Ann § 27-34-107(1)(c)(ii)(A)………………………………………27
Mont. Code Ann § 27-34-110(1)……………………………………………27

**Other Authorities:**

Prosser and Keeton on the Law of Torts § 120, 5th Ed. 1984…………………………17

Defendant Hillary Carls ("Carls"), by and through her counsel of record, and pursuant to Montana's Uniform Public Expression Protection Act ("UPEPA"), Montana Code Annotated § 27-34-101 et seq., respectfully submits this Brief in Support of her Special Motion for Expedited Relief to Dismiss.

**INTRODUCTION**

Plaintiff Zachary Ailes ("Aisles"), a self-professed wealthy citizen of Florida, seeks to silence and punish Carls, a respected Montana attorney, for complying with her duty to zealously advocate on behalf of her client, Elizabeth Klemann ("Klemann"), in a 2022 lawsuit arising out of injuries Klemann suffered because of Ailes's actions. Carls's actionable sin, according to Ailes, was daring to pursue damages both for claims related to a car accident caused by Ailes as well as sexual misconduct. Ultimately, the damages component for sexual misconduct was dismissed by the Court on the grounds that the applicable statute of limitations had expired. Ailes asserts claims against Carls for malicious prosecution and abuse of process and seeks $332,586.68 in special damages (consisting of fees and expenses incurred in defending the sexual misconduct claim), along with punitive damages.

It has long been recognized "that lawyers are officers of the court who perform a fundamental role in the administration of justice." *Spevack v. Klein*, 385 U.S. 511, 524 (1967). Here, Ailes is weaponizing claims for malicious prosecution and abuse of process in a blatant effort to thwart that fundamental role and punish the lawful

pursuit of redress for the injuries Ailes himself inflicted. This attempt to chill constitutionally protected advocacy and foreclose access to the courts is precisely the sort of retaliatory conduct Montana's UPEPA was enacted to prevent. More specifically, Montana's UPEPA statute was designed to provide for the early dismissal of lawsuits just like this one. Because the lawsuit targets the exercise of free speech in a judicial proceeding and involving matters of public interest/public concern, Ailes must show a probability of prevailing on the merits of his claims. He cannot do so.

## FACTUAL BACKGROUND

Carls incorporates by reference the facts presented to the Court in Doc. 7.

## ARGUMENT

**I.** **Under Ninth Circuit Precedent, Montana's UPEPA Applies.**

This Court is bound by decisions of the Ninth Circuit Court of Appeals, and binding Ninth Circuit authority definitively resolves the issue presented here. The Ninth Circuit has long held that anti-SLAPP motions may be brought in federal court and that, when such a motion challenges the legal sufficiency of the claims—as it does here—the motion is evaluated under the standards of Rule 12(b)(6). *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

More recently, in *CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1138 (9th Cir. 2022), the Ninth Circuit reaffirmed that its precedent applying California's anti-SLAPP statute in federal court remains controlling. The court expressly considered whether those precedents were irreconcilable with the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), and concluded they were not. Finding no intervening authority that clearly undermined its prior holdings, the panel declined to overrule its longstanding rule confirming the availability of anti-SLAPP procedures in federal court.

Because Montana's UPEPA is closely analogous to an anti-SLAPP statute, there is no procedural or doctrinal impediment to applying UPEPA in this federal action.

**A. Montana's UPEPA Applies and Warrants Dismissal of Ailes's Complaint.**

**i. Legal Framework for Application of Montana's UPEPA.**

UPEPA allows a defendant to "file a special motion for expedited relief to dismiss" a cause of action or part of a cause of action based on the defendant's:

(a) communication in a legislative, executive, judicial, administrative, or other governmental proceeding;

(b) communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or

(c) exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Montana Constitution, on a matter of public

concern.

Mont. Code Ann. §§ 27-34-102(1) and 103. While UPEPA does not expressly define the term "communication," there is substantial precedent from jurisdictions with comparable anti-SLAPP statutes recognizing that statements and writings made in connection with judicial proceedings are protected. California courts, for example, have recognized that traditional written and oral statements qualify as protected activity under the state's similarly worded anti-SLAPP statute. In *Neville v. Chudacoff*, 160 Cal.App.4th 1255 (2008), the court held that a statement or writing is made "in connection with" litigation, including anticipated litigation, when it relates to the substantive issues in the dispute and is directed to persons with an interest in the litigation. This standard has since been applied broadly to encompass litigation-related communications.

