IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ZACHARY AILES, | CV 26-14-M-DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| ELIZABETH KLEMANN and HILLARY CARLS, | |
| Defendants. | |

Following a 2019 car accident and settlement of the resultant negligence lawsuit, Plaintiff Zachary Ailes brought this malicious prosecution and abuse of process suit against Defendant Elizabeth Klemann, the plaintiff passenger in the negligence case, and her attorney in that case, Defendant Hilary Carls, for asserting allegations of sexual assault as part of the negligence lawsuit.  In response, both Defendants Klemann and Carls (together, "Defendants") have filed special motions to dismiss pursuant to Montana's Uniform Public Expression Freedom Act ("UPEPA"), Mont. Code Ann. § 27-34-103, arguing that this action functions to unlawfully chill an exercise of their constitutional rights.  A hearing on these motions was held on June 2, 2026.  Based on the record and the parties' argument at the hearing, both motions are granted.

1

## LEGAL STANDARD

In 2025, Montana adopted UPEPA, Mont. Code Ann. §§ 27-34-101 through -112, the state's first "anti-SLAPP" statute, where SLAPP refers to a "strategic lawsuit[] against public participation," *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010). Such statutes seek to "discourage" SLAPP claims because they "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Id.* (internal quotation marks omitted). Frequently, such suits are vindictive and reactionary. Consistently, "to protect the exercise of the right of freedom of speech[,]" Mont. Code Ann. § 27-34-111, UPEPA establishes a process to dismiss civil actions in whole or in part, §§ 27-34-103, 105, 107, where the "claim for relief" is based on the claimant's:

> (a) communication in a legislative, executive, judicial, administrative, or other governmental proceeding;
>
> (b) communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or
>
> (c) exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States constitution or the Montana constitution, on a matter of public concern.

§ 27-34-102(1). To begin the process, a claimant seeking the statute's protection must file a special motion. § 27-34-103. Both Klemann and Carls did so here. (Docs. 12, 16.) Next, UPEPA establishes a two-step process to evaluate such

special motions.  § 27-34-107.  First, courts determine whether the Act applies.

§ 27-34-107(1)(a)–(b).  At the second step, dismissal is appropriate if "either" the

respondent fails to "establish a prima facie case as to each element of the civil

action[,]" § 27-34-107(1)(c)(i), or the claimant shows that the respondent "fail[s] to

state a claim upon which relief can be granted" or "there is no genuine issue as to

any material fact and the [claimant] is entitled to judgment as a matter of law[,]"

§ 27-34-107(1)(c)(ii)(A)–(B).  At the second step, federal courts review an anti-

SLAPP motion "under different standards depending on the motion's basis."

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 833

(9th Cir. 2018).  Because both special motions seek dismissal for Ailes' failure "to

state a claim upon which relief can be granted," (Doc. 13 at 2; Doc. 17 at 8), the

motion to dismiss standard is appropriate here, Fed. R. Civ. P. 12(b)(6).  Because

neither Defendant has moved for summary judgment and the settlement

correspondence, (Docs. 1-1, 1-2, 1-3, 1-4, 1-5), and Klemann's counseling

records,[1] (1-3 at 3–5), are incorporated in the Complaint, they are properly

considered here without converting the pending motions to summary judgment.

Fed. R. Civ. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

(explaining "[a] court may . . . consider certain materials—documents attached to

the complaint, documents incorporated by reference in the complaint, or matters of

---

[1] These records are not considered for the truth of the matter asserted therein.

3

judicial notice—without converting the motion to dismiss into a motion for summary judgment.").[2]

## BACKGROUND

Ailes' allegations are assumed true and construed in his favor. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021). Because this action is based on conduct in a prior lawsuit that was removed from state to federal court, the existence of that case, the state-court First Amended Complaint, (Doc. 1-6), the federal motion to dismiss, (Doc. 1-7) and order on that motion, (Doc. 1-8), are judicially noticed. Fed. R. Evid. 201(b); *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005).

### I.    Car Accident

In July 2019, Ailes and Klemann met in Montana. (Doc. 1 at ¶ 6.) They were both 19-years-old. (*Id.* ¶ 7.) On July 12, 2019, Ailes was driving with Klemann as his passenger on U.S. Highway 2 in Flathead County, Montana when he crashed "head-on" with a car driving the opposite direction. (*Id.* ¶¶ 8, 9.)

### II.    Negligence Case (State) and Settlement Discussions

On July 7, 2022, Klemann filed suit against Ailes in the Eleventh Judicial District Court, Flathead County, alleging negligence, negligence *per se*, emotional

---

[2] Consistently, Ailes' argument that summary judgment should be denied, (Doc. 27 at 48–53), his Statement of Dispute Facts, (Doc. 28), and the related declarations, (Docs. 28-1, 28-2, 29), are not applicable here.

distress, and "actual fraud/malice," and seeking both compensatory and punitive damages for her personal injuries sustained during the 2019 car accident. (*Id.* ¶ 10; *compare id.* ¶ 42 (The First Amended Complaint "re-alleged the four Counts set forth in the original Complaint.") *with* Doc. 1-6 (First Amended Complaint); *see* Doc. 1-8 at 3.) In this case, Klemann was represented by Carls, a Montana attorney. (*Id.* ¶ 11.)

Because "Defendants knew Ailes' father, Roger Ailes, had been a well-known American media executive and consultant," and that his family was wealthy, instead of serving Ailes "with the original compliant," they "conspired to increase the settlement value of the automobile accident case by injecting a sexual assault claim they knew to be baseless." (*Id.* ¶¶ 13–15.) On February 7, 2023, in a letter to Ailes' defense counsel at the time, Carls stated that "if the matter was not resolved privately," she "would file an amended complaint adding claims arising out of a 'sexual assault.'" (*Id.* ¶ 17 (quoting Doc. 1-1).) Carls further stated that "[v]erdicts and settlements from sexual assault traumas are regularly valued in the millions of dollars, at times $10 million and more," (*id.* ¶ 20), and requested that Klemann be allowed to proceed as "Jane Doe," (*id.* ¶ 22). In closing, Carls stated that "[i]f we are required to file the [amended complaint], this offer will be revoked[,] and we will seek the full value of Ms. Klemann's damages." (*Id.*

(quoting Doc. 1-1 at 2).)  Attached to the letter was a draft amended complaint that alleged Ailes sexually assaulted Klemann on July 29, 2019.  (*Id.* ¶ 18.)