This interpretation accords with the express directive found in Montana's UPEPA that it "shall be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association guaranteed by the United States constitution or the Montana constitution." § 27-34-111.

Where, as here, the challenged conduct plainly falls within UPEPA's definition of protected activity, the analysis next proceeds to the statute's dismissal framework. Under § 27-34-106 and § 27-34-107(1), UPEPA directs courts to dismiss

with prejudice a cause of action—or any part of it—when three conditions are met:

(a) the moving party establishes under § 27-34-102(1) that the Act applies;
(b) the responding party fails to establish under § 27-34-102(2) that UPEPA does not apply; and
(c) either
  (i) the responding party fails to establish a prima facie case as to each essential element of the claim, or
  (ii) the moving party demonstrates that:
    (A) the responding party has failed to state a claim upon which relief can be granted, or
    (B) no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.
(d) Once these requirements are triggered, UPEPA's mandatory dismissal mechanism governs, and the court may not allow the claim to proceed.

UPEPA thus establishes a three-step process to evaluate a special motion for expedited relief. The first step requires the court to determine whether UPEPA applies to all or part of the challenged causes of action. The second step places the burden on the plaintiff to demonstrate that there is a prima facie case for each element of the claims under review. The third step permits the defendant to either show that the plaintiff cannot state a cause of action or that there is no genuine issue of material fact that would prevent entry of judgment for the defendant.

Here, (A) the communications and conduct by Carls fall within the protections of §27-34-102(1), (B) Ailes cannot satisfy his burden to show substantial evidence of a prima facie case for claims, and (C) Ailes cannot state a cause of action under either a claim for malicious prosecution or a claim for abuse of process. Therefore, the Court must dismiss Ailes's claims against Carls.

### ii. Carls's communications are protected under §27-34-102(1).

### a. Subsections (a) and (b) apply.

UPEPA expressly protects a "communication in a legislative, executive, judicial, administrative, or other governmental proceeding," reflecting Montana's strong constitutional commitment to the rights of speech, petition, and access to the courts. Mont. Const. art. II, §§ 6, 7, 16. By its plain language and stated purpose, UPEPA applies to claims based on statements made during judicial proceedings, statements related to issues under consideration in those proceedings, and petitions pursuing matters of public concern. Here, the statements at issue were made during the judicial process, and Carls, acting in her capacity as an attorney, filed a petition invoking Montana courts to seek redress on behalf of her client, Klemann. The challenged conduct therefore falls squarely within UPEPA's definition of protected activity.

Consistent with Montana's constitutional protections, courts interpreting analogous anti-SLAPP statutes have confirmed that petitioning activity is protected even when undertaken on behalf of others. In *Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564 (1999), the California Supreme Court held that anti-SLAPP protection is not limited to speech or petitions advancing a defendant's personal interests but rather extends to advocacy conducted for clients or the public. The court reaffirmed this principle in *Rusheen v. Cohen*, 128 P.3d 713 (2006), where

an attorney successfully invoked anti-SLAPP protection against claims arising from his representation of a client. These decisions underscore a principle fully compatible with Montana law—when an attorney engages in advocacy within the judicial process, that conduct constitutes protected petitioning activity. Accordingly, Carls's communications and filings as counsel for Klemann qualify for protection under UPEPA and Montana's constitutional guarantees.

UPEPA expressly protects both "a communication in a legislative, executive, judicial, administrative, or other governmental proceeding," § 27-34-102(1)(a), and "a communication on an issue under consideration or review in a … judicial … proceeding," § 27-34-102(1)(b). Both provisions apply here. Carls's communications and related conduct were undertaken in her capacity as an attorney within the judicial process and concerned issues actively before the court, including pleadings and discussions with opposing counsel regarding the contents and potential amendment of the complaint. In the underlying complaint, Carls, on behalf of Klemann, alleged that Ailes engaged in nonconsensual sexual contact after impairing Klemann with alcohol, after causing a traumatic brain injury rendering her unable to consent.

Those allegations were not pleaded as independent causes of action but were asserted as part of the factual basis supporting claims for negligence, negligence per se, emotional distress, and fraud/malice. As Ailes himself alleges, Carls's

statements—both in the complaint and in communications with opposing counsel regarding potential amendment of the pleadings—addressed matters expressly placed at issue in the litigation.