In response, Ailes' counsel sent a letter to Carls in which he stated that Ailes denied all sexual assault allegations,[3] (*id.* ¶ 25), and pointed out that Carls was "now for the first time escalat[ing] this case with claims" of sexual assault, (*id.* ¶ 24 (citing Doc. 1-2 at 1)).  He then inquired as to how the sexual assault claim was not time-barred by Montana's two-year statute of limitations.  (*Id.* ¶ 26 (citing Mont. Code Ann. § 27-2-204(3)).  He also inquired into how a negligence claim could be pursued given that the "allegations in the draft amended complaint were 'clearly an intentional tort, i.e., assault[,]'" which would be time-barred.  (*Id.* ¶ 26 (quoting Doc. 1-2 at 2).)

On May 31, 2023, Carls sent another letter informing Ailes' counsel, *inter alia*, that the revised draft amended complaint included allegations against Ailes' mother ("Mrs. Ailes") for negligent supervision and negligent and intentional infliction of emotional distress.  (*Id.* ¶ 30 (citing Doc. 1-3 at 1).)  In this letter, Carls did not "meaningfully address defense counsel's questions about the sexual assault claim being time-barred, and about the lack of any cognizable claim for

---

[3] As a matter of clarity following the June 2 hearing, the Complaint states that "Ailes' counsel made clear that 'the sexual assault allegations are denied.'" (Doc. 1 at ¶ 25.) Assuming this allegation is true, *see Ariix, LLC*, 985 F.3d at 1114, means assuming only that Ailes denied the allegations, it does not go to the veracity of those allegations.

negligent sexual assault." (*Id.* ¶ 31.)  In response, Ailes' counsel stated that he "do[es] not see a good faith basis to pursue" sexual assault claim under Montana law, and that "know[s] of no facts that in good faith would support a negligence claim against" Mrs. Ailes.  (Doc. 1-4 at 2.)

On June 21, 2023, another attorney now representing Ailes sent Carls a new letter that reiterated that a sexual assault claim would be time barred under Montana law, and that any claim against Mrs. Ailes would fail for lack of personal jurisdiction and fail to state a plausible claim.  (Doc. 1 at ¶¶ 35–39; Doc. 1-5.)  The letter also expressly asserted impropriety:

> Twice now you have escalated this matter, while seeking a settlement. Thus, your February Draft escalated an auto-collision case into something very different—a sexual assault case; your June Draft escalated again by seeking to name Mrs. Ailes.  We believe that your purpose is improper: to impose the maximum pressure on the Ailes family, and to damage reputations publicly, in order to increase the settlement value of this case.  We urge you to drop the claims addressed in this letter.

(Doc. 1-5 at 4.)

On September 14, 2023, Klemann filed her First Amended Complaint in state court, realleging the counts set forth in the original Complaint and adding allegations of sexual assault.  (Doc. 1 at ¶ 41 (citing Doc. 1-6).)  Ailes removed the case to the United States District Court for the District of Montana.  (*Id.* ¶ 42.)

**III.   Negligence Case (Federal)**

Following removal, Ailes moved to dismiss the claims arising out of the alleged sexual assault pursuant to Rule 12(b)(6). (*Id.* ¶ 44 (citing Doc. 1-7).) His motion asserted, *inter alia*, that the negligence claim was actually a claim "for battery," which was "time-barred." (Doc. 1-7 at 4–9.) In her order on the motion to dismiss (the "2024 Order"), United States Magistrate Judge Kathleen DeSoto agreed. (Doc. 1-8 at 15 ("[T]o the extent [the negligence claim] is based on allegations of sexual contact, it fails to state a claim for relief because it sounds in battery and is barred by the applicable two-year statute of limitations.").) The Court found the remaining claims based on the sexual assault allegations were also time barred, (*id.* at 17 (negligence per se), 18 (emotional distress)), or failed as a matter of law, (*id.* at 18 ("Because Klemann's [actual fraud/malice] claims for compensatory damages arising out of the alleged sexual encounter of July 29, 2019, fail as a matter of law for the reasons discussed above, she cannot maintain a claim for punitive damages based on Ailes' alleged conduct during that encounter.")).

Because the 2024 Order "confirmed—just as defense counsel had stressed to Carls before she filed the [First Amended Complaint]—there is 'no such thing as a negligent battery[,]'" (Doc. 1 at ¶ 47 (quoting Doc. 1-5 at 2)), and "[o]ver the past five years, Carls has filed at least three cases, including the case against Ailes, asserting time-barred claims which a court later dismissed," "Carls' actions against

8

Ailes were part of a pattern of conduct," (*id.* at ¶ 48).  Following the 2024 Order, the parties settled the remaining claims arising out of the car accident, and filed a stipulation of dismissal with prejudice on May 27, 2025.  (Doc. 7-1 at 3.)  The case was then dismissed with prejudice.  (*Id.* at 5.)

## IV.   Current Case

Ailes brought this suit on January 1, 2026, against Klemann and Carls for their conduct in the negligence case, alleging malicious prosecution (Count One) and abuse of process (Count Two).  (Doc. 1.)  He seeks both compensatory and punitive damages.  (*Id.*)  On February 2, 2026, Klemann filed a motion to dismiss pursuant to Rule 12(b)(6).  (Doc. 6.)  She also filed a special motion for expedited relief to strike and dismiss pursuant to UPEPA, Mont. Code Ann. § 27-34-103.  (Doc. 16.)  On March 20, 2026, Carls filed a special motion for expedited relief to dismiss pursuant to UPEPA.  (Doc. 12.)  A motion hearing was held June 2, 2026.

## ANALYSIS

As a preliminary matter, Ailes argues that UPEPA does not apply here because it would have an impermissible retroactive effect, its application would contravene intervening authority, and, as briefly argued at the June 2 hearing, Carls' conduct of sending demand letters does not fall within the protections of the Act.  He is incorrect on all grounds.  As to the merits, because Ailes fails to state a

claim for either malicious prosecution or abuse of process, Defendants' motions are granted.

## I.    Threshold Arguments

Ailes asserts that the application of UPEPA is precluded here because the Act is non-retroactive and because, based on recent Supreme Court precedent, UPEPA, as a state law, should not apply in federal court.  Neither argument is persuasive.

### a.  Retroactivity

Ailes argues that applying UPEPA here "would have an impermissible retroactive effect [because this] action involv[es] conduct that occurred before [its] statutory effective date." (Doc. 27 at 21.)  Ailes insists that because he "had vested rights, acquired under laws that pre-existed UPEPA," applying it here "would take away or impair" those rights. (*Id.* at 16–19.)  Specifically, Ailes argues that UPEPA's requirement that he prove it does not apply and the burden-shifting of the prima facie elements onto him "would add a new element to [his] claim, or would impose a condition on his right to assert his claim." (*Id.* at 19–20.)  That argument fails.