The parties' disagreement over whether a statute of limitations applied to certain components of the claims does not remove the communications from the ambit of UPEPA's protections. Attorneys routinely dispute the applicability of statutes of limitation to theories, factual allegations, or categories of damages, and such disagreement is a normal and expected aspect of adversarial litigation. Indeed, electing not to assert potentially viable components of a client's claim based on a contested limitations defense could itself constitute a failure to effectively represent the client's interests. Carls's decision to advance, defend, and discuss those allegations as part of the litigation, and to engage opposing counsel regarding their inclusion or amendment, reflects protected advocacy within the judicial process, not improper conduct. Under Ailes's theory, any time attorneys disagree over the viability or applicability of a claim, and one side ultimately prevails, opposing counsel would be exposed to malicious prosecution liability. Such a rule would have a profound and chilling effect on the practice of law, deter attorneys from effectively representing their clients, and severely impair Montana citizens' constitutional right to access the courts and seek redress for grievances.

Accordingly, Carls's communications relate directly to issues under consideration in a judicial proceeding and fall squarely within the scope of protected activity under § 27-34-102(1)(a) and (b).

**b. Subsection § 27-34-102(1)(c) is applicable.**

With regard to § 27-34-102(1)(c), Carls's representation of her client is protected by the guarantee of freedom of speech, association, and petition under the United States Constitution. The "'right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition.'" *Mothershed v. Justices of Supreme Court,* 410 F.3d 602, 611 (9th Cir. 2005) (quoting *Denius v. Dunlap,* 209 F.3d 944, 953 (7th Cir. 2000)). Courts across the country have applied First Amendment protections to attorneys representing clients in bringing suit. (*See Schimmel v. McGregor*, 438 S.W.3d 847, 858 (Tex. App. 2014) (recognizing attorneys have a right to petition on behalf of clients and a right to freedom of speech on behalf of clients in applying Texas anti-SLAPP law); *Thornton v. Breland*, 441 So. 2d 1348, 1350 (Miss. 1983) ("We regard the lawyer's right and responsibility of zealous advocacy on behalf of his client among the most precious forms of speech.")

Much the same is true regarding the Montana Constitution. The right of Montana citizens to access the courts is grounded in Article II, Section 16, which states, "[c]ourts of justice shall be open to every person." Thus, in representing her

client, Carls was exercising her constitutional rights under the Montana Constitution, in addition to the United States Constitution, as § 27-34-102(1)(c) contemplates.

Montana Code Annotated § 27-34-102(1)(c) also requires the protected conduct relate to "a matter of public concern." UPEPA does not define the term "public concern." The United States Supreme Court has held speech deals with matters of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).

Here, Carls's statements and conduct representing her client's interests are on matters of public concern. Allegations of sexual misconduct implicate matters of public concern because they relate directly to personal safety, accountability, and community welfare. This conclusion is reinforced by the modern legal and societal context. Widespread public attention to sexual misconduct, across institutions, workplaces, communities, and nations, demonstrates such allegations are not confined to purely private disputes. High-profile matters, including those involving Jeffrey Epstein and his cohorts, illustrate the broader societal interest in identifying, reporting, and addressing sexual misconduct, even when allegations initially arise from individual claims.

The allegations of sexual misconduct Carls raised against Ailes satisfy that standard because they implicate not only the interests of the parties, but also the safety of others and the community's interest in preventing abuse. Accordingly, such allegations constitute matters of public concern and fall within UPEPA's protections. As such, Carls's petition to the court falls squarely within the scope of protected activity under § 27-34-102(1)(c).

In sum, and considering the broad reach of Montana's UPEPA statute, Ailes's claims arise out of speech in connection with an issue of public interest. Thus, Carls has satisfied step one—application of UPEPA.

### iii. Ailes Cannot Meet His Prima Facie Burden.

With the first prong of UPEPA satisfied, as seen here, the burden shifts to Ailes. Ailes *must* "establish a prima facie case as to each essential element of the civil action" Mont. Code Ann. § 27-34-107(1)(c)(i). As previously discussed, Ailes's Complaint sounds in two theories: malicious prosecution and abuse of process. While these claims fail for multiple reasons, addressed in more detail below, they share a fundamental failure that resonates with the purpose of the UPEPA—there is nothing improper about the pursuit of legitimate claims in the regular course of litigation.

### a. Ailes Cannot Establish a Prima Facie Case of Malicious Prosecution.

Aisles' malicious prosecution claim hinges on the theory that Carls initiated the litigation against him in malice, without probable cause to believe the action could succeed, and that the action finally ended in failure. *See* Pls' Compl., ¶¶ 49-57 (Jan. 16, 2026); *see also Plouffe v. Mont. Dept. of Pub. Health & Human Servs.*, 2002 MT 64, ¶ 16, 309 Mont. 184, 45 P.3d 10 ("[a] malicious prosecution begins in malice, without probable cause to believe the action can succeed, and finally ends in failure"). This theory is unpersuasive.