Although UPEPA is not retroactive, it applies here.  UPEPA was adopted in May 2025 and this action commenced on January 16, 2026.  However, "[a] statute does not operate 'retroactively' merely because it is applied in a case arising from

10

conduct antedating the statute's enactment." *Porter*, 911 P.2d at 1148 (citing

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)). Instead, a retroactive law

"takes away or impairs vested rights acquired under existing laws or creates a new

obligation, imposes a new duty, or attaches a new disability in respect to

transactions already passed." *Id.* at 1148–49 (internal quotation marks omitted).

In other words, a retroactive law gives a "transaction a different legal effect from

that which it had under the law when it occurred." *Id.* at 1149 (internal quotation

marks omitted). The touchstone of impermissible retroactivity is deprivation or

impairment of vested substantive rights. Such is not the case here.

Assuming that Ailes has vested substantive rights as to his malicious

prosecution and abuse of process claims, UPEPA neither takes away nor impairs

those rights. Ailes primarily relies on four cases to assert such deprivation or

impairment. These cases are distinguishable. Unlike the amendment addressed in

*Porter*, UPEPA does not alter what facts are covered by the relevant cause of

action. 911 P.2d at 1149 (addressing an amendment that excluded the construction

equipment at issue in the case from the statutory definition). And unlike the law at

issue in *United States v. Bacon*, UPEPA does not add an "extinguishment

provision" that "places a substantive condition on the accrual of" a cause of action

thereby abolishing a plaintiff's right to bring such action if outside a specific

timeframe. 82 F.3d 822, 823–24 (9th Cir. 1996) (comparing a standard statute of

11

limitations with a claim extinguishment provision added to the applicable statute).
Unlike the law addressed in *American Optical Corp. v. Spiewak*, UPEPA does not
add "an essential new element" to a tort cause of action. 73 So. 3d 120, 131 (Fla.
2011) (discussing a law that amended a cause of action for asbestos-related
damages). Finally, unlike the statutory amendments at issue in *Harraz v. Snyder*,
UPEPA does not "modify[] significantly the elements to be pleaded (and proved)
in order to make [an individual] a party to the suit." 669 N.E.2d 911, 915 (App. Ill.
2d 1996) (addressing amendments that alter the elements of agency for medical
malpractice cases). Indeed, UPEPA does not extinguish the ability to bring a
specific cause of action, change the substantive elements of any tort, or modify
liability between parties.

Nevertheless, Ailes insists his rights are impaired because UPEPA requires
him to either prove the Act does not apply at the first step, or, at the second step,
establish a prima facie case as to each element of his claims. However, neither
step affects Ailes' substantive rights. If the Act applies to the conduct at issue, a
court must dismiss the action if "either" the respondent "fails to establish a prima
facie case as to each essential element of the civil action; *or*" the claimant
establishes that the respondent "failed to state a claim upon which relief can be
granted." § 27-34-107(1)(i), (ii)(A) (emphasis added). "The analysis in the second
step differs in state and federal court." *Cagle v. Sattler*, 761 F. Supp. 3d 1357,

12

1361 (D. Or. 2025) (citing *Planned Parenthood*, 890 F.3d at 833–35) (explaining that federal courts apply Rule 12(b)(6) to anti-SLAPP motions challenging the legal sufficiency of a claim and apply Rule 56 where such motions challenge the factual sufficiency of a claim). Because the special motions here "challenge[] only the legal sufficiency of" Ailes' complaint, "the Court evaluates the legal sufficiency of [his] prima facie case under the Rule 12(b)(6) standard, without requiring the presentation of evidence. [Consistently, Ailes] has the burden of showing that he has stated a claim upon which relief can be granted under [Rule] 12(b)(6)." *Cagle*, 761 F. Supp. 3d at 1365 (internal citations and quotations marks omitted) (collecting cases). Thus, the burden on Ailes is no different than that placed on him by Rule 12(b)(6). Because a court must dismiss an action only if both steps are met under UPEPA, § 27-34-107, this framework does not place an additional burden on Ailes, let alone deprive him of or impair his substantive rights. Accordingly, UPEPA's application here is not impermissibly retroactive.

### b. Intervening Authority

Ailes argues that because the Supreme Court's recent decision in *Berk v. Choy*, 607 U.S. 187 (2026), "effectively overrules Ninth Circuit precedent, which applied anti-SLAPP statutes in diversity cases," UPEPA "does not apply in this diversity case." (Doc. 27 at 22–26 (citing *Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 971–73 (9th Cir. 1999) (concluding "that the twin

13

purposes of the *Erie* rule . . . favor application of [the state] Anti-SLAPP statute in federal case")).) Defendants disagree, arguing that Ailes' reliance on *Berk* is misplaced. Klemann claims that because UPEPA "supplements" the Federal Rules rather than "supplant[ing]" them there is no "direct conflict between state and federal rules of civil practice and procedure," and UPEPA applies. (Doc. 34 at 8–9.) Carls agrees that no such conflict exists. Defendants have the better argument.

California enacted its anti-SLAPP statute in 1993. *Newsham*, 190 F.3d at 970. As a consequence, caselaw based on California's anti-SLAPP statute is well developed. *See, e.g.*, *CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1141 (9th Cir. 2022) (collecting cases). That law and UPEPA are substantively similar, including the two-step framework and a mandatory award of attorneys' fees and costs to a prevailing defendant. *Id.* at 1140 (citing Cal. Code Civ. P. § 425.16). The Ninth Circuit has "routinely applied the California anti-SLAPP statute in federal court." *Id.* at 1141. As explained above, in federal court, "anti-SLAPP motions" are reviewed "under different standards depending on the motion's basis," which "eliminates conflicts between [state] anti-SLAPP laws['] procedural provisions and the Federal Rules of Civil Procedure." *Planned Parenthood*, 890 F.3d at 833.

In *CoreCivic*, the Ninth Circuit determined that the Supreme Court's decision in *Shady Grove*—holding that a state law limiting class actions could not

apply in federal court because it conflicted with Federal Rule of Civil Procedure 23—is not "clearly irreconcilable" with Ninth Circuit precedent applying anti-SLAPP statutes in federal court. *CoreCivic*, 46 F.4th at 1141–43 (discussing *Shady Grove Orthopedic Assocs., P.A. v, Allstate Ins. Co.*, 559 U.S. 393 (2010)). The Circuit began by "not[ing] initially that *Shady Grove* did not involve an anti-SLAPP statute." *Id.* at 1141. That is the case here as well. In *Berk*, the Supreme Court addressed a Delaware medical malpractice law that requires "an affidavit of merit [to] accompan[y] the complaint" in a medical malpractice suit. 607 U.S. at 190 (citing Del. Code § 6853(a)(1)). Because this "expert affidavit" constituted "evidence of the claim," which "is not required" by Federal Rule of Civil Procedure 8,[4] the Supreme Court held that "Delaware's affidavit law does not apply in federal court." *Id.* at 193, 199.