Under Montana law, a claim for malicious prosecution has six elements, and each element must be met for a claimant to succeed. *Plouffe,* ¶ 16. The essential elements are as follows:

(1) A judicial proceeding was commenced and prosecuted against the plaintiff;
(2) The defendant was responsible for instigating, prosecuting or continuing such proceeding;
(3) There was a lack of probable cause for defendant's acts;
(4) Defendant was actuated by malice;
(5) The judicial proceeding terminated favorably for plaintiff;
(6) The plaintiff suffered damage.

*Plouffe*, ¶ 16.

Ailes's Complaint, even when taken as true and drawing all inferences in favor of the non-moving party, demonstrates he cannot show a favorable termination, suffered no damages, and cannot demonstrate lack of probable cause. Accordingly, the malicious prosecution claim must be dismissed.

### i. Ailes Did Not Secure a Favorable Termination.

Ailes attempts to support his malicious prosecution claim by arguing the proceeding terminated in his favor because he secured a dismissal. *See* Pls' Compl., ¶ 54. However, this position ignores two crucial issues. For one, the dismissal secured was procedural, not substantive. Second, the dismissal was partial—it resolved a single aspect of the case. The remainder of the case was voluntarily settled between the parties. Under such circumstances, Ailes can demonstrate no favorable outcome.

It is well-established that, for the termination of an underlying civil proceeding to be treated as favorable for the purposes of a malicious prosecution action, it must be consistent with a finding for the defendant on substantive grounds and not for technical or procedural reasons. It is also well established that terminations on statute of limitations grounds are considered technical or procedural—not substantive. *See e.g., JSJ Ltd. Partnership v. Mehrban,* 205 Cal. App. 4th 1512, 2012 WL 1739865 (2d Dist. 2012) (examples of procedural terminations of a lawsuit which are not considered favorable for purposes of a malicious prosecution claim include *terminations on statute of limitations grounds*; *pursuant to a settlement*); *In re Ritzinger*, 286 B.R. 410 (Bankr. N.D. Cal. 2002) (ruling that a fraud claim was *barred by statute of limitations did not constitute favorable termination* of the claim as to support cause of action for malicious

prosecution); *Lucas v. District of Columbia*, 505 F. Supp. 2d 122 (D.D.C. 2007) (termination of a lawsuit on *statute of limitations grounds is not favorable termination* that will support an action for wrongful use of civil proceedings); *Ferraris v Levy,* 223 Cal App 2d 408 (1st Dist. 1963) (*a favorable termination must be consistent with the defendant's innocence* rather than be a resolution based purely on technical considerations).

In the present case, it is undisputed the damages portion of the four valid claims that included allegations of sexual misconduct were dismissed on the basis they were barred by the applicable two-year statute of limitations. *See* Pls' Compl. at Exhibit H. As evidenced above, such a dismissal is not a favorable termination. Accordingly, Ailes's malicious prosecution claim fails on this basis alone, and no further analysis is required.

To be clear, Carls does not deny there is precedent in Montana related to favorable terminations in the context of time-barred claims. However, such precedent is easily distinguished. In *Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411 (1995), the Montana Supreme Court held that, in certain limited instances, dismissal predicated on a statute of limitations defense may constitute a favorable termination. Specifically, in *Sacco*, an employee brought various claims, including malicious prosecution, against former employers and police officers after allegations of theft led to the filing of charges against her. *Id.*, 896 P.2d at 414-415.

However, it is imperative to recognize that *Sacco* involves a unique fact pattern not present here.

To illustrate, during the underlying criminal proceedings in *Sacco*, the complaint set forth dates of the alleged commission of the offense, but the officers were unable to prove any offenses occurred at such times. *Sacco*, 896 P.2d at 431-433. The officers then attempted to amend the complaint and delete these incorrect dates because, according to the City Attorney, "[w]e couldn't prove that [any items] were actually taken during October 19, 1989, and June 28, 1990." *Id.*, 896 P.2d at 432-433. In doing so, the officers admitted that the original charges could never be proven in the first place. *Id.* Amending the complaint based on this admission brought the action within the bar of the statute of limitations and ultimately resulted in the dismissal of the charge. *Id.* Thus, unlike the cases addressed above, the dismissal of the proceedings in *Sacco did* reflect the underlying merits of the case— the original charges could never have been proven in the first place.