Looking to the Rules Decision Act, 28 U.S.C. § 1652, and *Erie*, both *Shady Grove* and *Berk* determined whether a federal rule displaced state law by asking if the federal rule "answers the question." *Shady Grove*, 559 U.S. at 398; *Berk*, 607 U.S. at 192. Such "answers the question language" is used "interchangeably with" the "direct collision" inquiry, which asks if a federal rule conflicts with a state law.

---

[4] The Supreme Court also explained that "Rule 12 reinforces the point. It provides only one ground for dismissal based on the merits: failure to state a claim upon which relief can be granted. Fed. Rule Civ. Proc. 12(b)(6). When evaluating whether a plaintiff has stated a claim, the court cannot consider 'matters outside the pleadings.' Rule 12(d)." *Berk*, 607 U.S. at 193.

15

*CoreCivic*, 46 F.4th at 1142. Here, *Berk*, like *Shady Grove*, can "be reconciled with *Planned Parenthood*," *id.* at 1143, because the review of anti-SLAPP motions under different standards depending on the motion's basis eliminates conflict between anti-SLAPP laws' procedural provisions and the Federal Rules, *Planned Parenthood*, 890 F.3d at 833.

As to the award of attorneys' fees and costs,[5] although "[t]he attorneys' fees provision under anti-SLAPP motions is mandatory, unlike fees for motions to dismiss," *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1026 (N.D. Cal. 2017), the Ninth Circuit has recognized that such an anti-SLAPP provision "can exist side by side" with Rule 8 and Rule 12 of the Federal Rules of Civil Procedure with "each controlling its own intended sphere of coverage

---

[5] On June 13, 2026, Carls provided the Opinion and Order in *Wayfarer Studios, LLC v. Lively*, 25-cv-449, Doc. 1440 (S.D.N.Y. June 12, 2026). In this case, under Federal Rule of Civil Procedure 54(b), plaintiff brought a motion pursuant to "a recently enacted Law, California Civil Code Section 47.1," which "establishes a qualified privilege for communications made without malice by an individual regarding an incident of sexual assault, harassment, or discrimination." (*Id.* at 3.) "Section 47.1 closely resembles other so-called anti-SLAPP . . . statutes" "[i]n seeking to deter speech-chilling lawsuits and to compensate survivors of sexual assault, harassment, and discrimination for harms suffered as a result of such lawsuits." (*Id.* at 7.) However, Section 47.1 is different from California's anti-SLAPP statute in "several notable respects" including its lack of "procedures for adjudicating motions to dismiss" and lack of "evidentiary pleading standards." (*Id.* at 7–8.) Although finding that the Federal Rules do not bar a request for fees and costs under Section 47.1, (*id.* at 21–26), this case is of limited relevance because it determines the propriety of "seeking fees under California law through the vehicle of a Rule 54(d) motion," (*id.* at 22).

16

without conflict." *Newsham*, 190 F.3d at 972 (internal citation and quotation marks omitted). Indeed, anti-SLAPP statutes "serve an interest not directly addressed by the Federal Rules: the protection of the constitutional rights of freedom of speech and petition for redress of grievances." *Id.* at 973 (internal citation and quotation marks omitted). *Berk* does not change this; an anti-SLAPP law awarding fees and costs does not directly collide with a Federal Rule. *See CoreCivic*, 46 F.4th at 1140–41; *see also Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081 (9th Cir. 2004) (Provided there is no "direct collision with a Federal Rule," "defendants sued in federal court can bring anti-SLAPP motions . . . and are entitled to attorneys' fees and costs when they prevail." (internal quotation marks omitted)). Since *Berk*, federal district courts have continued to award anti-SLAPP fees and costs in diversity cases, *e.g., Witt v. Ross*, 2026 WL 1215633, at *2 (N.D. Cal. May 4, 2026) ("As the prevailing party in his two anti-SLAPP motions, [defendant] is entitled to a mandatory award of reasonable attorneys' fees" under California's anti-SLAPP law.); *Abittan v. Hansen Law Firm, P.C.*, 2026 WL 1215531, at *2–9 (N.D. Cal. May 4, 2026); *Williams v. Zeledon*, 2026 WL 1334829, at *1 (C.D. Cal. Apr. 24, 2026), and the Ninth Circuit has continued to affirm them, *e.g., Hammett v. Stern*, 2026 WL 1480860, at *1–2 (9th Cir. May 27, 2026) (affirming the grant of a "renewed motion for attorneys' fees" pursuant to California's anti-SLAPP law); *cf.*

17

*Reintegrative Therapy Assoc., Inc. v. Kinitz*, 2026 WL 1591571, at \*2 (9th Cir. June 3, 2026) (remanding dismissal of California anti-SLAPP special motions to be evaluated on the merits and to award fees and costs if defendant prevails).

Applying UPEPA here comports with the Federal Rules "without running afoul of [any] intervening authority." *CoreCivic*, 46 F.4th at 1143 (internal citation and quotation marks omitted).

## II.   UPEPA
### a.  Step 1

To prevail on a special motion, Defendants must first show that their conduct is protected activity as defined in UPEPA.  Mont. Code Ann. § 27-34-107(a) (citing § 27-34-102).  UPEPA "must be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association guaranteed by the United States constitution or the Montana constitution."  Mont. Code Ann. § 27-34-111.

Carls argues that her communications and filings as counsel for Klemann qualify for protection under UPEPA as both communication in a judicial proceeding, § 27-34-102(a), and communication on an issue under consideration or review is a judicial proceeding, § 27-34-102(b).  (Doc. 13 at 9–15.)  Klemann argues that "[b]ecause the claims here are based on [her] communications in a judicial proceeding, the threshold showing under MCA § 27-34-107(1) is satisfied as a matter of law."  (Doc. 17 at 7 (internal quotation marks omitted).)  She insists

that "filing a civil complaint seeking damages for personal injuries sustained in a car crash and by a sexual assault is core petitioning activity on a matter of undeniable public concern[.]" (*Id.*) Aside from his two threshold arguments discussed above, Ailes did not address whether Defendants' activity is protected by UPEPA in his briefing. But at the June 2 hearing, Ailes argued that the prelitigation letters from Carls to opposing counsel, which discussed the addition of sexual assault allegations and Mrs. Ailes as a defendant, and included sexual assault settlement amounts, do not constitute protected activity. He is wrong.