In addressing this distinction, the Montana Supreme Court explained "for the termination of the underlying action to be deemed favorable to the defendant, the termination must reflect on the merits of the underlying action." *Id.* In essence, the circumstances of *Sacco* presented a rare scenario where the application of the statute of limitations defense demonstrated that the defendants in the malicious case had no provable claims in the first place. So, while *Sacco* may appear to demonstrate a

Montana deviation from the well-established rule regarding procedural terminations and may, on its face, appear to support Mr. Ailes's claims, the accurate reading is that termination in *Sacco* was simply not procedural.

In comparison, the granting of the partial dismissal in the present case involves no unique fact pattern. At all times, Carls asserted her client's claims and defended the merits of the same through her correspondence with Ailes's counsel and extensive briefing, which addressed the nature of the underlying claim, the potential application of equitable tolling, and complex statute of limitations issue. *See* Pls' Compl., at Exhibits A-C, G. After these discussions and briefing, the Court entered the partial dismissal on the basis that the sexual assault claim component was barred by the applicable two-year statute of limitations. *See* Pls' Compl., at Exhibit H. Nothing in this chain of events provides a dismissal reflecting the merits of the underlying action, as would be required to make *Sacco* analogous to this case. Instead, the dismissal remains purely procedural, and Ailes's malicious prosecution claim fails on this basis alone.

Ailes's assertions are further undermined by the fact that the dismissal was partial, and the parties voluntarily agreed to resolve the remaining aspects of the claim. Under Montana law, "[a] proceeding that terminates indecisively because of a settlement or plea negotiation agreement does not meet the requirements of a cause of action for malicious prosecution." *Vehrs v. Piquette*, 210 Mont. 386, 392, 684 P.2d

476, 479 (1984).[1] Numerous other jurisdictions land squarely in alignment with Montana on this critical point. *See e.g., Strain v. Kaufman County District Attorney's Office*, 23 F.Supp.2d 685, 693 (N.D. Texas 1998) (resolution of civil proceedings through agreement or compromise defeats essential element of favorable termination); *Simon v. Navon*, 951 F.Supp. 279, 283 (D. Maine 1997) ("A settlement is not, as a matter of law, a favorable termination of the proceedings sufficient to form the basis for a subsequent malicious prosecution action," *citing* Prosser and Keeton on the Law of Torts § 120, 5th Ed. 1984); *Dalany v. American Pacific Holding Corporation*, 42 Cal.App.4th 822, 826-29 (1996) (dismissal resulting from settlement does not constitute a favorable determination because . . . the dismissal reflects ambiguously on the merits of the action.); *Ludwig v. Superior Court*, 37 Cal.App.4th 8, 29 (1995) ("*twin requirements of no probable cause and favorable termination are, and should be, strictly enforced*. There is no legal way for a defendant who elects to settle a suit rather than going to trial to demonstrate that the dismissal resulting from the settlement constituted a favorable termination on the merits."); *Meyers v. Kruger*, 759 F. Supp. 770, 772 (E.D. Oklahoma 1990) (where a termination of a prosecution is pursuant to a compromise or settlement, a later action for malicious prosecution is barred.).

---

[1] Notably, in *Vehrs*, The Montana Supreme Court relied on the Restatement (Second) of Torts, § 660 (1977) for its holding that a proceeding that terminates indecisively through settlement will not meet the requirements of a cause of action for malicious prosecution. *Vehrs*, 210 Mont. at 392.

Ailes cannot defeat the well-established principle seen in *Vehrs* and echoed by numerous other jurisdictions. Ailes voluntarily entered into a settlement agreement to resolve the underlying lawsuit. The case was then dismissed pursuant to a stipulation, under which both parties agreed to pay their own attorneys' fees and costs. *See* Doggett Decl., Ex. A and B (Doc. No. 7). Put simply, no favorable determination can exist here, and the Court can elect to dismiss Ailes's malicious prosecution claim without need for additional analysis. With that said, Aisles's claim fails for several more reasons, which are addressed below.