Defendants' conduct includes both their in-court filings in the negligence case and their out-of-court correspondence regarding negotiations and settlement.[6] This conduct is protected activity. Defendants' in-court filings are covered by the plain language of UPEPA, which protects "communication" in a "judicial . . . proceeding." Mont. Code Ann. § 27-34-102(a). Their out-of-court conduct is protected as "communication on an issue under consideration or review in a . . . judicial . . . proceeding." § 27-34-102(b); *see Graham-Sult v. Clainos*, 756 F.3d 724, 736 (9th Cir. 2014) (explaining that California's anti-SLAPP law that protects "writing made in connection with an issue under consideration or review by a

---

[6] In her brief in support of the special motion, Klemann states "[t]he entire Complaint in this action is predicated on that protected filing, [her] response to Plaintiff's [statute-of-limitations] motion, and the subsequent settlement negotiations that resolved the case." (Doc. 17 at 7.)

19

judicial body" includes "representations" to the "court," "preparing documents for filing in court," and any "statement" that "relates to a substantive issue in the proceeding and is directed to a person having some interest in the proceeding"); *Gopher Media LLC v. Modern Doc Media*, 2023 WL 350531, at *4 (S.D. Cal. Jan. 20, 2023) (explaining that under this same provision, "settlement negotiations while a suit is pending are protected communications"). And both categories of conduct are protected as an exercise of Free Speech. § 27-34-102(c); *see Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (Cal. 2006) (internal citations omitted) (interpreting California's anti-SLAPP law that protects a "person's right of petition or free speech" to "include[] communicative conduct such as the filing, funding, and prosecution of a civil action" and "qualifying acts committed by attorneys in representing clients in litigation"). Accordingly, Defendants have shown that Ailes' claims arise from UPEPA protected activity.

### b. Step 2

Once the first step under UPEPA is met, a court "shall dismiss with prejudice a civil action . . . if[,]" "either" the respondent "fails to establish a prima facie case as to each essential element of the civil action" or the claimant "establishes that[ the respondent] failed to state a claim under which relief can be granted[.]" § 27-34-107(1)(c)(i), (ii)(A). The analysis under this step is evaluated under the Rule 12(b)(6) standard. *Planned Parenthood*, 890 F.3d at 833. To

20

survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). At this stage of the proceeding, Ailes' allegations are assumed to be true and construed in his favor. *See Ariix, LLC*, 985 F.3d at 1114.

### 1. Malicious Prosecution

To sustain an action for malicious prosecution under Montana law, a plaintiff must establish the following elements:

> (1) a judicial proceeding was commenced and prosecuted against the plaintiff; (2) the defendant was responsible for instigating, prosecuting or continuing such proceeding; (3) there was a lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for the plaintiff; and (6) the plaintiff suffered damage.

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 955 (9th Cir. 2011) (quoting *Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 45 P.3d 10, 14 (Mont. 2002)). In other words, "[a] malicious prosecution begins in malice,

21

without probable cause to believe the action can succeed, and finally ends in failure." *Plouffe*, 45 P.3d at 14. Here, the malicious prosecution claim against both Defendants is based on their "commence[ment] of a judicial proceeding against Ailes," specifically the assertion of "time-barred" sexual assault claims. (Doc. 1 at ¶¶ 50–52.) Ultimately, Ailes fails to meet the probable cause and favorable termination elements, each an independent basis for rejecting his claim.

### a. Probable Cause

In this context, "[p]robable cause exists when a party reasonably believes in the existence of the facts upon which the claim is based, and . . . reasonably believes that under those facts the claim may be valid under the applicable law." *McCollough*, 637 F.3d at 955 (citing *Hughes v. Lynch*, 164 P.3d 913, 918 (Mont. 2007)). "[P]robable cause is determined under an objective standard on the basis of the facts known to the party initiating the legal action." *Plouffe*, 45 P.3d at 15.

Here, the sexual assault allegations played out as follows. On February 7, 2023, Carls first informed opposing counsel that if the negligence case was not resolved "privately," she and Klemann "plan to file the First Amended Complaint and Jury Trial Demand," which added the sexual assault allegations. (Doc. 1-1.) In response, Ailes' counsel inquired into Carls' "position as to why any of [her] client's allegations arising out of the alleged July 29, 2019 events are not time-barred pursuant to Montana's two-year statute of limitations found at [Mont. Code

Ann.] § 27-2-204(3)" for assault and battery. (Doc. 1-2.) Carls addressed this inquiry by stating "we are confident that our claims are timely and will be able to proceed pursuant to her negligence theories." (Doc. 1-3 at 1.)[7] Ailes' counsel responded with another letter inquiring about the statute of limitations. (Doc. 1-4 at 1.) Two weeks later, newly retained counsel for Ailes sent a third letter reviewing the previous correspondence and analyzing the Draft First Amended Complaint and updated Draft First Amended Complaint. (Doc. 1-5.) This letter reiterated the time bar supported by Montana caselaw. (*Id.* at 1–2.) On September 12, 2023, the First Amended Complaint was filed in state court, which realleged the four counts set forth in the original Complaint and added allegations of sexual assault, (Doc. 1 at ¶ 41 (citing Doc. 1-6)); the case was then removed to this Court, (*id.* ¶ 42). Ailes moved to dismiss the claims based on the sexual assault allegations. (Doc. 1-7.) The 2024 Order determined that "to the extent [the negligence claim] is based on allegations of sexual contact, it fails to state a claim for relief because it sounds in battery and is barred by the applicable two-year statute of limitations." (Doc. 1-8 at 15.) This determination was made following nearly ten pages of legal and factual analysis assessing Montana's "gravamen of the claim" framework used to determine "the limitations period to be applied to

---

[7] Under Montana law, the statute of limitations for negligence is three years. Mont. Code Ann. § 27-2-204(1).

that claim," (*id.* at 5 (citing *Erickson v. Croft*, 760 P.2d 706, 710 (Mont. 1988)),

and caselaw regarding the intent element of the tort of battery, and equitable tolling

theories based on the "complex nature of being a victim" and recovery from "brain

damage caused by" Ailes, (*id.* at 11–15).

### i. Carls

Carls argues that because there was "reasonable legal argument[]" regarding

the timeliness of the sexual assault claims filed in the negligence case, Ailes cannot

show an absence of probable cause. (Doc. 13 at 24.) Ailes argues just the

opposite: that "Carls, when she filed the amended pleading, knew that Klemann's

sexual-assault claim was time-barred, and therefore was not valid" because his

lawyers had written to Carls "three times . . . explaining why the claim was

invalid." (Doc. 27 at 38–40.) Ultimately, Carls is correct.

Both parties discuss *Spoja v. White*, where the Montana Supreme Court

determined an attorney who filed time-barred claims had probable cause to do so.