### ii. Ailes Can Prove No Damages.

It is axiomatic that any party prosecuting a malicious prosecution claim prove their damages. Ailes cannot do so here. In his Complaint, Ailes seeks only attorneys' fees and punitive damages. *See generally* Pls' Compl. However, Ailes waived any right to recovery of attorneys' fees when the parties settled the matter and entered a stipulation with the Court that each party is responsible for its own attorneys' fees and costs. *See* Doggett Decl., Ex. A and B (Doc. No. 7). Under Montana law, a plaintiff cannot seek punitive damages if they have no other recoverable damages.[2] Ailes has no right to recover attorneys' fees and has failed to plead any other

---

[2] Montana law clearly establishes that actual compensatory damages are an absolute prerequisite for any punitive damages award. The Montana Supreme Court has consistently held that "actual damages are a predicate for punitive damages, and an individual with no real or actual damages has no right of action for punitive damages." *Stipe v. First Interstate Bank-Polson*, 188 P.3d 1063). This requirement is codified in Montana Code Annotated § 27-1-220(1), which provides that punitive damages may be awarded only "in addition to compensatory damages."

recoverable costs in his Complaint—presumably because he does not have any. As a matter of judicial efficiency and in the interests of promoting continued resolution of cases, it would be entirely unjust to permit Ailes to seek recovery of fees he agreed to pay simply as a vessel on which to attached punitive damages. Ailes's Complaint, undoubtably carefully crafted by his own well-equipped counsel, demonstrates he has no damages. Without damages, his claim cannot proceed.

### iii. Ailes Cannot Show Probable Cause.

Ailes next asserts that probable cause did not exist in the underlying matter because Carls knew the sexual assault claim was time barred, as demonstrated by communications between underlying counsel and the Court's granting of the partial dismissal. *See* Pls' Compl. at ¶ 26. However, this theory conveniently disregards Carls's reasonable belief in the merits of the claim, evidenced by the counselling records of Klemann as well as Carls's briefing on the underlying claim. *See* Pls' Compl. at Exhibit C (Counseling Records from Warren Michelson, L.C.S.W.).

The seminal case in Montana regarding the probable cause standard is *Spoja v. White*, 2014 MT 9, 373 Mont. 269, 317 P.3d 153. In *Spoja*, a public defender (Spoja) was sued by a former client (White) and subsequently brought various claims against White and their attorney (Tipp), including a claim for malicious prosecution. *Id.,* ¶¶ 5-7. Spoja argued that White's suit was barred by the statute of limitations and that Tipp should have known no valid claim existed. *Id.,* ¶ 13. In analyzing

Spoja's claim, the Court recognized the dangerous prospect of precedent that attorneys may only accept cases with complete guarantees of success at the time of inception. The Court explained, "attorneys are not required to predict and exhaust every possible counter-argument to a complaint before deciding to file" and held that any analysis would instead hinge on "whether, at the time he filed the complaint, Tipp had a reasonable belief in facts that would cause a reasonable person to file the suit." *Id*. Relevant here, the Court took special notice of the correspondence between the parties, which included debates about the applicable statute of limitations, and noted "[t]he correspondence between Tipp and Spoja's attorney demonstrates that Tipp had a reasonable legal argument for the timeliness of White's case." *Id.* Continuing this analysis, the Court found Tipp reasonably believed, at the time the lawsuit was filed, the facts gave rise to a valid claim. *Id.* Accordingly, because Spoja failed to demonstrate evidence Tipp lacked probable cause, he could not demonstrate a prima facie malicious prosecution claim. *Id*. The same conclusion applies here.

Critically, the *Spoja* decision demonstrates that Montana law provides important protections for attorneys who are sued for filing potentially time-barred claims when they had reasonable legal arguments regarding timeliness. By way of this decision, the Montana Supreme Court has embraced the idea that attorneys are often in the position of navigating complex statute of limitations arguments. This is particularly true in the context of sexual assault cases, where the injuries are self-

concealing and the extent of the trauma may not be fully known for years after the abuse.

Notably, Montana law has long codified the discovery doctrine that permits tolling of the period of limitation for tort actions in situations where the facts constituting the claim are by their nature concealed or self-concealing or where the defendant has taken action which prevents the injured party from discovering the injury or its cause. Mont. Code Ann. § 27-2-102(3). Over the years, Montana's use of this doctrine has greatly expanded, including application to cases involving physical harm, such as *Blackburn v. Blue Mountain Women's Clinic*, 951 P.2d 1 (Mont. 1997), in which the Court permitted tolling on the statute of limitations for select claims of a patient after she underwent an unnecessary abortion following receipt of inaccurate information from medical personnel.

Montana continues to expand the general principles of the discovery doctrine in other contexts, including in the context of child sexual abuse cases, for example, *Cosgriffe v. Cosgriffe*, 864 P.2d 776 (Mont. 1993), in which the Court explained:

> Courts throughout the country have applied the discovery rule to cases where plaintiffs were aware of the sexual assaults at or before the age of majority, but were unaware of the causal connection between the abuse and the physical and psychological problems they encountered. In so holding, these courts have structured a broad interpretation of the discovery rule, which tolls the running of the statute until there is: 1) a discovery of the injury; and 2) a discovery of the cause of the injury.