317 P.3d 153, 156–57 (Mont. 2014.) Ailes is correct that Carls' conduct is

distinguishable from the *Spoja* attorney's conduct because in her correspondence,

Carls did not expressly disclose the legal basis for the sexual assault claims.

(*Compare Spoja*, 317 P.3d at 156–57 (describing the attorneys' debate in

correspondence regarding when the "statute started running" and the applicability

of a specific case) *with* Doc. 1-3 ("[W]e are confident that our claims are timely

24

and will be able to proceed pursuant to her negligence theories.")). However, the benchmark for probable cause is reasonableness; "attorneys are not required to predict and exhaust every possible counter-argument to a complaint before deciding to file." *Spoja*, 317 P.3d at 156 (citing *Hughes*, 164 P.3d at 918 ("[A]n individual has probable cause to bring civil litigation when they have a reasonable belief in the existence of facts upon which the claim is based, and reasonably believe that those facts give rise to a valid claim.")).

Applying the first prong of this standard here, Carls had a reasonable belief in the existence of facts upon which the sexual assault allegations were based. At the time she was drafting and filed the First Amended Complaint, Carls believed the following facts: her client had a traumatic brain injury caused by the 2019 car accident and was sexually assaulted by Ailes after that event. Her belief was reasonable based on the counseling records attached to the Complaint as part of the settlement correspondence. (Doc. 1-3 at 3 (Psychotherapy Treatment notes describing "the near-fatal car accident and . . . the disturbing post-accident sexual encounters with the driver of the truck").)

Given these facts, Carls' claim may have been valid under the applicable law. Although in their letters Ailes' attorneys addressed both the gravamen framework and the intent element of battery, (*e.g.*, Doc. 1-5 at 1–2), and Carls did not respond directly, tolling is not discussed in any correspondence, (Docs. 1-2, 1-

25

3, 1-4, 1-5). The 2024 Order included analysis of equitable tolling theories including both the "doctrine of continuing tort" and "exceptional and extraordinary circumstances" based on the "complex nature of being a victim" and recovery from "brain damage caused by" Ailes. (Doc. 1-8 at 11–15). Klemann's traumatic brain injury and sexual assault directly factored into the tolling analysis, particularly whether exceptional and extraordinary circumstances were present. (*Id.* at 14–15.) This shows a reasonable belief that under those facts the sexual assault claims may be valid under the applicable law. *See McCollough*, 637 F.3d at 955. In other words, Carls "had a reasonable belief in facts that would cause a reasonable person to file suit." *Spoja*, 317 P.3d at 156.

Accordingly, while Ailes has alleged the "legal conclusion" that Carls lacked probable cause, he has done so without the support of "well-pleaded facts." *See Iqbal*, 556 U.S. at 678.

### ii. Klemann

Klemann argues that a reasonable belief in facts existed for the sexual assault allegations because "Plaintiff's own Exhibit C supplies exactly that: a licensed counselor documenting [Klemann]'s therapy focused on 'non-consensual sexual encounters (including the current legal case).'" (Doc. 17 at 9–10 (citing Doc. 1-3).) As explained above, she is correct. And, as to those facts supplying a reasonable basis for a valid claim under the applicable law, Klemann argues that

26

such a basis existed here because "Montana recogni[zes] delayed disclosure in sexual-assault cases," and the statute-of-limitations issue "was complex and subject to good-faith dispute." (*Id.* at 10.)  Again, as explained above, Klemann is correct.  Under an objective standard, *Plouffe*, 45 P.3d at 15, the counseling records, which are attached to the Complaint, (Doc. 1-3), establish a reasonable belief in the existence of facts upon which the sexual assault allegations were based, *McCollough*, 637 F.3d at 955.  Equitable tolling alone provides a valid basis under applicable law under which a claim based on those facts could be reasonably asserted. *See id.*  Once again, while Ailes has alleged a lack of probable cause, he has failed to assert well-pleaded facts that establish this element.

### b.  Favorable Termination

Malicious prosecution requires "the judicial proceeding terminated favorably for the plaintiff." *Plouffe*, 45 P.3d at 14.  "It is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits. However, termination must reflect on the merits of the underlying action." *Miller v. Watkins*, 653 P.2d 126, 130 (Mont. 1982) (internal quotation marks and emphasis omitted).

Here, the negligence case terminated as follows.  The 2024 Order dismissed the claims arising out of the sexual assault allegations as time barred.  (Doc. 1-8.)

27

As to the remaining negligence claims arising out of the car accident, Ailes voluntarily entered into a settlement agreement and stipulated to dismissal of the case "with prejudice because it has been fully settled upon the merits, each party to bear its own costs and attorney fees." (Doc. 17-1.)  The parties disagree over whether this disposition constitutes favorable termination.  Carls argues that Ailes fails to demonstrate a favorable outcome because dismissal of the claims arising out of the sexual assault was "procedural" and "partial," and the remaining claims were "voluntarily settled." (Doc. 13 at 17.)  Klemann agrees, insisting that Ailes "cannot isolate the . . . interlocutory [2024 Order] as a final order on the merits while ignoring the global compromise that ended the entire action." (Doc. 17 at 9.)  Such "a resolution does not constitute a favorable termination on the merits as required for malicious prosecution." (Doc. 34 at 2 (internal quotation marks omitted).)  Ailes, on the other hand, argues that the 2024 Order dismissing the claims arising out of the sexual assault allegations was a merits determination, (Doc. 27 at 29–30 (citing *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411 (Mont. 1995))), and the overall settlement of the case does not preclude such a finding, (*id.* at 31 (citing *O'Fallon v. Farms Ins. Exch.*, 859 P.2d 1008 (Mont. 1993))).  Ultimately, Defendants are correct.

As a preliminary matter, Ailes' reliance on both *Sacco* and *O'Fallon* is misplaced.  Ailes asserts that *Sacco* stands for the proposition that "a statute-of-

limitations dismissal *does* reflect on the merits of the underlying action, and therefore satisfies" the favorable termination element here. (Doc. 27 at 29 (citing *Sacco*, 896 P.2d at 432) (emphasis in original).) It does not. In *Sacco*, the alleged malicious prosecution began with charging plaintiff Sacco with theft and terminated when her motion to dismiss was granted because "the charge was barred by the statute of limitations." 896 P.2d at 431. The original complaint in the criminal case was amended to delete the dates of the charged conduct and no new dates of the offense were provided. *Id.* The prosecutor conceded that the state could not prove the theft occurred during the dates alleged in the original complaint. *Id.* at 432. The Montana Supreme Court explained that "[t]he deletion of the dates on the complaint meant that the only conceivable time period in which any person could have" committed the theft was outside "the one year time period for the statute of limitations for [that] offense." *Id.* at 432. In its determination, the Court noted that:

> If the original allegations were provable in the first place, the case would have been actively prosecuted within the time limitations set by the statute of limitations. The fact that the original charges could not be proven and had to be amended, with the result that the offense alleged in the amended complaint then fell outside the statute of limitations and was dismissed *reflects* on the merits of the original complaint. Accordingly, we conclude that the termination was in Sacco's favor. . . .