*Cosgriffe*, and other similar Montana cases, demonstrate the laws surrounding tolling

of limitations periods are continually evolving and, generally, expanding. This legal application of the law of entropy is further evidenced by other jurisdictions, in which these laws continue to grow. For example, Texas courts recently applied the discovery doctrine in a case addressing adult-on-adult sexual assault. *Caver v. Clayton*, 618 S.W.3d 895, 901 (2021) (holding that "the discovery rule is applicable to a civil-assault cause of action provided that the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.") (internal quotations omitted).

This synopsis of the modern issues impacting statute of limitations analyses is by no means comprehensive—indeed, there are many other examples of this phenomenon. Regardless, it serves to demonstrate the ever-changing and complex nature of the law—particularly where the law intersects with emotional, societal issues such as sexual assault. To facilitate the advancement of the law as societal views shift, attorneys must be protected from lawsuits in circumstances where they have a reasonable belief in the merits of their claim at the time of inception.

Here, Ailes is unable to demonstrate Carls did not have probable cause. Carls's reasonable belief in the merits of her claim is evidenced by her knowledge of her client's traumatic brain injury caused by Ailes (*See* Pls' Compl., at Ex. C) (describing impact of significant traumatic brain injury), her knowledge of Klemann' sexual assault—again, caused by Ailes at a time where Klemann's ability to make any

meaningful decisions about consent was virtually non-existent—(*see* Pls' Compl., at Ex. C) (describing non-consensual sexual encounters), and Carls's knowledge of the complex and ever-evolving landscape of the law surrounding the tolling of limitation periods and treatment of sexual assault claims. Such information more than satisfies the probable cause component, against defeating Ailes's claim. With the malicious prosecution claim disposed on, the analysis turns to the abuse of process claim. As discussed below, this claim fails as well.

### b. Ailes Cannot Establish a Prima Facie Case of Abuse of Process.

Ailes's abuse of process claim appears to be predicated on the idea that Carls improperly sought settlement proceeds from him as redress for the claims asserted in litigation. This claim fails as a matter of law as the desire to recover damages, even aggressively, is not an ulterior purpose under the law. Indeed, the opposite is true—demands to settle claims for money are integral to the judicial process.

Under Montana law, a plaintiff asserting abuse of process must establish two elements:

(1) an ulterior purpose; and
(2) a willful act in the use of process that is not proper in the regular conduct of the proceeding.

*Brault v. Smith*, 209 Mont. 21, 28, 679 P.2d 236, 240 (1984).

Critically, abuse of process does not arise from the mere filing of a lawsuit or the pursuit of damages. Rather, "there must be an attempt … to use process to coerce

the defendant to do some collateral thing which he could not be legally and regularly compelled to do." *Id*. The tort specifically targets the perversion of legal machinery—in other words, the misuse of judicial process to achieve an unlawful collateral objective.

Montana is rife with case law demonstrating that simply pursuing damages is insufficient to support an abuse of process claim. For example, in *Brault*, the Court upheld the dismissal of an abuse of process claim predicated on an entity's attempt to collect damages resulting from a partially performed construction contract. *Brault*, 679 P.2d at 240. In support of its decision, the Court contrasted the circumstances of *Brault* with a previous case, *Hopper v. Drysdale,* D.Mont.1981, 524 F.Supp. 1039 (1981), in which defendant attorneys noticed and took plaintiff's deposition with the ulterior motive of having him present for arrest on an unrelated warrant. *Id.*, 679 P.2d at 240. While the circumstances in *Hopper* rose to the level of abuse of process because the lawsuit was used to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do, *Brault* merely involved attempts to collect damages and no such perversion occurred. *Id*, 679 P.2d at 240.

Later, in *Hughes v. Lynch*, 2007 MT 177, 338 Mont. 214, 164 P.3d 913, the Court was presented with a similar issue when a doctor who had prevailed on sexual harassment claim brought an abuse of process claim against the complaining hospital employee, arguing that she had brought the claim for the purpose of disrupting

Hughes's business relationships and causing irreparable harm to his reputation. *Id.*, ¶ 22-23. While Hughes argued the claim was filed out of a profit motive and malice, the Court rejected his argument, explaining Hughes was never compelled to do something he was not legally required to do. *Id.*, ¶ 22-24. Thus, legitimate legal proceedings, even when pursued with mixed motives, cannot give rise to abuse of process liability.