*Id.* Thus, in *Sacco*, the amended criminal complaint and the concession of the city prosecutor revealed that the theft charge in the original complaint could not be

proven, *i.e.*, was meritless, which in turn, meant that the dismissal of the charge was in Sacco's favor. Here, whether the alleged sexual assault was negligent (not time-barred) or intentional (time-barred) does not go to the provability of the assault itself.

Next, Ailes asserts that like in *O'Fallon*, "there is no factual basis for concluding that the sexual-assault claims were dismissed as a result of the settlement" because they were dismissed by the 2024 Order, and thus the termination was in his favor. (Doc. 27 at 31 (citing 859 P.2d at 1012).) In *O'Fallon*, following his deposition, the defendant moved to dismiss the counterclaim and third-party complaint "that he had filed," which the court dismissed without "explanation of the . . . basis for dismissal of those claims." 859 P.2d at 1012. Based on the that specific record, the Montana Supreme Court found that "there is no factual basis for concluding that the claims were dismissed as a result of settlement. It is just as reasonable to conclude from the record before us that they were dismissed because they had no merit." *Id.*

Ailes is correct that the claims arising out of the sexual-assault allegations were dismissed by the 2024 Order, and that the remaining claims arising out of the car accident were settled. However, this does not mean the negligence case terminated in his favor. Defendants did not move to dismiss their own claims, and the 2024 Order explains in detail the reason for dismissal of the claims arising out

30

of the sexual assault allegations; those claims "sound[ed] in battery and [were] barred by the applicable two-year statute of limitations." (Doc. 1-8 at 15.) Unlike, in *O'Fallon*, the record clearly explains that the sexual-assault allegation-based claims were dismissed because of a statutory time bar, not a rejection of the factual allegations or a determination on liability. (*See id.*) Such a reason does not go to the merits. Thus, even if the 2024 Order was construed as being in Ailes' favor, it was not a termination that reflected the merits of those claims.

Nor does the overall disposition of the negligence case by stipulation reflect a merits disposition in Ailes' favor. *O'Fallon* explains that whether certain claims were or were not dismissed as part of an overall settlement is not determinative for whether favorable termination existed. 859 P.2d at 1012. ("[E]ven if the claims had been dismissed as part of an overall settlement, that fact alone would not preclude a finding that they were terminated in favor of plaintiffs.") Indeed, the touchstone for this analysis is, as explained above, whether the termination reflected the merits and was in Ailes' favor, *see Miller*, 653 P.2d at 130, under "the entire circumstances," *Vehrs v. Piquette*, 684 P.2d 476, 479 (Mont. 1984). Here, the parties stipulated to dismissal based on voluntary global settlement. (Doc. 17-1.) Specifically, they moved for the negligence case to "be dismissed with prejudice because it has been fully settled upon the merits." (*Id.* at 3.) The Court then "dismissed [the case] with prejudice because it has been fully settled upon the

31

merits." (*Id.* at 5.) The Complaint does not allege that the settlement was in Ailes' favor. Indeed, as to the settlement, the Complaint only alleges that Carls' communication with Ailes' counsel was "an improper attempt to extort a settlement" and to "extract an inflated settlement for the car-crash claims." (Doc. 1 at ¶¶ 39, 59.) In his response to the special motions, Ailes asserts that he "won a dismissal of claims before settlement." (Doc. 27 at 33.) Accordingly, assuming all allegations are true and construing them in his favor, even if the stipulated dismissal was on the merits, Ailes does not sufficiently allege facts that establish the dismissal was in his favor.[8] Failing to establish this element is an independent ground for dismissal of the malicious prosecution claim.

## 2. Abuse of Process

The parties were directed to brief the applicability of Rule 13 of the Federal Rules of Civil Procedure to Ailes' abuse of process claim, (Doc. 39), and did so, (Docs. 40, 41, 42). However, this claim has been weighed on the merits and found wanting.

Under Montana law, a plaintiff asserting an abuse of process claim must establish two elements: (1) "a willful use of process not proper in the regular

---

[8] Ailes also argues that "favorable termination is an issue for the jury." (Doc. 27 at 31.) But that is only the case if the pleadings establish his right to recover based on the facts alleged. *Ashcroft*, 556 U.S. at 678.

32

conduct of the proceeding" and (2) "that the process was used for an ulterior purpose." *Spoja*, 317 P.3d at 157. The legal process must be "put to a use perverted beyond its intended purpose." *Brault v. Smith,* 679 P.2d 236, 240 (Mont. 1984). "An abuse of process may occur when a party uses process to coerce another to do some collateral thing [that he] could not be legally and regularly compelled to do." *Salminen & Frampton, PLLP*, 339 P.3d 602, 610 (Mont. 2014) (internal quotation marks omitted) (alteration in original).

Here, Ailes' abuse of process claim is based on the sexual assault claims and the "threats against Ailes and his mother." (Doc. 1 at ¶ 59.) As discussed above, this began with Carls' February 7, 2023 letter, (Doc. 1-1), and escalated in subsequent response when Carls stated that she had become "convinced that [] Ailes' mother[] negligently supervised [him,] [and] updated the draft complaint . . . [to] include[] negligent supervision claims against Mrs. Ailes," (Doc. 1-3 at 1). Ailes' counsel responded with another letter inquiring into the statute of limitations and stating that "there does not appear to be a good faith basis upon which to name Mrs. Ailes as a party to this litigation." (Doc. 1-4 at 1–2.)

Carls argues that initiating a lawsuit against Mr. Ailes seeking damages is a "legitimate" and regular use of the civil litigation process that "cannot give rise to abuse of process." (Doc. 13 at 28–30.) Klemann agrees, insisting that "[f]iling an amended complaint and negotiating settlement are legitimate uses of process" and

"[n]o collateral objective is shown whatsoever in this case." (Doc. 34 at 10.) Ailes disagrees, arguing that both elements of abuse of process are present here, heavily relying on *Seipel v. Olympic*, wherein the Montana Supreme Court stated that the "[u]se of the court system to file a baseless legal claim may constitute an abuse of process." 188 P.3d 1027, 1032 (Mont. 2008). Ailes insists that because he "did not owe money for a claim based on sexual assault" and the "sexual-assault claims were time-barred," abuse of process has been sufficiently plead. (Doc. 27 at 44–45.) Because Ailes fails to allege either ulterior purpose or a willful act to pervert process, his abuse of process claim fails.