The Court addressed this matter again in *Seltzer v. Morton*, 2007 MT 62, 336 Mont. 225, 154 P.3d 561, once again remaining consistent in their analysis. In *Seltzer*, defendants threatened and initiated litigation not to adjudicate claims but to force an art expert to recant, under oath, his professional opinion regarding the authenticity of a painting. *Id.*, ¶ 62. Although the suit was framed as seeking injunctive relief, declaratory judgment, and damages, the evidence showed the true objective was to coerce false testimony so the artwork could be sold as an authentic Charles M. Russell. *Id.*, ¶ 62. Using litigation to pressure an expert to lie or abandon truthful testimony is a collateral objective the law does not permit, and thus a perversion of process.

The Court's consistency regarding abuse of process claims is reiterated in *Spoja*, where the Court found the breach of contract action brought against Spoja by Tipp and White, in which White sought payment of damages after being incarcerated for a longer period than necessary, did not constitute an abuse of process. *Spoja*, ¶ ¶

18-19. Here, the Court again explains that payment of damages is a legitimate purpose for civil litigation and, without more, does not constitute an improper ulterior purpose supporting an abuse of process claim. *Id.*

The trajectory of these cases demonstrates that Montana law on abuse of claims is clear. Abuse of process simply will not prevail in any situation where an individual is not being forced to do some collateral thing which he could not be legally and regularly compelled to do. In the present matter, Carls initiated a suit against Ailes and sought damages. Such actions are legitimate and, based on decades on Montana precedent, cannot give rise to abuse of process. Consequently, Ailes's claim fails without any further analysis needed. With that said, it is worth noting that, for the same reasons addressed above, Ailes claim also fails because he can recover no damages. Based on the foregoing, Ailes cannot meet his prima facie burden. For the same reasons, and as discussed below, Ailes claim fails to state a claim under which relief may be granted.

### i. All Counts of Ailes's Complaint Fail to State a Claim.

While Carls has provided this Court with sufficient evident to dismiss Ailes's claims pursuant to Mont. Code Ann § 27-34-107(1)(c)(i), this Court may also determine to dismiss Ailes's claims under the corresponding sub-section, Mont. Code Ann § 27-34-107(1)(c)(ii)(A), which permits the Court to dismiss Ailes's claims where Ailes has failed to state a claim upon which relied can be granted. The

result remains the same under the alternative analysis.

The standard of review of a motion to dismiss for failure to state a claim upon which relief can be granted is well-established. The complaint is construed in the light most favorable to the plaintiff and its allegations of material fact are taken as true. *Duffy v. Butte Teachers' Union*, 168 Mont. 246, 253, 541 P.2d 1199, 1203 (1975); *Fulton v. Farmers Union Grain Terminal Ass'n*, 140 Mont. 523, 531, 374 P.2d 231, 236 (1962).

That is precisely the approach Carls has employed in the preceding analysis. Even when taken as true and reviewed in the light most favorable to Ailes, both claims are fatally flawed. His malicious prosecution claim fails for a multitude of reasons, including that he cannot show a favorable termination, suffered no damages, and cannot demonstrate lack of probable cause. His abuse of process claim similarly fails to state a claim upon which relief can be granted, as there has been no attempt to use process to coerce the defendant to do some collateral thing which he could not be legally and regularly compelled to do. Under either approach, his claims are properly subject to dismissal pursuant to the UPEPA.

### ii. Carls Is Entitled to Recover Attorneys' Fees and Costs.

Because Plaintiff's lawsuit must be dismissed in full on the grounds that it is barred by UPEPA, Carls is entitled to recover her attorneys' fees and costs in bringing this motion.  Mont. Code Ann § 27-34-110(1).

# CONCLUSION

Based on the foregoing, the Court should grant Carls the relief specifically set forth in her corresponding Motion, including dismissal of the claims against her and an award of attorneys' fees pursuant to Mont. Code Ann § 27-34-110(1).

Dated this 20th day of March, 2026.

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ Natalie A. Hammond*                                    .
Nathan A. Huey
Natalie A. Hammond
Lindsay A. Mullineaux
*Attorneys for Defendant Hillary Carls*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), counsel for Defendant Hillary Carls certifies that this brief contains 6,487 words, excluding the caption, certificate of compliance, table of contents and authorities, and certificate of service.

/s/ Natalie A. Hammond

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2026, I filed the foregoing via CM/ECF and caused a true and correct copy of the same to be sent via electronic mail to all counsel of record.

/s/ Natalie A. Hammond