### a. Ulterior Purpose

Ailes asserts that Defendants attempted to settle sexual-assault claims and amended their complaint with those claims with the "ulterior purpose" of the extracting money from him that he did not owe and that Defendants could not legally obtain in a civil action. (Doc. 27 at 44 (citing *Seipel*, 188 P.3d at 1032).)

Examples of clear "ulterior purpose" include taking a plaintiff's deposition with "the ulterior motive of having him present in [a specific] jurisdiction . . . so that he could be arrested on the outstanding contempt order," *Hopper v. Drysdale*, 524 F. Supp. 1039, 1042 (D. Mont. 1981), and "wrongfully obtain[ing] a warrant that authorized entry into [a] home[] and . . . seiz[ing] clearly exempt property of minimal value" with the ulterior purpose of "hold[ing] the property hostage,"

34

*Salminen*, 339 P.3d at 610. No such ulterior purpose is present here. Defendants amended their pleading and sought damages for the alleged counts. *See Spoja*, 317 P.3d at 158 ("Payment of damages . . . is a legitimate purpose for civil litigation.").

Ailes seeks to sidestep the application of such caselaw by relying on *Seipel*, in which a corporation sued a property appraiser for an overvaluation of property and sought to recover damages. 188 P.3d at 1028. After dismissal of that case, the appraiser brought an abuse of process claim against the corporation. *Id.* at 1029. The Montana Supreme Court explained that the attempt to extract money damages from the appraiser was "ulterior" because his attorney submitted an affidavit that stated the corporation "acknowledged" its claim for money damages was "not true," "abandoned its own claims for [those] damages," and then sought remedies as a "trustee" for a "trust," despite there being "no business trust" and the corporation "was not a business trustee." *Id.* at 1031. Such acts were "sufficient to" extract the claim from the "valid legal claim" framework. *Id.* at 1032 (citing *Brault*, 679 P.2d at 240 ("Pressing valid legal claims to their regular conclusion, even with an ulterior motive, does not by itself constitute abuse of process.")).

Here, Defendants' acts do not warrant extraction from the "valid legal framework." *Id.* As to the claims against Mrs. Ailes, they were never filed. (*See.* Doc. 1-6.) As to the sexual assault claims, it is not alleged that Defendants have wavered regarding those allegations. Indeed, the record of the negligence case

demonstrates that they pursued the claims until the Court dismissed them. Nor did they "acknowledge" untruthfulness or "abandon" those allegations. *Seipel*, 188 P.3d at 1031. It is also not alleged that either Defendant attempted to continue to bring such allegations *after* they were dismissed. *See id.* Because the allegations remain squarely inside the "valid legal claim" framework, Ailes has failed to allege ulterior purpose. Because the two elements of an abuse of process claim are conjunctive, the analysis could end here. However, Ailes fails to establish the second element as well.

### b. Improper Willful Act

Even if Ailes had sufficiently alleged ulterior purpose, he fails to establish "a willful act in the use of process that is not proper in the regular conduct of the proceeding." *Spoja*, 317 P.3d at 157. Defendants' purported "willful acts" consist of seeking settlement that included payment for sexual assault claims, asserting that such claims and claims against Mrs. Ailes may be included in the amended complaint, and filing an amended complaint that included claims arising out of sexual assault allegations. None of these acts are a "use of process that is not proper in the regular conduct of the" civil litigation. *Id.* Ailes has not alleged any "perversion" because attempting settlement and bringing a case seeking damages is a "proper use of process." *Brault*, 679 P.2d at 240; *Spoja*, 317 P.3d at 158 ("[I]t is not an abuse of process to make a claim for the legitimate purpose of attaining all

36

available recourse such as payment of damages.") (internal quotation marks omitted). Accordingly, Ailes has failed to allege a willful act taken to pervert process here.

## III.   Fees, Costs, and Expenses

Under UPEPA, "if the moving party prevails on" a special motion, "the court shall award court costs, reasonable attorney fees, and reasonable litigation expenses related to [that] motion." Mont. Code Ann. § 27-34-110(1). Although an award of attorney fees is mandatory under UPEPA, the amount of such an award is discretionary. *Id.* ("[T]he court *shall* award court costs, reasonable attorney fees, and reasonable litigation expenses[.]" (emphasis added)); *see Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) ("The reasonableness of [anti-SLAPP] attorney fees is within the discretion of the trial court."). Having prevailed on their anti-SLAPP special motions, Defendants are awarded costs, reasonable attorney fees, and reasonable litigation expenses related to their motions. While Defendants have filed affidavits outlining their fees, costs, and expenses with supporting documentation, (Docs. 36, 37), the amount of each such award will be determined by separate order so that Carls' can cure the deficiencies outlined below and Ailes has the opportunity to respond.

Carls' states her attorneys billed at the following rates: $330.00/hour for Natalie Hammond and Nathan Mullineaux, and $295.00/hour for Lindsay

37

Mullineaux. (Docs. 36, 36-1.) However, Carls states that Senior Counsel at Gordon Rees Scully bill at a rate of $305/hour, (Doc. 36 at ¶ 6), and that Hammond is Senior Counsel, (*id.* ¶ 4). Further, the index of the time and services provided, (Doc. 36-1), includes "Michael P. Sarabia" as a "timekeeper." He has not appeared for Carls in this matter and the filed declaration does not address him. Lastly, there is a billed amount of $172.76 for "copies, [o]utside printing of materials" that references an "invoice," (Doc. 36-1 at 18), but such an invoice has not been provided. Accordingly, Carls will be given seven days to refile her affidavit and supporting documentation to address these issues. Within seven days of that filing, Ailes may respond to both Defendants' award submissions, but only as to the reasonableness of the rates and/or hours expended. *See Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987).

### CONCLUSION

Based on the foregoing, IT IS ORDERED that the special motions, (Docs. 12, 16), are GRANTED. Defendants are AWARDED attorneys' fees, costs, and expenses. Mont. Code Ann. § 27-34-110(1). The amount of the award will be determined by separate order.

IT IS FURTHER ORDERED that within seven (7) days of this Order, Defendant Carls must refile an affidavit correctly outlining fees, costs, and expenses associated with her special motion and include supporting

documentation, consistent with this Order.  Within seven (7) days of that submission, Ailes may respond to both Defendants' award submissions, but only as to the reasonableness of the rates and/or hours expended.

IT IS FURTHER ORDERED that Defendant Klemann's motion to dismiss, (Doc. 6), is DENIED as MOOT.

DATED this 25th day of June, 2026.

11:15A.M.

Donald W. Molloy, District Judge
United States District Court

39